1  Douglas J. Campion, Esq. (SBN: 75381)
   **LAW OFFICES OF DOUGLAS J. CAMPION**
2  411 Camino Del Rio South, Suite 301
   San Diego, CA 92108
3  Telephone: (619) 299-2091
   Facsimile: (619) 858-0034

4  Robert L. Hyde, Esq. (SBN: 227183)
   bob@westcoastlitigation.com
5  Joshua B. Swigart, Esq. (SBN: 225557)
   josh@westcoastlitigation.com
6  **Hyde & Swigart**
   411 Camino Del Rio South, Suite 301
7  San Diego, CA 92108-3551
   Telephone: (619) 233-7770
8  Facsimile: (619) 297-1022

9  Attorneys for Plaintiff
   Tricia Leckler
10

11

12              **UNITED STATES DISTRICT COURT**

13          **NORTHERN DISTRICT OF CALIFORNIA**

14
   | | |
   |---|---|
15 | TRICIA LECKLER, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | CASE NO.: C 07-04002 SI |
16 | | |
17 | | CLASS ACTION |
   | Plaintiffs, | |
18 | | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
   | v. | |
19 | | |
   | CASHCALL, INC., | |
20 | | |
21 | Defendant. | Date: May 2, 2008 |
22 | | Time: 9:00 a.m. |
   | | Crtrm: 10, 19th Floor |
23 | | Judge: Hon. Susan Illston |
24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................ 1

II.   STATEMENT OF FACTS.................................................... 4

III.  ARGUMENT ..................................................................... 5

  A. This Motion Meets the Standards for Summary Judgment. ..................... 5

  B. Any Telephone Call Made With an Automated Dialer or Pre-recorded Voice to a Cellular Telephone Violates the TCPA Unless Made for Emergency Purposes or With the Recipient's "Prior Express Consent"... 6

  C. The Complaint Alleges the Defendant Has Violated the TCPA in its Collection Efforts. ................................................................. 8

  D. This Court Has the Authority to Nullify the FCC's January 2008 Ruling on What Constitutes "Prior Express Consent" Under the TCPA............ 11

1. The *Chevron* Test Mandates the Setting Aside of the FCC Ruling ................... 11

    a.  The Administrative Procedures Act Permits Review by this Court 11

    b.  Chevron Mandates That the FCC Ruling be Nullified as to Its Redefining the Meaning of "Prior Express Consent" Because the Statute is Not Ambiguous and No Gap Was Left by Congress as to that Phrase ................................................................. 12

    c.  Traditional Rules of Statutory Construction Confirm the Statutory Language is   Not Ambiguous ................................................ 16

    d.  Case Law Confirms The Statute's Plain Meaning ........................ 17

IV.   CONCLUSION .................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Arc Ecology v. United States Dep't of the Air Force,*
411 F.3d 1092 (9th Cir. 2005) ...................................................................... 13

*Bechtel Const., Inc. v. United Bhd. of Carpenters*,
812 F.2d 1220 (9th Cir.1987) ...................................................................... 16

*Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) .......................................................................12, 13, 14

*Clark v. Capital Credit & Collection Servs., Inc.*,
460 F.3d 1162 (9th Cir. 2006) ...................................................................... 13

*Connecticut National Bank v. Germain*,
503 U.S. 249, (1992) ...................................................................... 16

*Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*,
447 U.S. 102, 108 (1980) ...................................................................... 16

*Dyer v. U.S.*,
832 F.2d 1062, 1066 (9th Cir. 1987) ...................................................................... 16

*In re Gerwer*,
898 F.2d 730, 732 (9th Cir. 1990) ...................................................................... 13

*Travel Kirkwood, Inc. v. Jen N.Y. Inc.*,
206 S.W.3d 387, 2006 Mo. App. LEXIS 1740 (Mo. Ct. App. 2006) .... 17, 18

*U.S. v. Hagberg*,
207 F.3d 569, 574 (9th Cir. 2000) ...................................................................... 16

1

## FEDERAL STATUTES

2  5 U.S.C. § 551(4) ................................................................ 11

3  5 U.S.C. 706.................................................................... 11

4  47 U.S.C. § 227 (b)(1)(A) ................................................ 1, 3, 6

5  47 U.S.C. § 227(b)(1)(A)(iii)............................................ 9, 10

6  47 U.S.C. § 227(b)(2)(B)...................................................... 9

7  47 U.S.C. § 227(b)(2)(C)...................................................... 9

8  47 U.S.C. § 227 (f)(1) ......................................................... 1

9  Fed. Rule Civ. Proc. 56(c) .................................................... 5

10  16 C.F.R. § 64.1200 .......................................................... 6, 7

11

12

## SECONDARY MATERIALS

13  Black's Law Dictionary 679 (5th ed. 1979) ............................ 18

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION

As relevant to this motion, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (b)(1)(A) prohibits any calls made to cell phones with autodialers or by a prerecorded voice message unless the called party has given permission by "prior express consent" to allow receipt of such calls.  Plaintiff has filed this class action lawsuit alleging Defendant CashCall, Inc. has repeatedly called debtors on their cell phones through the use of autodialers in violation of the TCPA.  Each such violation carries a penalty of $500, or $1,500 if intentional, with potential liability in the millions of dollars.  47 U.S.C. § 227 (f)(1).

