# EXHIBIT 2

STEIN, MITCHELL & MEZINES

DOCKET FILE COPY ORIGINAL

**BEFORE THE**
**FEDERAL COMMUNICATIONS COMMISSION**
**WASHINGTON, D.C. 20554**

**RECEIVED**

OCT - 5 2005

Federal Communications Commission
Office of Secretary

In the Matter of                                         )
                                                                    )
**Rules and Regulations Implementing the**       )
**Telephone Consumer Protection Act of 1991**   )        **CG Docket No. 02-278**
                                                                    )
**ACA International's Petition for an**              )
**Expedited Clarification and Declaratory Ruling** )

**ACA INTERNATIONAL'S PETITION FOR AN**
**EXPEDITED CLARIFICATION AND**
**DECLARATORY RULING**

**FILED OCTOBER 4, 2005**

<table>
<tr><td>Rozanne M. Andersen, Esq.<br>ACA International<br>4040 W. 70th Street<br>Minneapolis, MN 55435</td><td>Andrew M. Beato, Esq.<br>Stein, Mitchell & Mezines, LLP<br>1100 Connecticut Avenue, N.W.<br>Suite 1100<br>Washington, DC 20036</td></tr>
<tr><td>*ACA General Counsel*<br>*Senior Vice President of Legal and*<br>*Governmental Affairs*</td><td>*ACA Federal Regulatory Counsel*</td></tr>
</table>

No. of Copies rec'd _O74_
List ABCDE

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

## TABLE OF CONTENTS

I.     Introduction..............................................................................................................2

II.    Background On The Petitioner ACA International ....................................................4

III.   Summary Of The Petition And The Need For Relief.................................................8

IV.    Congress Did Not Intend the TCPA Autodialer Restriction
       To Apply To Calls To Recover Payments...............................................................12

V.     The Commission Always Has Interpreted The Autodialer
       Restriction To Not Apply To Calls To Recover Payments.....................................14

       A.     The 1992 TCPA Notice of Proposed Rulemaking..................................16

       B.     The 1992 TCPA Order ..........................................................................17

       C.     The 1995 Reconsideration Order............................................................17

       D.     The 2003 TCPA Order ..........................................................................18

VI.    The Commission Should Clarify That The Autodialer Restriction
       Does Not Apply To Calls To Recover Payments....................................................20

VII.   A Declaratory Ruling Is Of Immediate And National Importance .........................22

VIII.  Conclusion..............................................................................................................22

*- The remainder of this page intentionally left blank -*

1

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

## I.    Introduction

Pursuant to 47 C.F.R. § 1.2 and section 554(e) of the Administrative Procedures Act, 5

U.S.C. § 554(e), ACA International ("ACA") files this Petition with the Federal

Communication Commission ("Commission") to request an expedited declaratory ruling.[1]

ACA requests the ruling to remove uncertainty and clarify that the amendments by the

Commission in 2003 to the Telephone Consumer Protection Act ("TCPA")[2] regulation did not

alter the Commission's previous findings that the TCPA's automatic telephone dialing system

restriction[3] does not apply to creditors and collectors when calling telephone numbers to

attempt to recover payments for goods and services received by consumers. The ruling

requested by ACA *makes no change to the TCPA regulations*. Instead, it will clarify the

continued inapplicability of the autodialer restriction to calls placed by or on behalf of

---

[1]    47 C.F.R. § 1.2 authorizes the Commission on motion to issue a declaratory ruling to remove uncertainty concerning its rules in accordance with section 5(d) of the Administrative Procedures Act.

[2]    Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), *codified at* 47 U.S.C. § 227.

[3]    The TCPA rules state that no person or entity may initiate any telephone call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system to any telephone number assigned to a cellular telephone service. 47 C.F.R. § 64.12000(a)(1)(iii). Automatic telephone dialing system and autodialer include equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. 47 C.F.R. § 64.1200(f)(1).

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

creditors when attempting the recovery of payment obligations.

ACA requests an expedited resolution of this Petition in light of the significant negative economic impact on thousands of small businesses in the accounts receivable management industry created by uncertainty as to the continued inapplicability of the autodialer restriction following amendments promulgated by the Commission in 2003.[4] Part II of this Petition provides background information on ACA and its members, including the contributions they make to the health of the domestic economy. Part III summarizes the Petition and the need for declaratory relief. Part IV discusses the intent of Congress to not subject to the TCPA calls by or on behalf of creditors when attempting to recover payment for goods and services. Part V summarizes the findings in the 1992 TCPA rulemaking, and 1995 reconsideration order, which expressly state that the autodialer restriction does not apply to the recovery of payments owed creditors. Finally, Parts VI and VII explain the need for prompt Commission action to clarify that continued inapplicability of the autodialer restriction.