The issue here is what constitutes "prior express consent" as required by the TCPA.  At issue is whether the Federal Communications Commission ("FCC") can legally redefine that phrase as it attempts to do in its Declaratory Ruling ("FCC Ruling" or "Ruling") released January 4, 2008.[1]  The Ruling states: "In this ruling, we clarify that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." Ruling, para. 1.  "With this ruling, however, creditors and debt collectors may use predictive dialers to call wireless phones, provided the wireless phone number was provided by the subscriber in connection with the existing debt." *Id.,* para. 14.  By that Ruling, the FCC proclaims that by just providing a cell phone number in an application, the called party in effect prospectively gives to that creditor all necessary "prior express consent" allowing them to be called at any time in the future *on their cell phone* by the creditor's, or its collection agency's, autodialers calling them seeking repayment.

---

[1] Attached to Plaintiff's Request for Judicial Notice as Exhibit 1 is a true and correct copy of that FCC Ruling entitled In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection act of 1991; Request of ACA International for Clarification and Declaratory Ruling, Declaratory Ruling Adopted December 28, 2007 and Released January 4, 2008.

The question here is if you are borrowing money from CashCall, Inc. and you list in the loan application your name, address, home, work and cell phone numbers as CashCall requests, are you really giving "prior express consent" or otherwise agreeing to at sometime in the future receiving dunning collection calls on your cell phone? Plaintiff submits of course not; that would be an absurd result. But the FCC now claims in its Ruling that you definitely have given the requisite TCPA "prior express consent", contrary to the plain wording of the statute. By this motion, Plaintiff seeks to have this Court nullify the FCC Ruling for purposes of this lawsuit as it expands and unreasonably modifies the plain meaning of the statute's phrase "prior express consent".

Because the use of autodialers is so widespread so as to constitute almost the exclusive method of making telephone marketing or -- as was the issue in the Ruling -- debt collection calls by collection agencies, ACA International ("ACA") petitioned the FCC for what it called "clarification" of that statute.[2]    In its petition, the ACA asked the Commission to exempt debt collectors from Congress's restriction on autodialed and prerecorded message calls to cellular telephones.[3]

Just because the ACA and debt collectors want to shield themselves from liability, they cannot do so through an end run around the statute as they have tried to do here, without going to Congress to change its meaning.[4]   Therefore, this

---

[2] ACA "describes itself as an international trade organization of credit and collection companies" representing "approximately 5,800 company members ranging from credit grantors, collection agencies, attorneys, and vendor affiliates." Plaintiff's Request for Judicial Notice, Ex. 1, Ruling, fn. 1.

[3] See ACA International's Petition for an Expedited Clarification and Declaratory Ruling filed October 4, 2005, attached as Exhibit 2 to Plaintiff's Request for Judicial Notice, "ACA respectfully requests that the Commission issue a declaratory ruling clarifying . . . that calls to recovery [sic] debts are not subject to the TCPA's autodialer restrictions." *Id.* at p. 22.

[4] The ACA was candid in its Petition about its motivation for its perceived need for the "Clarification" Ruling:  "ACA members have suffered harm as a result of the uncertainty regarding the inapplicability of the amended autodialer rules to creditors and collectors when telephoning consumers to attempt recovery of payment obligations.  This injury includes, but is

1   Court should nullify that portion of the  FCC Ruling relating to the meaning

2   assigned to the phrase "prior express consent" as it relates to this action.

3   Otherwise, Defendant CashCall as a creditor acting as a debt collector for its own

4   accounts, would be exempt from the TCPA's requirement in 47 U.S.C. § 227

5   (b)(1)(A) that the called party give actual "prior express consent" to receiving calls

6   made by autodialers on their cell phones.