---

[4]    In August 2005, ACA filed a comment now pending with the Commission in a Regulatory Flexibility Act proceeding. The comment seeks relief similar to that requested here. *See* Comment of ACA International on FCC's Request for Comment Regarding Possible Revision or Elimination of Rules Under the Regulatory Flexibility Act, DA-05-1524 (filed Aug. 30, 2005) (hereinafter "Section 610 Proceeding"). More than 80 ACA members filed comments supporting the relief requested by ACA. In the event that the Commission grants in the Section 610 Proceeding the relief requested herein, ACA intends to withdraw this Petition.

3

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

## II.    Background On The Petitioner ACA International

ACA International is an international trade organization of credit and collection companies that provide a wide variety of accounts receivable management services. Headquartered in Minneapolis, Minnesota, ACA represents approximately 5,800 company members ranging from credit grantors, collection agencies, attorneys, and vendor affiliates.

The company-members of ACA comply with applicable federal and state laws and regulations regarding debt collection, as well as ethical standards and guidelines established by ACA. Specifically, the collection activity of ACA members is regulated primarily by the Federal Trade Commission under the Federal Trade Commission Act, 15 U.S.C. § 45 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (as amended by the Fair and Accurate Credit Transactions Act); the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*; in addition to numerous other federal and state laws. Indeed, the accounts receivable management industry is unique if only because it is one of the few industries in which Congress enacted a specific statute governing all manner of communications with consumers when recovering payments.[5] In so doing, Congress committed the regulation of the recovery of debts to the jurisdiction of the Federal Trade Commission. 15 U.S.C. § 1692l.

---

[5]    The FDCPA defines "communications" subject to statute broadly to include "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. §1692a(2).

4

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

ACA members range in size from small businesses with several employees to large, publicly held corporations. Together, ACA members employ in excess of 100,000 workers. These members include the very smallest of businesses that operate within a limited geographic range of a single state, and the very largest of multinational corporations that operate in every state. The majority of ACA members, however, are small businesses. Approximately 2,000 of the company members maintain fewer than 10 employees, and more than 2,500 of the members employ fewer than 20 persons. Many of the companies are wholly or partially owned or operated by minorities or women.

One commonality in the diverse membership of ACA is the use of autodialers. This technology is used to contact consumers (i.e., the customers of creditors) by telephone. Telephone calls are the most efficient way to contact customers, and many customers today use cell phones as their primary, exclusive, and/or preferred method of contact.

When contacting customers, ACA members use autodialers for *non-telemarketing reasons.* The purpose of these telephone communications is to recover payment for obligations owed to creditors. Many of these communications are initiated using autodialers to dial specific telephone numbers. The calls are not random or sequential. They are limited to customers of creditors who have received a service or product without payment. Typically the telephone number is provided by the customer for purposes of receiving calls, for example, as part of a credit application. Moreover, the calls do not involve advertising or soliciting the

5

STEIN, MITCHELL & MEZINES

ACA International
CG Docket No. 02-278

sale of products or services. Instead, they are placed to complete a transaction in which a

customer has received a product, service, loan or other thing of value without paying for it.

*This single fact distinguishes the communications of ACA members from those of*

*telemarketers subject to the TCPA.*

Autodialers are more than a tool of efficiency.[6] The technology confers unique

benefits to consumers and creditors in the context of the non-telemarketing calls placed by

ACA members. For example, autodialers are precise. They maximize customers' privacy

about sensitive financial information by eliminating dialing errors that risk inadvertent

contacts with third parties not responsible for the account. Federal and state laws specifically

prohibit such third party disclosures.[7] Autodialers also are programmed to restrict calls to

designated area codes within the calling times prescribed by federal and state laws. Further, as

---

[6]    Autodialers are required to initiate these calls either as a consequence of the
exponential growth of consumer debt or creditors' specific requirements. As noted, *infra*, the
growth of consumer debt is well documented. For example, the Board of Governors of the
Federal Reserve System has reported that more than $216 billion in past due accounts were
referred to collection agencies in 1999, with approximately $30.4 billion recovered and
returned to the economy. In 1990, only $73 billion was placed for collection.