7       Surprisingly, the Ruling extends the fiction of providing "prior express

8   consent" to not only first party debt collectors like CashCall but also all third party

9   debt collectors that are hired by original creditors that were not even named or

10  contemplated at the time the application for services was completed.  So long as

11  the original creditor or merchant has an application from the called party that

12  contains a cell phone number, the Ruling purports to shield even a third party debt

13  collector from TCPA liability for calling cell phones with autodialers or with

14  prerecorded messages without "prior express consent".  It is absurd to pretend that

15  these called parties gave the "prior express consent" required by the TCPA by

16  submitting an application for credit or services – one that makes no mention of

17  consenting to anything, much less consenting to receiving dunning calls on their

18  cell phones at some point in the future without restriction.  These calls cause these

19  consumers to be involuntarily charged for these calls, either for each minute used

20  or by a corresponding reduction in the minutes paid for under the called party's

21  plan.  This result is truly nonsensical – changing the plain meaning of "prior

22  express consent" -- and one far beyond the FCC's authority here to ignore the

23  intent of a statute to ensure a result sought by a private interest group, ACA.[5]

24

25  not limited to, (1) *the risk of litigation, including class action exposure*; (2) the risk of
    government enforcement by the Commission; and (3) economic harm based on the inability to
26  use autodialers." Plaintiff's Request for Judicial Notice, Ex. 2, page 10 (emphasis added).
    Clearly the ACA objected to the statute's language but improperly went to the FCC instead of
27  Congress to attempt a change in the law.

28  [5] The FCC still requires in its Ruling that debt collectors refrain from calling cell phones if the
    called party has not provided a cell phone number to the original creditor.  In effect, the debt

This Ruling contradicts the well-established legal definition of "express consent," case law regarding the TCPA, Congress's language and intention when writing the TCPA, and, most significantly, the statutory limitations Congress placed on the FCC when it enacted the TCPA.    Further, it sets a dangerous precedent regarding what is "consent" that will, no doubt, be used against consumers throughout the country in years to come, and will have a substantial negative impact on existing precedent and consumer protection statutes.

## II.    STATEMENT OF FACTS

The following facts are set forth in the Jointly Submitted Statement of Undisputed Facts in Support of the Parties' Cross-Motions for Partial Summary Judgment ("UF").    In December 2005, Plaintiff Tricia Leckler ("Leckler") contacted CashCall and applied for a personal loan in the amount of $2,600.  UF, No. 2.  As part of the loan application process, Leckler was asked by CashCall to provide, among other things, her "Home Phone," "Mobile Phone", "Work Phone," and email address as well as her home address and other contact information.  *Id.*, No. 3.  Leckler provided CashCall with each of the requested telephone numbers, including her cellular telephone number ((510) 290-0099), and her e-mail address. *Id.*, No. 4. On December 19, 2005, Leckler made and delivered to CashCall a promissory note in the principal sum of $2,600 (the "Note").  *Id.,* No. 6. On December 19, 2005, CashCall advanced the sum of $2,575 ($2,600 minus a $75 loan origination fee) to Leckler in accordance with the terms of the Note.  *Id.*, No. 7.  After Leckler fell behind on the monthly payments due to CashCall under the Note, CashCall began collection activities with respect to Leckler.  *Id.,* No. 8.  As part of CashCall's collection activities, CashCall placed telephone calls to Leckler's cellular telephone number ((510) 290-0099).  *Id.*, No. 9.  During certain of the telephone calls that CashCall placed to Leckler's cellular telephone number ((510)

---

collectors will still be liable for making such autodialed or prerecorded voice calls if they obtain the called party's cell phone number independently of the original creditor. Ruling, para. 14.

290-0099), CashCall used prerecorded messages. *Id.*, No. 10.  During certain of the telephone calls that CashCall placed to Leckler's cellular telephone number ((510) 290-0099), CashCall used an automatic telephone dialing system in an attempt to reach Leckler on her cellular telephone. *Id.*, No. 11.  None of the calls made by CashCall to Leckler were for emergency purposes. *Id.*, No. 12.  The telephone usage minutes incurred by Leckler for the calls made by CashCall to her cellular telephone were counted toward the minutes permitted under Leckler's cellular telephone plan. *Id.*, No. 13.  Leckler never informed CashCall that it could contact her on her cellular telephone by means of prerecorded messages and/or autodialed calls. *Id.*, No. 16.

## III.    ARGUMENT

### A. This Motion Meets the Standards for Summary Judgment.

Summary judgment shall be rendered where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits demonstrate the lack of any genuine issues of material fact, and that the moving party is entitled to a judgment as a matter of law. Fed. Rule Civ. Proc. 56(c).  Here Plaintiff seeks summary judgment on the issue of whether the TCPA's "prior express consent" statutory language has been modified or replaced by the FCC Ruling's definition. Plaintiff submits it has not and that the FCC's attempt to modify the plain statutory language should be nullified in its Ruling only on the issue of its definition of "prior express consent", at least for purposes of this case.  If so, Plaintiff requests summary judgment on the issue of "prior express consent".  The Jointly Submitted Statement of Undisputed Facts provided in support of both parties' motions for summary judgment confirm the Defendant did not obtain any "prior express consent" from Plaintiff or the class members other than their cell phone numbers on the original applications for credit.