[7]    The Fair Debt Collection Practices Act and analogous state laws prohibit
communications with third parties regarding the existence of a debt. Acting on a petition for
reconsideration filed by ACA, the Commission clarified in its Second Reconsideration Order
that the state-registered names of ACA members need not be delivered in prerecorded
messages where doing so would violate the FDCPA's prohibition against third party
communications. *See Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991*, CG Docket No. 02-278, Second Order on Reconsideration, 20 FCC
Rcd 3788, paras. 36-37 (rel. Feb. 10, 2005) (hereinafter *"Second Order on Reconsideration"*).

6

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

the Commission previously has stated, the technology allows for a reliable way for consumers to learn about their accounts and arrange for payment.[8] Consequently, autodialers are an important tool that creditors use to control the cost of credit for all consumers, and to keep consumers informed and avoid unnecessary delinquencies and defaulted accounts.

In a broader sense, ACA members use autodialers as a crucial component in safeguarding the health of the economy. Uncollected consumer debt threatens America's economy. According to the Federal Reserve Board and United States Census Bureau, total consumer bad debt costs every adult in the United States $683 every year. This translates into a cost for the average non-supervisory worker of nearly 54 hours (before taxes) in annual salary that pays for the bad debt of other consumers. By itself, outstanding credit card debt has doubled in the past decade and now approaches three quarters of one trillion dollars. Total consumer debt, including home mortgages, exceeds $9 trillion.[9] Moreover, the greatest increases in consumer debt are traced to consumers with the least amount of disposable income to repay their obligations.

---

[8]     Notice of Proposed Rulemaking in the Matter of the Telephone Consumer Protection Act of 1991, 7 FCC Rcd 2736, para. 15 (rel. April 17, 1992) ("The use of autodialers in debt collection increases efficiency of the collector who no longer has to deal with unanswered calls, and is beneficial to the called party by making them aware of the company's inquiry").

[9]     William Branigan, *U.S. Consumer Debt Grows at an Alarming Rate*, Wash. Post, Jan. 12, 2004.

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

As part of the process of attempting to recover outstanding payments, ACA members

are an extension of every community's businesses. They represent the local hardware store,

the retailer down the street, and your family doctor. ACA members work with these

businesses, large and small, to obtain payment for the goods and services received by

consumers. In years past, the combined effort of ACA members have resulted in the recovery

of billions of dollars annually that are returned to business and reinvested. For example, ACA

members recovered and returned over $30 billion in 1999 alone, a massive infusion of money

into the national economy. Without an effective collection process, the economic viability of

these businesses, and by extension, the American economy in general, is threatened. At the

very least, Americans are forced to pay higher prices to compensate for uncollected debt.

### III.    Summary Of The Petition And The Need For Relief

The TCPA and the Commission's implementing regulation prohibit the use of an

autodialer to call a telephone number assigned to a cellular telephone service, other than a call

made for emergency purposes or made with the prior express consent of the called party.[10]

Autodialer means any equipment which has the capacity – (A) to store or produce telephone

numbers to be called, using a random or sequential number generator; and (b) to dial such

numbers.[11]

---

[10]    47 U.S.C. § 227(b)(1)(A)(iii) & 47 C.F.R. § 64.1200(a)(1)(iii).

[11]    47 U.S.C. § 227(a)(1) & 47 C.F.R. § 64.1200(f)(1).

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

In 1992, and again in 1995, the Commission stated that calls by or on behalf of creditors to recover payments are not subject to the TCPA prohibition on autodialer calls to wireless numbers because the calls (1) are not random or sequential, (2) do not convey unsolicited advertisements, (3) do not convey telephone solicitations, (4) do not adversely affect consumers' privacy rights, and (5) are made pursuant to an established business relationship and with prior express consent.

In July, 2003, the Commission released a Report and Order revising its TCPA regulations.[12] In the *2003 TCPA Order*, the Commission concluded that a predictive dialer is within the meaning and statutory definition of automatic telephone dialing equipment because the technology has the capacity to store or produce telephone numbers.[13] This conclusion in the has created uncertainty concerning the status of the pre-existing Commission findings that calls by and behalf of creditors seeking to recover payments are not subject to the autodialer restriction. As a result, the continued inapplicability of the autodialer restriction to these calls now must be confirmed.