//

//

**B. Any Telephone Call Made With an Automated Dialer or Pre-recorded Voice to a Cellular Telephone Violates the TCPA Unless Made for Emergency Purposes or With the Recipient's "Prior Express Consent".**

On December 20, 1991, Congress enacted the Telephone Consumer Protection Act (TCPA),[6] as codified in section 227 of the Communications Act of 1934, as amended, in an effort to address a growing number of telephone marketing calls and certain telemarketing practices Congress found to be an invasion of consumer privacy.[7]   In relevant part, the TCPA regulates the use of automated telephone equipment.[8]   Specifically, section 227(b)(1)(A) prohibits the use of any automatic telephone dialing system[9] to call any telephone number assigned to a cellular telephone service absent an emergency purpose or the "prior express consent of the called party."[10]

The FCC formulated regulations to implement the TCPA.   16 C.F.R. § 64.1200.  In those regulations the FCC followed the plain meaning of the statute as

---

[6] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 et seq.

[7] The TCPA directs the FCC, after comparing and evaluating "alternative methods," to adopt rules "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1)-(4).
[8] 47 U.S.C. § 227(b).

[9] Under the TCPA, the term "automatic telephone dialing system" means "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

[10] 47 U.S.C. § 227(b)(1)(A). ("It shall be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— (i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency); (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]").

1  to the phrase "prior express consent" and did not attempt to make it into something

2  other than what the statute required:

> a) No person or entity may:
>
> (1) Initiate any telephone call (other than a call made for emergency purposes *or made with the prior express consent of the called party*) using an automatic telephone dialing system or an artificial or prerecorded voice;
>
> . . . (iii) To any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. (Emphasis added.)

10  The FCC now cannot ignore by its Ruling the plain meaning of "prior

11  express consent" in the statute and confirmed in its prior regulation, 16 C.F.R. §

12  64.1200. That Ruling in effect changes "express consent" to *implied* consent. The

13  Ruling deems the listing of a cell phone on an application for services satisfies the

14  TCPA's "prior express consent" requirement, even as to a third party debt

15  collector. Plaintiff submits the statute is plain on its face as to what is required:

16  "prior express consent" means what it says – unequivocally agreeing in advance to

17  receiving such a call generated by an autodialer or one using a pre-recorded

18  message to the called party's cellular telephone. Plaintiff submits that does *not*

19  mean *implied* consent, nor is it presumed consent – either of which the FCC Ruling

20  now deems satisfies this TCPA provision.[11]

21  //

22  //

---

[11] Furthermore, obtaining such pre-Ruling proper "prior express consent" from a called party is not difficult to obtain, if the original creditor desires to do so. For an example of an agreement that arguably meets the TCPA's requirements for "prior express consent", see Plaintiff's Request for Judicial Notice, Exhibit 3, page 14, para. 13(a), an application for Time Warner's Cable Services. That says: "I consent to TWC calling the phone numbers I supply to it for any purpose, including the marketing of its current and future services. I agree that these phone calls may be made using any method, including an automatic dialing system or an artificial or recorded voice. . . ."

### C. The Complaint Alleges the Defendant Has Violated the TCPA in its Collection Efforts.

It is undisputed that Defendant makes unsecured personal loans to consumers.[12]  These loans have very high interest rates and are targeted at those with low incomes.  In December, 2005, Plaintiff applied for a personal loan with CashCall in the amount of $2,600.00.[13]  CashCall loaned her $2,525.00 on the condition that she agree to pay 89.81% interest.[14]  This meant that in return for receiving $2,525.00, Plaintiff was to pay finance charges of nearly $6,000.00, for a total repayment of $8,440.52.[15]  Desperate, Plaintiff, like so many other distressed consumers, agreed.  This, of course, did not take into account other "charges or late fees"[16] that might subsequently be incurred on the loan.[17]  In Defendant's contract with Plaintiff, Defendant had a clause that stated Defendant, but not Plaintiff, could recover attorneys' fees and costs if attorneys were hired, even if Defendant did not prevail.[18]  Plaintiff was also required to waive any statutes of limitations should Defendant decide to sue.[19]   In short, by applying for this loan, Plaintiff was signing up to be a victim of predatory lending.

As part of the "loan process," Plaintiff was required to give Defendant all her telephone numbers, including her cellular telephone number.[20]  This request

---

[12] See Jointly Submitted Statement of Undisputed Facts ("UF"), #1.
[13] See Exhibit A to Jointly Submitted Statement of Undisputed Facts, TILA Statement.  See also, UF, Item #2.

[14] *Id.*, Exhibit A, TILA Statement.

[15] *Id*.

[16] Defendant adds an "origination fee" and "late fees."

[17] Exhibit A, page 3, paragraph 2 and 3.

[18] *Id.*, paragraph 7.

[19] *Id.*, paragraph 10.

[20] Exhibit A.  See also, UF, Item #3.

appeared to be innocuous. It was one of many requests for information, and nowhere did CashCall state that by giving the requested number, Plaintiff was agreeing to have her cellular telephone flooded with calls by automated machines or playing prerecorded messages.