Further creating uncertainty is the fact that there has been no change to the TCPA statutory language, and the Commission's new interpretation adopted in 2003 did not change

---

[12]    *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) ("*2003 TCPA Order*").

[13]    *2003 TCPA Order*, para. 133.

9

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

the pertinent regulatory language. Moreover, there is no evidence in the administrative record

to support a reversal of the Commission's long-held findings as applied to calls by or on behalf

of creditors. Nor did the *2003 TCPA Order* state that the Commission was overturning its

previous findings that the autodialer restrictions do not apply to creditors and collectors

seeking to recover payments from consumers.[14]

ACA respectfully submits that there is substantial need for expeditious action by the

Commission. ACA members have suffered harm as a result of the uncertainty regarding the

inapplicability of the amended autodialer rules to creditors and collectors when telephoning

consumers to attempt recovery of payment obligations. This injury includes, but is not limited

to, (1) the risk of civil litigation, including class action exposure; (2) the risk of government

enforcement by the Commission; and (3) economic harm based on the inability to use

autodialers. The injury is substantial. It will continue until the Commission removes the

uncertainty by issuing a ruling.

---

[14]    The Commission made numerous statements in the *2003 TCPA Order* expressing
sensitivity to its prior findings about the inapplicability of the TCPA to creditors and collectors
seeking to recover payments. *See e.g., 2003 TCPA Order*, para. 7 ("In a Memorandum
Opinion and Order released on August 7, 1995, the Commission . . . clarified treatment of debt
collection calls. . . ."); *id.* n.358 ("We also note that the act of 'terminating' an established
business relationship will not hinder or thwart creditors' attempts to reach debtors by
telephone, to the extent that debt collection calls constitute neither telephone solicitations nor
include unsolicited advertisements"); *id.* n.421 ("Unlike debt collection calls, a consumer may
'terminate' an established business relationship with a company offering debt consolidation
services by requesting placement on a company-specific do-not-call list").

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

Removing the uncertainty by issuing a declaratory ruling is in the public interest. It is well documented that consumers particularly are harmed by uncollected debt because of higher prices and interest rates. ACA members play a vital role in recovering and returning to business billions of dollars annually (greater than $30 billion in 1999 alone) – representing a massive infusion of money into the national economy. Telephone communications, including the use of autodialers, are an integral component of this effort.

Finally, ACA has tailored its request to have no impact on the Commission's overall regulatory scheme under the TCPA. This is because the requested ruling would apply only to the creditors and collectors in the accounts receivable management industry when using autodialers to attempt the recovery of payments. This conduct is not telemarketing.[15] Nor does it involve an advertisement or solicitation for goods or services according to the Commission. Moreover, the Federal Trade Commission – the primary federal regulatory of the credit and collection industry – already has concluded that debt collection calls do not constitute "telemarketing" under the Telemarketing Sales Rule.[16] For these reasons, as more

---

[15]    The Commission's regulations define "telemarketing" as the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. §64.1200(f)(7). As the Commission repeatedly has stated, creditors and collectors calling consumers to recover payments are not selling or marketing goods or services. Rather, they contact consumers for the primary purpose of completing a transaction from which consumers already have obtained a benefit, but have not fully paid.

[16]    FTC, *Telemarketing Sales Rule*, 68 Fed. Reg. 4580, 4664 n.1020.

11

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

fully discussed below, ACA submits that a declaratory ruling is warranted and in the public

interest.

    **IV.**    **Congress Did Not Intend The TCPA Autodialer Restriction**
             **To Apply To Calls To Recover Payments**

    Congress enacted the TCPA to curtail the onslaught of telemarketing calls invading the

privacy of American homes where there was neither an existing business relationship between

the caller and the called party nor the express consent of the called party to a telephone

solicitation or advertisement. Congress recognized the delicate balance required to protect the

individual's privacy rights while not interfering with business relationships. Congress was

particularly mindful that "[i]ndividual privacy rights, public safety interests, and commercial

freedoms of speech and trade must be balanced in a way that protects the privacy of

individuals and permits legitimate telemarketing practices."[17]

    The TCPA balances these interests by restricting certain uses of autodialers by

telemarketers. Except for emergency calls or calls made with the *prior express consent* of the

person called, the statute provides that autodialers may not be used for telemarketing in order

to call a cellular telephone service or any service for which the person being called would be

charged for the call. In relevant part, the TCPA made it unlawful "to make any call (other than

a call made for emergency purposes or made with the prior express consent of the called party)

---

[17]    137 Cong. Rec. S18781-02, at S18782 (Nov. 27, 1991).