Plaintiff eventually found herself in a position of being unable to make timely payments.[21] Consequently, Defendant began collection efforts.[22] As part of these efforts, Defendant began placing calls to Plaintiff's cellular telephone number.[23] Using an automated telephone dialing system that placed prerecorded messages, Defendant was able to repeatedly cause Plaintiff to incur charges on her cellular telephone bill.[24] Believing she had to endure this type of abuse, Plaintiff never complained.[25]

When Congress wrote the TCPA, they recognized that the use of automated dialers, with prerecorded messages, was not only an invasion of privacy, but potentially costly for consumers, as well. 47 U.S.C. § 227(b)(2)(B) authorizes the FCC to exempt noncommercial calls from the prohibition on prerecorded messages to *residences*. By comparison, 47 U.S.C. § 227(b)(2)(C) gives the Commission authority to exempt from the prohibition on autodialed or prerecorded message calls to wireless numbers contained in section 227(b)(1)(A)(iii) only those "calls to a telephone number assigned to a cellular telephone service *that are not charged to the called party*, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights the provision is intended to protect."

---

[21] UF, Item #7.

[22] *Id.*

[23] UF, Item #8.

[24] UF, Item #12.

[25] UF, Item # 14-16.

1   (Emphasis added). Consequently, Congress clearly viewed calls charged to

2   cellular telephone users to be important.

3       In 2003, the Commission clarified the rules on autodialed and prerecorded

4   message calls to wireless telephone numbers.[26] Specifically, the Commission

5   affirmed that it is unlawful "to make any call using an automatic telephone dialing

6   system or an artificial or prerecorded message to any wireless telephone number"

7   (emphasis added).[27] In its recent Ruling, the FCC again makes it clear that, in

8   their view, Congress intended to make all calls to cellular telephones using

9   automated dialers, or prerecorded messages illegal unless they were for an

10   emergency purpose or with "prior express consent of the called party,"[28] and,

11   indeed, this is the clear language of the TCPA.

12       In para. 11 of the Ruling, the FCC states, "We also reiterate that the plain

13   language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any

14   call to a wireless number in the absence of an emergency or the prior express

15   consent of the called party." The FCC then cites the Congressional record and

16   states, "We note that this prohibition applies regardless of the content of the call,

17   and is not limited only to calls that constitute "telephone solicitations."

18       However, by its Ruling, the FCC then overstepped its authority and

19   redefined the legal meaning of "express consent." They freely acknowledged that

20   because of 47§ 227(b)(1)(A)(iii), they do not have the authority to change the

21   TCPA with regard to calls to a telephone numbers assigned to a cellular telephone

22   service that are charged to the called party. Ruling, para. 3. But they proceeded to

23   do so with the Ruling, nonetheless.

---

[26] 2003 TCPA Order, 18 FCC Rcd at 14115, para. 165. See 47 U.S.C. § 227(b)(1), which contains exceptions for calls made for emergency purposes or made with the prior express consent of the called party.

[27] *Id.*

[28] *Id.*, fn 41.

1    Congress did not provide administrative agencies with unlimited power to

2    rewrite statutes diametrically opposed to the language as set forth by Congress.  In

3    fact, the Administrative Procedures Act ("APA") specifically provides the Court

4    with the authority to review and set aside agency action.   As set forth below,

5    pursuant to the APA, this Court may overrule the FCC on this issue.   Plaintiff

6    submits this is a case for just such action by the Court to decide if the FCC did in

7    fact  step in where no "clarification" was necessary.  The TCPA clearly provides

8    for "express consent;"[29] the implied consent now allowed by the Ruling is *not*

9    "express consent".

10   **D. This Court Has the Authority to Nullify the FCC's January 2008**

11   **Ruling on What Constitutes "Prior Express Consent" Under the**

12   **TCPA.**

13       1.  The *Chevron* Test Mandates the Setting Aside of the FCC Ruling.

14           a.  The Administrative Procedures Act Permits Review by this

15               Court.

16   The Administrative Procedure Act (APA) provides administrative agencies

17   with specific rule-making authority. 5 U.S.C. § 551(4).  The APA defines a rule as

18   the "whole or a part of an agency statement of general or particular applicability

19   and future effect designed to implement, interpret, or prescribe law . . ." *Id.*

20   Nevertheless, Congress did not provide administrative agencies with unlimited

21   power to rewrite statutes diametrically opposed to the language as set forth by

22   Congress.  In fact, the APA specifically provides the Court with the authority to

23   review and set aside agency action.   5 U.S.C. 706 states:

24       To the extent necessary to decision and when presented, the reviewing
         court shall decide all relevant questions of law, interpret constitutional
         and statutory provisions, and determine the meaning or applicability
25       of the terms of an agency action. The reviewing court shall- . . .
             (2) *hold unlawful and set aside agency action, findings, and conclusions*
26           *found to be* –

27

28

---

[29] See 47 U.S.C. § 227(b)(1)(A).