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call."[18]

The TCPA, however, does not prohibit the use of autodialers by creditors or collectors when attempting to recover payment obligations for goods and services received by consumers. The legislative history of the TCPA contains numerous statements from Members of Congress singling out the non-telemarketing conduct of creditors and collectors as *not a target* of the legislation. For example, former New York Representative Norman Lent stated:

> [The TCPA] explicitly recognizes that there are certain classes and categories of calls that consumers do not mind, and in fact would probably like to receive. *Calls informing a consumer that a bill is overdue*, or a previously unstocked item is now available at a store *are clearly not burdensome, and should not be prohibited.*[19]

Similarly, former Senator Fritz Hollings noted that "[s]ome debt collection agencies use automated or prerecorded messages for outstanding bills. The FCC should consider whether these types of calls should be exempted and under what conditions such an exemption should be granted either as a noncommercial call or as a category of calls that does not invade the privacy rights of consumers."[20]

---

[18]    47 U.S.C. § 227(b)(1)(A)(iii).

[19]    137 Cong. Rec. H11307-01 at H11312 (Nov. 26, 1991) (emphasis added).

[20]    137 Cong. Rec. S18781-02, S18784 (Nov. 27, 1991) (emphasis added).

13

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

Further, Congress gave the Commission the authority to carve out exceptions for calls that did not invade privacy rights and noted, in particular, that collection calls fall into this category. For example, Massachusetts Representative Edward Markey described the TCPA as allowing the Commission "to exempt, by rule or order, classes or categories of calls made for commercial purposes that do not 'adversely affect the privacy rights' that this section of the bill is intended to protect and, that 'do not include the transmission of any unsolicited advertisement.' *An example of such a use may be to leave messages with consumers to call a debt collection agency to discuss their student loan* or to notify a consumer that a product they have ordered is ready to be picked up at the store."[21]

As the preceding demonstrates, the intent of Congress was to curb the practices of telemarketers which, by 1990, had grown to such an extent so as to invade the residential privacy of consumers by pervasive telephone solicitations and unsolicited advertisements. However, Congress recognized that calls to consumers to notify them of overdue bills or to attempt recovery of payments are not telemarketing, do not infringe of privacy rights, and in fact serve beneficial purposes for consumers and creditors alike.

### V.    The Commission Always Has Interpreted The Autodialer Restriction To Not Apply To Calls To Recover Payments

For more than a decade, the Commission has stated that calls by or on behalf of

---

[21]    137 Cong. Rec. H-11307-01, H11310 (Nov. 26, 1991) (emphasis added).

14

STEIN, MITCHELL & MEZINES

ACA International
CG Docket No. 02-278

creditors to recover payments are not subject to the TCPA prohibition on autodialer calls to

wireless numbers. According to the Commission, the basis for this conclusion was that calls

to recover payments (1) are not random or sequential, (2) do not convey unsolicited

advertisements, (3) do not convey telephone solicitations, (4) do not adversely affect

consumers' privacy rights, and (5) are made pursuant to an established business relationship.[22]

The Commission also has stated that such calls are made with the prior express consent of the

called party.[23]

---

[22]    The established business relationship between a creditor and a consumer extends to
third party collection agencies. The TCPA regulations extended the relationship to affiliated
entities where the "subscriber would reasonably expect them to be included given the nature
and type of goods or services offered by the affiliate and the identity of the affiliate." 47 C.F.R.
§ 64.1200(f)(3)(ii). In addition, the Commission's *1992 TCPA Order* stated that "[w]hether
placed by or on behalf of the creditor, prerecorded debt collection calls would be exempt from
the calls to residences as: (1) calls from a party with whom the consumer has an established
business relationship, and (2) commercial calls which do not adversely affect privacy rights
and which do not transmit and unsolicited advertisement." *Rules and Regulations
Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278,
Report and Order, 7 FCC Rcd 8752, para. 39 (footnotes omitted) ("*1992 TCPA Order*"). *See
also* Notice of Proposed Rulemaking in the Matter of the Telephone Consumer Protection Act
of 1991, 7 FCC Rcd. 2736, para. 16 (rel. April 17, 1992) ("In addition, where a company
contracts with another company for debt collection services, the collection company acts on
behalf of the company holding the debt. Under such circumstances the collection company
becomes a party to the relationship between the company holding the debt and the called party
and the 'business relationship' exemption would apply to allow an auto dialer call to former or
current clientele").