1

2

3

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) *in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . .*

*Id.* (emphasis added.)

> b. *Chevron* Mandates That the FCC Ruling be Nullified as to Its Redefining the Meaning of "Prior Express Consent" Because the Statute is Not Ambiguous and No Gap Was Left by Congress as to that Phrase.

In 1984 the U.S. Supreme Court decided *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 104 S. Ct. 2778 , 81 L. Ed. 2d 694 (1984).  In general, *Chevron* attempts to analyze the Court's role in evaluating an agency's actions in, among other things, interpreting a statute.  The issue comes down to the amount of deference this or other reviewing courts should give to the agency's actions.  The question is should the court essentially overrule the agency's attempts to interpret or expand the statutes?  Here, Plaintiff submits *Chevron* and its progeny make it clear that this Court should not defer to the FCC's interpretation of the phrase "prior express consent" in the FCC's Ruling.

*Chevron* details a two-step analysis for reviewing courts.  However, here all that is necessary is the first step of that analysis, i.e., whether the intent of Congress is clear from the statute.  If so, that is the end of the inquiry and the agency's attempt to expand or interpret the underlying statute is void.  As the Court explained,

> First, always, is the question whether Congress has directly spoken to the precise question at issue.  *If the intent of Congress is clear*, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Chevron*, *supra*, 467 U.S. at 842 (emphasis added).

That is exactly what is present here: an unambiguous, clear phrase  -- "prior express consent" -- with the Congressional intent obvious from the phrase itself.

1  Congress plainly intended that autodialer calls (or those with a prerecorded voice)

2  be made to cell phone owners only when they gave the caller "prior express

3  consent" to make those calls to their cell phones in such a manner.  No further

4  *Chevron* analysis is required; Chevron's first step is satisfied and no further

5  examination into whether the FCC's interpretation is reasonable is permitted.

6  In *Clark v. Capital Credit & Collection Servs., Inc*., 460 F.3d 1162, 1168

7  (9th Cir. 2006), the Ninth Circuit similarly spelled out the proper approach when

8  analyzing this issue, stating,

10  "Well-established canons of statutory construction provide that any inquiry into the scope and meaning of a statute must begin with the text of the statute itself. (Internal citations omitted.)  The Ninth Circuit
11  further cautioned that, "where the statute's language is plain, the sole function of the courts is to enforce it according to its terms … for
12  courts must presume that a legislature says in a statute what it means and means in a statute what it says there." (Internal citations omitted.)

13  *Clark, supra*, 460 F.3d at 1168.

15  The Ninth Circuit then continued and confirmed the FCC should not read

16  requirements into a statute that are not there:  "[When a] statute affirmatively

17  designates certain manners of operation, we are counseled that, under the doctrine

18  of *expressio unius est exclusio alterius*, these omissions are the equivalent of

19  exclusions. *See Arc Ecology v. United States Dep't of the Air Force*, 411 F.3d

20  1092, 1099-1100 (9th Cir. 2005); *In re Gerwer*, 898 F.2d 730, 732 (9th Cir. 1990)

21  ("The express enumeration [of an exception] indicates that other exceptions should

22  not be implied.") *Clark, supra*, 460 F.3d at 1169.

23  It is only when the Court determines that Congress did *not* "say what it

24  means" and when the agency then attempts to explain, limit or expand what

25  Congress said, that the Court must then engage in second step of the *Chevron*

26  analysis.  Here that second step is not needed because the statute is clear on its face

27  about the consent Congress intended:  "prior express consent".  That second step of

28  the analysis includes determining whether the agency's interpretation is

reasonable, or if it is beyond the range of the ambiguity found in the provision at issue. If the agency's interpretation is reasonable or permissible, the court then upholds the agency's interpretation, even if the Court finds it is not the best interpretation or one the Court would find on its own. As the *Chevron* Court explained:

> If however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
>
> . . . If Congress has explicitly left a gap for the agency to fill, there is an express    delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."

*Chevron, supra*, 467 U.S. at 842-844 (emphasis added).[30]

Thus, under *Chevron*, if this Court finds under the first step of the analysis that the statute does *not* have a plain meaning, or cannot determine what Congress intended using traditional statutory construction, only then need this Court go further with the second step of the analysis. In that second step, this Court must find that the FCC Ruling fills a gap in the TCPA that Congress explicitly left for the FCC to fill. That is not the case here as there is no "gap" in Congress' phrase "prior express consent". What the FCC Ruling does is not fill any such "gap" but attempts to change the plain, unambiguous meaning of "prior express consent" by expanding and giving new meaning to the phrase – a meaning contrary to its plain meaning intended by Congress.