[23]    *See 1992 TCPA Order*, para. 31 ("[i]f a call is otherwise subject to the prohibitions of
§ 64.1200, persons who knowingly release their phone numbers have in effect given their
invitation or permission to be called at the number which they have given, absent instructions
to the contrary"); *id.* at para. 37 ("[c]ommenters concur that debt collection calls are exempt as

15

STEIN, MITCHELL & MEZINES

ACA International
CG Docket No. 02-278

As summarized below, the administrative record contains numerous Commission statements and findings evidencing a decision not to regulate autodialed calls by creditors and collectors to cellular numbers when made for the purpose of attempting to recover payment for goods or services.

### A.    The 1992 TCPA Notice of Proposed Rulemaking

The Commission's 1992 notice of proposed rulemaking ("NPRM") stated that the use of an autodialer to attempt to recover an outstanding payment obligation is not intended to be prohibited by the statute and, in fact, has beneficial consumer value.

> It appears that some businesses are using auto dialers to improve the efficiency of their debt collection practices. In such applications the auto dialer either delivers a payment reminder to the customer or, frequently, the auto dialer dials up customers and immediately delivers answered calls to a live collection representative. The latter use is generally termed a predictive dialer: predictive dialers sometimes deliver a recorded message to a small percentage of called parties when all live operators are busy. The use of auto dialers in debt collection increases the efficiency of the collector who no longer has to deal with unanswered calls, and is beneficial to the called party by making them aware of the company's inquiry. *To the extent such practices comply with all other state or federal debt collection laws, it appears that this is a non-telemarketing use of auto dialers not intended to be prohibited by the TCPA.* Although debt collection calls do not offer products or services, they are indeed commercial in nature and do not fall under the proposed exemption for non-commercial calls.[24]

calls to parties with whom the caller has a prior or existing business relationship, and further argue that *debtors have given prior express consent to such calls by incurring a debt*") (emphasis added).

[24]    Notice of Proposed Rulemaking in the Matter of the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 2736, para. 15 (rel. April 17, 1992) (emphasis added).

16

STEIN, MITCHELL & MEZINES

ACA International
CG Docket No. 02-278

### B.  The 1992 TCPA Order

The *1992 TCPA Order* by the Commission adopted the NPRM statements that creditors and collectors non-telemarketing use of autodialers is not subject to the TCPA. Specifically, the Commission stated:

> Upon consideration of these comments, we conclude that an express exemption from the TCPA's prohibitions for debt collection calls is unnecessary because such calls are adequately covered by exemptions we are adopting here for commercial calls which do not transmit an unsolicited advertisement and for established business relationships. As proposed in the NPRM, these exemptions would also apply where a third party places a debt collection call on behalf of the company holding the debt. Whether the call is placed by or on behalf of the creditor, prerecorded debt collection calls would be exempt from the prohibitions on such calls to residences as: (1) calls from a party with whom the consumer has an established business relationship, and (2) commercial calls which do not adversely affect privacy rights and which do not transmit an unsolicited advertisement. With respect to concerns regarding compliance with both the FDCPA and our rules in prerecorded message calls, *we emphasize that the identification requirements will not apply to debt collection calls because such calls are not autodialer calls (i.e., dialed using a random or sequential number generator) and hence are not subject to the identification requirements for prerecorded messages in 64.1200(e)(4) of our rules.*[25]

### C.  The 1995 Reconsideration Order

Three years later, the FCC issued its Reconsideration Order and again confirmed that calls to wireless numbers seeking to recover payments are not subject to the prohibitions on the use of autodialers. In relevant part, the Commission stated as follows:

---

[25]    1992 TCPA Order, para. 39 (footnotes omitted, emphasis added).