---

[30] One can certainly understand the need for many agencies to fill in gaps left by Congress in statutes, such as technical EPA requirements, FDA standards, etc. But no such technical assistance was or is needed here as the FCC has no expert technical expertise that members of Congress did not have on the issue of express consent.

1    But this is where the FCC failed in its task: here the Congress made it

2    perfectly clear what kind of consent was required under the TCPA -- "prior express

3    consent". Congress did *not* leave a gap or *omit* the type of consent they intended to

4    be required of a called party. Congress did not just say "consent" was needed,

5    either. Congress made it clear, and meant what it said, that not only was "consent"

6    necessary, but that "consent" had to be "express" -- not implied or another type of

7    consent. Furthermore, the "express consent" had to be "prior" "express consent",

8    provided *in advance of* the cell phone calls. So where is the ambiguity that had to

9    be "clarified" with a new and contrary definition to the statute, thereby absolving

10   debt collectors of liability under the FCC Ruling? Where is the gap?  There is

11   neither here, and under *Chevron*, that portion of the FCC Ruling redefining "prior

12   express consent" must be nullified, at least for purposes of this case.

13   And taken a step further, if the Court does find that the Ruling fills a "gap"

14   Congress intended the FCC to fill, satisfying that part of the second step, the

15   Ruling still must be overruled and cannot be "given controlling weight" because

16   the meaning given to "prior express consent" by the Ruling does not satisfy the

17   final *Chevron* requirement:  that it not be "*arbitrary, capricious, or manifestly*

18   *contrary to the statute,*" as set forth in the quote above. Here it is plainly at the

19   very least "manifestly contrary to the statute" because, as explained above, the

20   FCC's Ruling as to what constitutes "prior express consent" blatantly contradicts

21   the intent of Congress as plainly set forth in the statute. The FCC's Ruling states

22   that "prior express consent" is defined to include a situation where the recipient

23   provided a cell phone number on an application for goods or services earlier in the

24   relationship. Nonsense. Such basic identifying information is not and cannot be

25   interpreted as the cell phone owner providing "prior express consent" to receiving

26   calls made by creditors, debt collectors or anyone else attempting to call their cell

27

28

1  phones using an autodialer or a prerecorded voice that are plainly prohibited by the

2  TCPA.[31]

3       c.  Traditional Rules of Statutory Construction Confirm the

4           Statutory Language is   Not Ambiguous.

5       The traditional rules of statutory construction require the Court to look first

6  at the statute's plain meaning.  Or put another way by the U.S. Supreme Court:

7  "We have stated time and time again that courts must presume that a legislature

8  says in a statute what it means and means in a statute what it says there.  . . .  When

9  the words of a statute are unambiguous, then, this first canon is also the last:

10 'judicial inquiry is complete'".  *Connecticut National Bank v. Germain*, 112 S. Ct.

11 1146, 1149, 503 U.S. 249, 117 L.Ed.2d 391 (1992).   Courts have repeatedly held

12 that the plain meaning of the statute controls, unless that would lead to "absurd

13 results", or would be contrary to the legislative intent.  As the Court held in *Dyer v.*

14 *U.S.*, 832 F.2d 1062, 1066 (9th Cir. 1987):

15

16       The language of a regulation or statute is the starting point for its
         interpretation.  *Consumer Product Safety Comm'n v. GTE Sylvania,*
17       *Inc.*, 447 U.S. 102, 108; 100 S. Ct. 2051, 2056, 64 L.Ed.2d 766
         (1980).   The plain meaning governs unless a clearly expressed
18       legislative intent is to the contrary, id., or unless such plain meaning
         would lead to absurd results. *Bechtel Const., Inc. v. United Bhd. of*
19       *Carpenters*, 812 F.2d 1220, 1225 (9th Cir.1987).   Moreover, if the
         statute is plain on its face, "statements in legislative history do not
20       sway our decision" unless it would lead to absurd results.  *U.S. v.*
         *Hagberg*,  207 F.3d 569, 574 (9th Cir. 2000).

21 *Dyer, supra*, 832 F.2d at 1066.

22      In summary, *Chevron* stands for the proposition that if Congress has directly

23 addressed an issue, then that issue is "off limits" to any agency charged with

24 implementing or enforcing the statute.   *Chevron, supra*, 467 U.S. at 843, fn.9

25

26 _____

27 [31] Despite some language to the contrary in early FCC rulings and regulations, at present debt
    collectors attempting to collect a debt are subject to the TCPA's prohibitions.  See Ruling, para.
28 10: "Calls placed by a third-party debt collector on behalf of that creditor are treated as if the
    creditor itself placed the call"; fn. 38: "A third party collector may also be liable for a violation
    of the Commission's rules."