17

**ACA International**
**CG Docket No. 02-278**

The TCPA requires that calls dialed to numbers generated randomly or in sequence (autodialed) and delivered by artificial or prerecorded voice message must identify the caller ("business, individual, or other entity") and give a telephone number or address at which the caller can be reached. *Household correctly points out that debt collection calls are not directed to randomly or sequentially generated telephone numbers, but instead are directed to the specifically programmed contact numbers for debtors.* As we stated in our Report and Order, such debt collection calls do not require an identification message. We thus clarify that the rules do not require that debt collection employees give the names of their employers in a prerecorded message, which disclosure might otherwise reveal the purpose of the call to persons other than the debtor.[26]

Also, in *1995 Reconsideration Order*, the Commission clarified that calls to recover

payment are not "telephone solicitations" or "unsolicited advertisements" as those terms are

defined in the TCPA.[27]  More recently, the FCC again stated that "debt collection calls

constitute neither telephone solicitations nor include unsolicited advertisements."[28]

### D.    The 2003 TCPA Order

Telemarketers in recent years began using predictive dialers which rely on lists of

numbers which are automatically dialed. The tactic was an attempt to circumvent the

---

[26]    *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Reconsideration Order, 10 FCC Rcd 12391, para. 19 (1995) (footnotes omitted, emphasis added) ("*1995 Reconsideration Order*").

[27]    *See e.g., 1995 TCPA Reconsideration Order*, para. 17 ("We have specifically noted that 'prerecorded debt collection calls [are] exempt from the prohibitions on [[prerecorded] calls to residences as . . . commercial calls . . . which do not transmit an unsolicited advertisement'").

[28]    *2003 TCPA Order*, para. 113 n. 358.

18

autodialer restriction because telemarketers asserted that they were not randomly or sequentially dialing consumers and, therefore, allegedly not bound by the autodialer restriction. As the Commission noted in 2003, predictive dialers are capable of estimating the amount of time it takes the average call to be picked up and the amount of time until a telemarketer will be able to take the call. Although they do not dial randomly generated numbers, "when paired with certain software, [they have] the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."[29]

To curb telemarketers' end-run around the autodialer restriction, the Commission in 2003 broadened its construction of what constitutes autodialers by including predictive dialers. Significantly, the statutory and regulatory language applicable to autodialers remained identical before and after the 2003 amendments. What changed was the Commission's construction of the regulation, as follows:

> [I]n order to be considered an "automatic telephone dialing system," the equipment need only have the "capacity to store or produce telephone numbers." It is clear from the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies. . . . Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of "automated telephone dialing equipment" and the intent of Congress.[30]

---

[29]    *2003 TCPA Order*, para. 131.

[30]    *2003 TCPA Order*, para. 133.

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

As noted, the Commission's statement in 2003 did not alter the existing regulatory language. Nor did the Commission expressly state that it was reversing the clear findings from 1992 and 1995 that the autodialer restriction does not apply to creditors and collectors seeking to recover payments from consumers.

## VI.    The Commission Should Clarify That The Autodialer Restriction Does Not Apply To Calls To Recover Payments

ACA believes that the record is clear that the *2003 TCPA Order* did not change or reverse the previous findings by the Commission that the autodialer restriction does not apply to creditor and collectors when recovering payments. However, to establish this with certainty, ACA respectfully requests that the Commission issue a declaratory ruling clarifying the continued inapplicability of the autodialer restriction consistent with its findings in the *1992 TCPA Order* and the *1995 Reconsideration Order*.

Without clarification, the Commission's regulation might be construed to obstruct the recovery of payments for goods that have been delivered or services that have been received by consumers. Such an outcome will visit immeasurable harm on thousands of small entities in the credit and collections industry, as well as the domestic economy by cutting off billions of dollars that are returned annually to the economy through successful recovery efforts.

Simply stated, ACA respectfully submits that telephone calls to wireless numbers by creditors or collectors to attempt to recover payment for goods or services are not subject to the autodialer restrictions. This finding of the Commission has been in effect since the

20

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

inception of the TCPA. Nothing in the 2003 amendments overturned the Commission's previous analysis regarding these calls. ACA requests that the Commission clarify the continued inapplicability of the restriction, as consistent with the administrative record. Doing so would prevent the unintended result of permitting the use of the TCPA and the Commission's regulatory interpretation as a shield against the recovery of payments owed to creditors.