1   confirms that courts must reject agencies' attempts to modify the clear intent of
2   Congress: "The judiciary is the final authority on issues of statutory construction
3   and must reject administrative constructions which are contrary to clear
4   congressional intent. (citations omitted.)  If a court, employing traditional tools of
5   statutory construction, ascertains that Congress had an intention on the precise
6   question at issue, *that intention is the law and must be given effect."* (emphasis
7   added).  Here, based upon traditional statutory construction analysis as *Chevron*
8   requires, it is clear the phrase "prior express consent" at issue is not ambiguous and
9   the intent of Congress is clear from that language.

10          Here under statutory construction principles, it is clear the statute's plain
11  meaning is what it says, and is contrary to the FCC's Ruling.

12                    d.  Case Law Confirms The Statute's Plain Meaning.

13          There is very little case law on the issue of "express consent", perhaps
14  because the term is so clear to anyone looking at it.  However, in the case of *Travel*
15  *Travel Kirkwood, Inc. v. Jen N.Y. Inc.*, 206 S.W.3d 387, 2006 Mo. App. LEXIS
16  1740 (Mo. Ct. App. 2006), the court was asked to review this issue.[32]  There the
17  plaintiff sued the defendant pursuant to the provision of the TCPA prohibiting
18  faxes unless the recipient has provided "prior express invitation or permission".
19  Judgment was entered against defendant fax transimtter on summary judgment.
20  On appeal, the defendant argued that the plaintiff expressly consented to plaintiff's
21  conduct because plaintiff had previously signed an agreement stating, "The
22  applicant authorizes the International Airlines Travel Agent Network to release the
23  information contained herein to any industry supplier that may wish to use the
24  applicant's services."  The defendant argued that such a statement was "express
25  consent."  The court said it was not.  In its opinion, the court stated:

26
27
28  [32] For the Court's convenience, this case is attached to the Plaintiff's Request for Judicial Notice
    as Exhibit 4.

1
2
3
4
5
6

Black's Law Dictionary defines "express" as "clearly and unmistakably communicated; directly stated." Black's Law Dictionary 601 (7th ed. 1999)." "Express consent" is defined as "consent that is clearly and unmistakably stated." (Internal citation omitted).   An earlier edition of Black's Law Dictionary further clarifies the meaning of "express" in its discussion of its antonym, "implied," and states in relevant part: This word is used in law in contrast to "express"; i.e., where the intention in regard to the subject-matter is not manifested by explicit and direct words, but is gathered by implication or necessary deduction from the circumstances, the general language, or the conduct of the parties. Black's Law Dictionary 679 (5th ed. 1979).

7
8
9
10
11
12

The defendant seems to believe that the plaintiff's agreement to release of its fax number to IATAN members necessarily implies consent to receive unsolicited advertisements from such members. But even if that were the case, the defendant ignores the fact that implicit consent is insufficient under the law. *If the consent is not manifested by explicit and direct words, but rather is gathered only by implication or necessary deduction from the circumstances, the general language, or the conduct of the parties, it is not express consent.* Rather, it is merely implied consent. And, without express consent, the law forbids the defendant from sending unsolicited facsimiles to the plaintiff.

13
14
15
16

We hold that IATAN membership did not constitute "prior express invitation or permission" under the Act for the defendant to send the plaintiff the 31 unsolicited facsimiles. The Federal Communications Commission's interpretation of the statute and the plain meaning of the word "express" cause us to conclude that IATAN membership did not constitute express consent, which the law mandates.

17
18
19

*Travel Travel Kirkwood, Inc. v. Jen N.Y. Inc.*, 206 S.W.3d 387, 2006 Mo. App. LEXIS 1740, [**13 - **14] (Mo. Ct. App. 2006) (emphasis added).

20
21
22
23

Thus, the court found express consent is contrary to implied consent, which is the difference here between the TCPA's requirement of "prior express consent" and the FCC's Ruling requiring only what amounts to implicit consent, at best, and no consent to the acts requiring consent, at worst.

24

## IV.   CONCLUSION

25
26
27
28

As the U.S. Supreme Court stated in *Connecticut National Bank v. Germain*, 112 S. Ct. 1146, 1149, 503 U.S. 249, 117 L.Ed.2d 391, "We have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  . . . When the words of a statute

are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete'". Here Congress said and meant "prior express consent" is required to avoid TCPA liability. Any attempt by the FCC to redefine and change that plain statutory meaning should be set aside.

Dated: March 17, 2008                                    Respectfully submitted,

                                                         LAW OFFICE OF
                                                         DOUGLAS J. CAMPION

                                                         By: /s/ Douglas J. Campion__
                                                         Douglas J. Campion
                                                         Attorneys for Plaintiffs

                                                         Co-Counsel

                                                         HYDE & SWIGART

Dated March 17, 2008                                     By: /s/ Joshua B. Swigart___
                                                         Joshua B. Swigart
                                                         Attorneys for Plaintiffs