Creditors and collectors that call consumers using autodialers are not engaged in telemarketing. They are not seeking to sell or market goods or services. Rather, they contact consumers for the purpose of completing a transaction for which consumers already have obtained a benefit, but have not fully paid. The TCPA and the Commission's rules are intended to curb the practices of telemarketers – that is, companies who use telephone calls to solicit new business or sell goods. Congress had in mind practices which threaten privacy rights and "public safety and inappropriately shift marketing costs from sellers to consumers," not a *de facto* regulatory ban on the use of a telephone to attempt to recovery payments.[31] Ultimately, the requested declaratory ruling will avoid such an intended outcome by clarifying that that the amendments in 2003 did not alter the Commission's previous findings that the autodialer restriction does not apply to calls by or on behalf of creditors to attempt to recovery payments.

---

[31]     *2003 TCPA Order*, para. 133.

21

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

### VII. A Declaratory Ruling Is Of Immediate And National Importance

A declaratory ruling resolving the uncertainty has national significance. Due to the TCPA's government enforcement and private right of action provisions, ACA members face considerable risk precipitated by the uncertainty. As a result of this risk, some creditors and collectors have responded by discontinuing the use of autodialers.

A substantial number of ACA's members, as small businesses, have elected to discontinue or greatly reduce the use of the technology until such time as the Commission conclusively resolves this issue by ruling on this petition. The effect on these businesses has been severe. Many have reported decreases in revenue and the loss of business and clients.

### VIII. CONCLUSION

For the foregoing reasons, ACA respectfully requests that the Commission issue a declaratory ruling clarifying that the 2003 TCPA rulemaking did not alter the Commission's previous findings that calls to recovery debts are not subject to the TCPA's autodialer restrictions. If you have any questions, please contact Andrew M. Beato at (202) 737-7777 or abeato@steinmitchell.com.

Dated: October 4, 2005

22

STEIN, MITCHELL & MEZINES

ACA International
CG Docket No. 02-278

Respectfully submitted,

STEIN, MITCHELL & MEZINES, LLP

Andrew M. Beato, Esq.
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036

ACA INTERNATIONAL

Rozanne M. Andersen, Esq.
4040 W. 70th Street
Minneapolis, MN 55435

cc:    The Honorable Joe Barton, Chairman, Committee on Energy and Commerce (via
           electronic mail)
       The Honorable John Dingell, Ranking Minority Member, Committee on Energy and
           Commerce (via electronic mail)
       The Honorable Fred Upton, Chairman, Subcommittee on Telecommunications and the
           Internet (via electronic mail)
       The Honorable Edward J. Markey, Ranking Minority Member, Subcommittee on
           Telecommunications and the Internet (via electronic mail)
       The Honorable Cliff Stearns, Chairman, Subcommittee on Commerce, Trade and
           Consumer Protection (via electronic mail)
       The Honorable Janice Schakowsky, Ranking Minority Member, Subcommittee on
           Commerce, Trade and Consumer Protection (via electronic mail)
       The Honorable Ted Stevens, Chairman, Committee on Commerce, Science and
           Transportation (via electronic mail)
       The Honorable Daniel K. Inouye, Ranking Minority Member, Committee on
           Commerce, Science and Transportation (via electronic mail)

23

STEIN, MITCHELL & MEZINES

**ACA International**
**CG Docket No. 02-278**

The Honorable George Allen, Chairman, Subcommittee on Consumer Affairs, Product
    Safety and Insurance (via electronic mail)
The Honorable Mark Pryor, Ranking Minority Member, Subcommittee on Consumer
    Affairs, Product Safety and Insurance (via electronic mail)
The Honorable Gordon Smith (via electronic mail)
The Honorable Byron Dorgan (via electronic mail)
The Honorable Jim DeMint (via electronic mail)
The Honorable Ben Nelson (via electronic mail)
Fred Campbell, Esq. (via electronic mail)
Monica Desai (via electronic mail)
Erica McMahon, Esq. (via electronic mail)
Lisa Sutherland (via electronic mail)
Christine Kurth (via electronic mail)
Paul Nagle (via electronic mail)
Wally Hsueh (via electronic mail)
James Assey (via electronic mail)
Rachel Welch (via electronic mail)
Margaret Cummiskey (via electronic mail)
Will Nordwind (via electronic mail)
Colin Crowell (via electronic mail)
Kelly Cole (via electronic mail)
Peter Filon (via electronic mail)
Harry Wingo (via electronic mail)
David Cavicke (via electronic mail)
Jon Cordone (via electronic mail)
Gary D. Rippentrop (via electronic mail)

24