1  JESSE S. FINLAYSON, SBN 179443
   MICHAEL R. WILLIAMS, SBN 196863
2  FINLAYSON, AUGUSTINI & WILLIAMS LLP
   110 Newport Center Drive, Suite 100
3  Newport Beach, California 92660
   Telephone: (949) 759-3810
4  Facsimile: (949) 759-3812
   Email:   jfinlayson@faw-law.com; mwilliams@faw-law.com
5
   Attorneys for Defendant and Counterclaimant
6  CASHCALL, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                           SAN FRANCISCO DIVISION

11  TRICIA LECKLER, ON BEHALF OF              CASE NO. C 07-04002 SI
    HERSELF AND ALL OTHERS SIMILARLY
12  SITUATED,                                 **DEFENDANT CASHCALL, INC.'S OPPOSITION TO PLAINTIFF TRICIA LECKLER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
13              Plaintiffs,
14       v.                                   **[Limited Objection To Plaintiff's Request For Judicial Notice Filed Concurrently With This Opposition]**
15  CASHCALL, INC.,
16              Defendant.                    **Hearing:**
                                              Date:   May 2, 2008
17                                            Time:   9:00 a.m.
                                              Place:  Courtroom 10, 19th Floor
18                                            Judge:  Hon. Susan Illston
19
20  ─────────────────────────────
    AND RELATED COUNTERCLAIMS.
21
22
23
24
25
26
27
28

Finlayson,
Augustini &
Williams LLP

DEFENDANT CASHCALL, INC.'S OPPOSITION TO PLAINTIFF TRICIA LECKLER'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

Page

A.   Introduction. .................................................................................................................... 1

B.   Background Regarding The TCPA. ................................................................................ 2

C.   CashCall Did Not Violate The TCPA Because Its Calls To Plaintiff's Cellular
     Telephone Were Made With Plaintiff's Prior Express Consent. ..................................... 4

     1.   The FCC's Recent Ruling Regarding the Phrase "Prior Express Consent." ........ 4

     2.   The FCC's Ruling is Entitled to Deference. ......................................................... 5

     3.   According to the FCC's Ruling, CashCall Did Not Violate the TCPA. .............. 7

D.   Plaintiff's Request That The Court Nullify The FCC's Recent Ruling Is
     Unfounded And Should Be Rejected. .............................................................................. 8

     1.   If Congress' Intent Is Clear From The TCPA, CashCall Prevails. ....................... 8

     2.   The FCC's Recent Ruling Is Not Manifestly Contrary To The TCPA. .............. 12

E.   Conclusion. .................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Fed'n of Gov't Employees, AFL-CIO Local 2152 v. Principi*,
  464 F.3d 1049 (9th Cir. 2006) .................................................................................................. 9

*Chevron U.S.A., Inc. v. National Res. Def. Council, Inc.*,
  467 U.S. 837, 104 S. Ct. 2778 (1984) .................................................................................. 5, 6

*EEOC v. Dinuba Med. Clinic*,
  222 F.3d 580 (9th Cir. 2000) .................................................................................................. 5

*Satterfield v. Simon & Schuster*,
  2007 U.S. Dist. LEXIS 46325 (N.D. Cal. June 26, 2007) ...................................................... 2

*Travel Travel Kirkwood, Inc. v. Jen N.Y. Inc.*,
  206 S.W.3d 387 (Mo. Ct. App. 2006) .............................................................................. 10, 11

**Statutes**

47 C.F.R. § 64.1200(a)(1)(iii) ......................................................................................................... 2

47 C.F.R. § 64.1200(a)(2) .............................................................................................................. 3

47 C.F.R. § 64.1200(a)(2)(iii) ......................................................................................................... 3

47 C.F.R. § 64.1200(a)(2)(iv) ......................................................................................................... 3

47 U.S.C. § 227(a)(5) ................................................................................................................... 11

47 U.S.C. § 227(b)(1)(A) ............................................................................................................... 4

47 U.S.C. § 227(b)(1)(A)-(D) ........................................................................................................ 2

47 U.S.C. § 227(b)(1)(A)(iii) ..................................................................................................... 1, 2

47 U.S.C. § 227(b)(1)(B) ............................................................................................................... 3

47 U.S.C. § 227(b)(1)(C) ............................................................................................................. 11

47 U.S.C. § 227(b)(2) .................................................................................................................... 4

47 U.S.C. § 227(b)(2)(B) ............................................................................................................... 3

Page(s)

**Other Authorities**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (Request of ACA International for Clarification and Declaratory Ruling)*,
  CG Docket No. 02-278, Declaratory Ruling (Dec. 28. 2007)................................................ passim

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
  CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092 (2003)......................... 3, 9

Finlayson,
Augustini &
Williams LLP

iii

DEFENDANT CASHCALL, INC.'S OPPOSITION TO PLAINTIFF TRICIA LECKLER'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant CashCall, Inc. opposes Plaintiff Tricia Leckler's Motion for Partial Summary Judgment for the reasons set forth in this Opposition and in CashCall's previously filed Motion for Partial Summary Judgment. As explained in more detail below, Plaintiff is not entitled to partial summary judgment on her two claims for relief under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), because the undisputed facts show that the calls from CashCall to Plaintiff's cellular telephone were made with Plaintiff's "prior express consent," as allowed under the TCPA.

**A.   Introduction.**

Under the TCPA, it is unlawful for any person to make any call other than a call "made with the prior express consent of the called party" using any automatic telephone dialing system or an artificial or prerecorded voice to any cellular telephone service for which the called party is charged for the call. 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff claims that CashCall violated the TCPA when it called her cellular telephone – the number to which Plaintiff had provided to CashCall – using an automatic telephone dialing system and/or prerecorded messages as part of its collection efforts after Plaintiff had fallen behind on her payments for a loan that she had obtained from CashCall. Plaintiff brings this action on behalf of herself and all others similarly situated and seeks millions of dollars in damages for alleged intentional and negligent violations of the TCPA.

The sole issue in this case is the meaning of the phrase "prior express consent" as used in the TCPA. According to the Federal Communications Commission (the "FCC"), "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." FCC Declaratory Ruling (Dec. 28, 2007) at ¶¶ 1, 9.[1] Under the FCC's recent ruling, CashCall's calls to Plaintiff's cellular telephone were made with Plaintiff's "prior express consent."

Plaintiff implicitly concedes that her TCPA claims fail under the FCC's ruling. Plaintiff, however, contends that the FCC got it wrong. According to Plaintiff, "prior express consent" means

---

[1]   *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (Request of ACA International for Clarification and Declaratory Ruling)*, CG Docket No. 02-278, Declaratory Ruling (Dec. 28. 2007). [Ex. 1 to Plaintiff's Request for Judicial Notice.]

"unequivocally agreeing in advance to receiving . . . a call generated by an autodialer or one using a pre-recorded message to the called party's cellular telephone." [Pl.'s Mem. of Ps & As at 7.] Plaintiff asks the Court to "nullify the FCC Ruling for purposes of this lawsuit," claiming that the FCC's ruling "expands and unreasonably modifies the plain meaning of the statute's phrase 'prior express consent.'" [*Id.* at 2.]

Plaintiff's request is unfounded, as it ignores the language of the TCPA, ignores the legislative history and purpose of the TCPA – to curtail certain telemarketing practices – and is not supported by any case law or statutory authority. The FCC's ruling is inherently reasonable and strikes a proper balance between protecting individual privacy/financial interests and allowing creditors to contact their customers at telephone numbers provided by those customers for debt collection purposes. Consequently, Plaintiff's motion for partial summary judgment must be denied (and CashCall's cross-motion for partial summary judgment must be granted).

**B.    Background Regarding The TCPA.**

On December 20, 1991, Congress enacted the TCPA "in an effort to address a growing number of <u>telephone marketing calls</u> and certain <u>telemarketing</u> practices Congress found to be an invasion of consumer privacy." FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 2 (emphasis added); *Satterfield v. Simon & Schuster*, 2007 U.S. Dist. LEXIS 46325, *10 (N.D. Cal. June 26, 2007) (explaining that "Congress enacted the [TCPA] in response to various telemarketing practices arising out of the use of 'autodialers' to generate millions of automated telephone calls.") (citations omitted).

The TCPA regulates certain types of calls to cellular telephones, certain types of calls to residential telephone lines, and "junk" faxes. 47 U.S.C. § 227(b)(1)(A)-(D). Specifically, under the TCPA, it is "unlawful for any person . . . to make any call (<u>other than a call . . . made with the prior express consent of the called party</u>) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any . . . cellular telephone service . . . for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added); *see also* 47 C.F.R. § 64.1200(a)(1)(iii).

> The legislative history . . . suggests that through the TCPA, Congress was attempting to alleviate a particular problem—an increasing number of automated and prerecorded calls to certain categories of numbers. The TCPA does not ban the use of technologies to dial telephone numbers. It merely prohibits such technologies from dialing emergency numbers, health care facilities, telephone numbers assigned to wireless

2

DEFENDANT CASHCALL, INC.'S OPPOSITION TO PLAINTIFF TRICIA LECKLER'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

services, and any other numbers for which the consumer is charged for the call. Such practices were determined to threaten public safety and inappropriately shift <u>marketing costs</u> from sellers to consumers.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092 (2003) ("*2003 TCPA Order*") (emphasis added).

Under the TCPA, it is also "unlawful for any person . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [FCC under the TCPA]." 47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2). In accordance with its authority under the TCPA, the FCC has exempted from the requirements relating to calls to residential telephone lines calls that do "not include or introduce an unsolicited advertisement or constitute a telephone solicitation" and calls that are "made to any person with whom the caller has an established business relationship at the time the call is made." 47 C.F.R. § 64.1200(a)(2)(iii), (iv); 47 U.S.C. § 227(b)(2)(B).

> [T]he practice of sending prerecorded messages to residential telephone lines is widespread. Consumers are frustrated by such messages, which often fill up the tapes of their answering machines, fail to identify adequately the company delivering the message, and provide no option for requesting that the company not call again. When consumers attempt to place their numbers on a do-not-call list in response to a prerecorded message, they often reach busy signals, additional prerecorded messages, or are told that do-not-call requests are not processed at that number. Consumers also indicate that they have been told by <u>telemarketers</u> that "free" offers and informational messages are not subject to the prerecorded message prohibition, as they do not ask the called party to purchase any product or service.

*2003 TCPA Order*, 18 FCC Rcd at 14096 (emphasis added).

Although there is no express exemption for debt collection calls to residential telephone lines, the FCC has concluded that such an exemption is unnecessary because debt collection calls to residences "do not transmit an unsolicited advertisement" and involve an "established business relationship." FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 4. The FCC further explained that "calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing. Therefore, calls regarding debt collection or to recover payments are not subject to the TCPA's separate restrictions on 'telephone solicitations.'" *Id.* at ¶ 11.

This case has nothing to do with telemarketing – the calls from CashCall to Plaintiff's cellular telephone were not made for the purpose of offering CashCall's loan products or soliciting Plaintiff to apply for a loan. Instead, CashCall was attempting to collect a debt that Plaintiff owed directly to CashCall.

**C.  CashCall Did Not Violate The TCPA Because Its Calls To Plaintiff's Cellular Telephone Were Made With Plaintiff's Prior Express Consent.**

The FCC administers the TCPA. *See, e.g.*, 47 U.S.C. § 227(b)(2). The phrase "prior express consent," as used in 47 U.S.C. § 227(b)(1)(A), is not expressly defined in the TCPA or in the FCC's regulations.

### 1. The FCC's Recent Ruling Regarding the Phrase "Prior Express Consent."

On December 28, 2007, in response to a Petition for an Expedited Clarification and Declaratory Ruling, the FCC issued a Declaratory Ruling with respect to the phrase "prior express consent," as used in the TCPA, clarifying that "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." FCC Declaratory Ruling (Dec. 28, 2007) at ¶¶ 1, 9.

In the discussion section of its Declaratory Ruling, the FCC explained that "[a]lthough the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls for emergency purposes or made with the prior express consent of the called party." *Id.* at ¶ 9. The FCC concluded "that the provision of a cell phone number to a creditor, <u>e.g., as part of a credit application</u>, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *Id.* (emphasis added).

The FCC explained that its interpretation and conclusion with respect to the phrase "prior express consent" was consistent with its prior rulings and legislative history. First, the FCC noted that "[i]n the 1992 TCPA Order, the Commission determined that persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number

which they have given, absent instructions to the contrary." *Id.* (quotations omitted). Second, the FCC noted that "the House report on what ultimately became [the TCPA] states that:

> [t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications."

*Id.* The FCC emphasized, however, "that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id.* at ¶ 10.

### 2.     The FCC's Ruling is Entitled to Deference.

The Court must analyze the effect of the FCC's recent ruling as it concerns this case. *See EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 588-89 (9th Cir. 2000). According to the United States Supreme Court, "[w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions." *Chevron U.S.A., Inc. v. National Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S. Ct. 2778, 2781 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43, 104 S. Ct. at 2781. Here, Congress has not expressly defined the phrase "prior express consent" in the TCPA.

"If . . . the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." 467 U.S. at 843, 104 S. Ct. at 2781-82. "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." 467 U.S. at 843, 104 S. Ct. at 2782.

However, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* (citations omitted). "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly,

by Congress." *Id.* (quotations omitted). "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." 467 U.S. at 843-44, 104 S. Ct. at 2782.

"Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." 467 U.S. at 844, 104 S. Ct. at 2782. In this regard, the Supreme Court has

> long recognized that <u>considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer</u>, and the principle of deference to administrative interpretations has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations. If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.

467 U.S. at 844-45, 104 S. Ct. at 2782-83 (emphasis added) (quotations omitted).

Here, the FCC's interpretation of the phrase "prior express consent" as used in the TCPA and the FCC's regulations as set forth in its recent Declaratory Ruling is reasonable. As explained above, the FCC concluded "that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 9.

In reaching its conclusion, the FCC explained that its interpretation was consistent with its prior rulings and legislative history. First, the FCC noted that "[i]n the 1992 TCPA Order, the Commission determined that persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Id.* (quotations omitted). Second, the FCC noted that "the House report on what ultimately became [the TCPA] states that:

> [t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications."

6

*Id.* Moreover, based on its placement in the statute, it is clear that the phrase "prior express consent" qualifies the word "call" rather than "using any automatic telephone dialing system or an artificial or prerecorded voice." Thus, it cannot be said that the FCC's interpretation of the phrase "prior express consent" is not one that Congress would not have sanctioned. Accordingly, the Court should not disturb the FCC's ruling and should instead defer to the FCC's reasonable ruling.

**3.    According to the FCC's Ruling, CashCall Did Not Violate the TCPA.**

Here, the following facts are undisputed:

- Plaintiff provided her cellular telephone number to CashCall when she applied for a loan, listing it in her loan application and on several other documents that she provided to CashCall. [Jointly Submitted Statement of Undisputed Facts in Support of the Parties' Cross- Motions for Partial Summary Judgment at ¶¶ 2-4, 18; Ex. A (pp. 5-11).]
- CashCall approved Plaintiff's loan application and provided her with $2,525 in cash in accordance with a promissory note signed by Plaintiff. [*Id.* at ¶¶ 5-7; Ex. A. (pp. 1-4).]
- After Plaintiff fell behind on her monthly payments to CashCall, CashCall began collection efforts related to Plaintiff's loan, which included making telephone calls to Plaintiff's cellular telephone using an autodialer and prerecorded messages. [*Id.* at ¶¶ 8-11, 14.]
- Plaintiff never once indicated to CashCall that it should not contact her on her cellular telephone. [*Id.* at ¶ 15.]

Based on the FCC's ruling, Plaintiff's provision of her cellular telephone number to CashCall as part of her loan application process reasonably evidenced prior express consent by Plaintiff to be contacted by CashCall at that number regarding her debt to CashCall. *See* FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 9. In addition, it is undisputed that CashCall called the cellular telephone number that Plaintiff provided in connection with the loan that she obtained from CashCall and that CashCall's calls related to Plaintiff's debt. *See id.* at ¶ 10.

Thus, based on the FCC's ruling, all of CashCall's autodialed and prerecorded message calls to Plaintiff's cellular telephone were made with Plaintiff's "prior express consent" because Plaintiff provided CashCall with her cellular telephone number in connection with an existing debt. *See id.* Accordingly, CashCall did not violate the TCPA. *See id.*

**D.    Plaintiff's Request That The Court Nullify The FCC's Recent Ruling Is Unfounded And Should Be Rejected.**

Plaintiff implicitly concedes that her TCPA claims fail under the FCC's recent ruling. Plaintiff, however, contends that the FCC got it wrong. According to Plaintiff, "prior express consent" means "unequivocally agreeing in advance to receiving . . . a call generated by an autodialer or one using a pre-recorded message to the called party's cellular telephone." [Pl.'s Mem. of Ps & As at 7.] Plaintiff asks the Court to "nullify the FCC Ruling for purposes of this lawsuit," claiming that the FCC's ruling "expands and unreasonably modifies the plain meaning of the statute's phrase 'prior express consent.'" [*Id.* at 2.][2] Plaintiff's request is unfounded, as it ignores the language of the TCPA, ignores the legislative history and purpose of the TCPA – to curtail certain telemarketing practices – and is not supported by any case law or statutory authority.

**1.    If Congress' Intent Is Clear From The TCPA, CashCall Prevails.**

Plaintiff first contends that Congress' intent in using the phrase "prior express consent" is clear from the statute itself. [Pl.'s Mem. of Ps & As at 12.] According to Plaintiff, "Congress plainly intended that autodialer calls (or those with a prerecorded voice) be made to cell phone owners only when they gave the caller 'prior express consent' to make those calls to their cell phones in such a manner." [*Id.* at 13.]

---

[2] Plaintiff tries desperately to paint the FCC as a rogue, renegade organization that is beholden to ACA International (the entity whose request for clarification led to the FCC's recent ruling) and is intent on trampling the rights of citizens, and states repeatedly that the FCC's recent ruling is "absurd" and "nonsensical."  There is absolutely no basis whatsoever for Plaintiff's attempts to impugn the integrity of the FCC.  In fact, the FCC's recent ruling shows that the FCC flatly rejected one of ACA International's main requests – that the FCC clarify that predictive dialers used by debt collectors (which dial particular telephone numbers from customer telephone lists, not randomly) do not fall within the proscriptions of the TCPA. *See* FCC Declaratory Ruling (Dec. 28, 2007) at ¶¶ 12-14.

Even accepting Plaintiff's argument that Congress' intent is clear from the statute itself, Plaintiff's interpretation of Congress' intent is simply incorrect.  First, based on its placement in the statute, it is clear that the phrase "prior express consent" qualifies the word "call."  In other words, it is the call itself that must be made with prior express consent, not the mode of the call.  Indeed, for Plaintiff's interpretation to be correct, the statute would have to be rewritten as follows:

> It is unlawful for any person to make any call using any automatic telephone dialing system or an artificial or prerecorded voice to any cellular telephone service for which the called party is charged for the call <u>unless the called party gave its prior express consent to be contacted by means of an automatic telephone dialing system or an artificial or prerecorded voice</u>.[3]

Had Congress intended the statute to read as Plaintiff suggests, it certainly could have drafted it in such a way.  Of course, it did not.

Second, Congress enacted the TCPA to address telemarketing – not debt collection – issues and to protect individuals from having to pay for receiving telemarketing calls.  FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 2; *2003 TCPA Order*, 18 FCC Rcd at 14092.  Third, legislative history of the TCPA shows that Congress was not trying to protect persons who might receive calls from their creditors at telephone numbers provided to those creditors.  *See, e.g.*, FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 9 (citing the House report which stated that "'[t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.'").[4]  Tellingly, Plaintiff does not even discuss the purpose of the TCPA or its legislative history.

---

[3] Plaintiff refers to an application form allegedly used by Time Warner Cable Services, which references consent to be contacted by way of an autodialer or prerecorded message, as apparent support for its position. [Pl.'s Mem. of Ps & As at 7 n.11.] Although the FCC's recent ruling encourages creditors to use such language in credit applications and other documents, the FCC rejected a request to make such language mandatory.  FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 10 n.37.  As an aside, CashCall expects that if Plaintiff's application or promissory note contained such language, Plaintiff would have accused CashCall of burying "important" language in a form promissory note.

[4] Legislative history may be examined to ensure that a plain reading of a statute comports with Congressional intent. *American Fed'n of Gov't Employees, AFL-CIO Local 2152 v. Principi*, 464 F.3d 1049, 1055-56 (9th Cir. 2006).

1	Thus, if Congress' intent is clear, as Plaintiff contends, CashCall prevails because it is undisputed that

- Plaintiff gave CashCall her "express" "consent" to be contacted on her cellular telephone when she provided her cellular telephone number to CashCall (1) in her loan application, (2) on documents she sent to CashCall during the application process, and (3) in correspondence that she sent to CashCall after receiving her loan, indicating that her cellular telephone was her preferred means of contact; and
- Plaintiff gave her express consent "prior" to receiving any autodialed or prerecorded message calls to her cellular telephone from CashCall.

Accordingly, Plaintiff's argument is meritless.[5]

Plaintiff also claims that a Missouri appellate court case, *Travel Travel Kirkwood, Inc. v. Jen N.Y. Inc.*, 206 S.W.3d 387 (Mo. Ct. App. 2006), supports her argument regarding Congress' intent with respect to the statute.  The *Travel Travel* case, however, did not involve the statute at issue in this case and, in any event, is factually distinguishable to the point where it is not even remotely applicable in this case.

In *Travel Travel*, the plaintiff and the defendant were members of a travel industry group called the International Airlines Travel Agent Network ("IATAN").  *Id.* at 391.  The plaintiff included its name and fax number in IATAN's member directory and database.  *Id.*  The IATAN membership form that the plaintiff filled out stated that the plaintiff authorized IATAN "'to release the information contained herein to any industry supplier that may wish to use the applicant's services.'"  *Id.*

The plaintiff filed a complaint against the defendant, asserting that the defendant violated the TCPA by sending the plaintiff 31 unsolicited advertisements for defendant's services by fax.  *Id.* at

---

[5] It is also important to note that Plaintiff's TCPA claims have nothing to do with the amount of money that she borrowed from CashCall, the interest rate that she was charged, or any other fees and costs that she agreed to pay under her promissory note. [Pl.'s Mem. of Ps & As at 8.] Plaintiff's attempt to distract the Court from the relevant issues regarding her TCPA claims by discussing these matters and her baseless assertion that CashCall is a predatory lender reek of desperation.

10

DEFENDANT CASHCALL, INC.'S OPPOSITION TO PLAINTIFF TRICIA LECKLER'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Finlayson,
Augustini &
Williams LLP

388. The trial court granted the plaintiff's motion for summary judgment, and the defendant appealed. *Id.*

Under the portion of the TCPA that relates to "junk" faxes, a person is prohibited from sending an unsolicited advertisement to a telephone fax machine. 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's <u>prior express invitation or permission</u>, in writing or otherwise." *Id.* § 227(a)(5) (emphasis added).

On appeal, the defendant argued that the trial court should not have granted plaintiff's summary judgment motion because there was an issue of fact regarding whether the plaintiff had consented to receiving the 31 faxes from the defendant based on the plaintiff's IATAN's membership. *Travel Travel,* 206 S.W.3d at 390. The appellate court rejected the defendant's argument, looking first to the statute and then to the FCC for guidance. *Id.* at 391-92. The court noted that the phrase "prior express invitation or permission" was not defined in the TCPA and that the FCC had rejected a proposed definition that included "publication or release of a facsimile telephone number" or "other action indicating a facsimile number for use in normal business communications." *Id.* at 392 (citation omitted). The court then noted that Black's Law Dictionary defined "express consent" as "consent that is clearly and unmistakably stated." *Id.*

The court concluded that, at best, the defendant had the plaintiff's implied consent to receive faxes from the defendant, which was insufficient under 47 U.S.C. § 227(b)(1)(C). *Id.* Accordingly, the court held that the plaintiff's "IATAN membership did not constitute 'prior express invitation or permission' under the [TCPA] for the defendant to send the plaintiff the 31 unsolicited facsimiles." *Id.*

There are several reasons why *Travel Travel* – an out-of-jurisdiction, non-binding case – does not support Plaintiff's position. First, *Travel Travel* was a "junk" fax case under 47 U.S.C. § 227(b)(1)(C), not a cell phone case under 47 U.S.C. § 227(b)(1)(A)(iii). And the two sections do not contain the same language.

Second, unlike the defendant in *Travel Travel*, CashCall is not relying on Plaintiff's publication of her cellular telephone number in general or Plaintiff providing her cellular telephone

11

DEFENDANT CASHCALL, INC.'S OPPOSITION TO PLAINTIFF TRICIA LECKLER'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Finlayson, Augustini & Williams LLP

number to a third party with whom CashCall has some relationship as a basis to assert that it had Plaintiff's prior express consent to call her cellular telephone number.  Instead, Plaintiff provided her cellular telephone number directly to CashCall (1) in her loan application, (2) on documents she sent to CashCall during the application process, and (3) in correspondence that she sent to CashCall after receiving her loan, indicating that her cellular telephone was her preferred means of contact.  In addition, Plaintiff never once indicated to CashCall that it should not contact her on her cellular telephone.  Thus, Plaintiff clearly and unmistakably stated her consent for CashCall to call her on her cellular telephone.  Accordingly, *Travel Travel* does not support Plaintiff's argument.

### 2. The FCC's Recent Ruling Is Not Manifestly Contrary To The TCPA.

Plaintiff next contends that, if Congress' intent is not clear, the FCC's ruling is "'manifestly contrary to the statute' because . . . the FCC's Ruling as to what constitutes 'prior express consent' blatantly contradicts the intent of Congress as plainly set forth in the statute."  [Pl.'s Mem. of Ps & As at 15.]  Plaintiff then simply repeats her prior assertion that the FCC's ruling is "[n]onsense" because it is allegedly clear that Congress meant that the called party had to expressly consent to receiving autodialed and/or prerecorded message calls to her cellular telephone.  [*Id.*]  As explained above, however, Plaintiff's argument is meritless.

In fact, the FCC's recent ruling strikes a proper balance between protecting individual privacy/financial interests and allowing creditors to contact their customers at telephone numbers provided by those customers for debt collection purposes.  As explained above, Congress' intent in enacting the TCPA was not to regulate debt collection activities.  There is an entire federal statutory scheme dedicated to regulating debt collection activities – the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq.  Likewise, California has its own statutory scheme dedicated to regulating debt collection activities – the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, et seq. Congress was also not trying to protect persons who might receive calls from their creditors at telephone numbers provided to those creditors by their customers.  *See, e.g.*, FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 9 (citing the House report which stated that "'[t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.'").  Instead, the TCPA

was intended to address telemarketing issues and to protect individuals from having to pay for receiving telemarketing calls.

Based on the FCC's rulings, a creditor can deliver prerecorded messages to its customer's residential telephone number (where there is great privacy concern) for debt collection purposes regardless of whether the customer provided the creditor with the customer's telephone number (i.e., without her consent to be contacted there) because these type of calls fall within an exemption to the TCPA.  In order for a creditor to make an autodialed call and/or deliver prerecorded message calls to a customer's cellular telephone, however, the customer must have provided the creditor with the customer's cellular telephone number.  What this recognizes is that where a customer might incur a charge for a call to her cellular telephone, the FCC wants to make sure that the customer herself provided that telephone number to her creditor (and can thus reasonably expect to be called at that number).  Thus, there is nothing arbitrary or capricious about the FCC's ruling, and its ruling is not manifestly contrary to the TCPA.  Accordingly, Plaintiff's request that the Court nullify the FCC's recent ruling is unfounded and should be rejected.

**E.   Conclusion.**

CashCall did not violate the TCPA because its calls to Plaintiff's cellular telephone were made with Plaintiff's "prior express consent," as allowed under the TCPA.  Accordingly, CashCall requests that the Court deny Plaintiff's motion for partial summary judgment and grant CashCall such relief as may be just and appropriate.

DATED:  March 31, 2008

JESSE S. FINLAYSON
MICHAEL R. WILLIAMS
FINLAYSON, AUGUSTINI & WILLIAMS LLP


By:            /s/ Michael R. Williams
                  Michael R. Williams

Attorneys for Defendant and Counterclaimant
CASHCALL, INC.

Leckler - Opposition to Plaintiff's Motion for Partial Summary Judgment v. 2

DEFENDANT CASHCALL, INC.'S OPPOSITION TO PLAINTIFF TRICIA LECKLER'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Finlayson,
Augustini &
Williams LLP

# CERTIFICATE OF SERVICE

I, Wendy S. Mills, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 110 Newport Center Drive, Suite 100, Newport Beach, California 92660, in said County and State. On March 31, 2008, I served the following document(s):

**DEFENDANT CASHCALL, INC.'S OPPOSITION TO PLAINTIFF TRICIA LECKLER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

☒ **CM/ECF ELECTRONIC SERVICE:** The following are registered as CM/ECF Users with the Court, and have consented to electronic service:

**Counsel for Plaintiff:**
**Joshua B. Swigart – josh@westcoastlitigation.com**

on the parties stated below:

**Counsel for Plaintiff:**
**Douglas J. Campion, Esq.**
**LAW OFFICES OF DOUGLAS J. CAMPION**
**411 Camino Del Rio South, Suite 301**
**San Diego, CA 92108**

by the following means of service:

☒ **BY MAIL**: I placed a true copy of the above-mentioned document(s) in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit.

☐ **BY PERSONAL SERVICE**: I provided a true copy of the above-mentioned document(s) to a messenger for personal delivery to each person named above, at the address(es) shown above, before 5:00 p.m. on the above-mentioned date.

☐ **BY ELECTRONIC MAIL**: I caused the above-mentioned document(s) to be transmitted electronically to the e-mail address of the addressees indicated above. I am readily familiar with this firm's Microsoft Outlook electronic mail system and each such document was duly served electronically on the above-mentioned date, and the transmission was reported as complete and without error.

☐ **BY FACSIMILE**: I caused the above-mentioned document(s) to be transmitted by facsimile machine to the parties and numbers indicated above, on the above-mentioned date, pursuant to Rule 2.306. The facsimile machine I used complied with Rule 2.306 and no error was reported by the machine. Pursuant to Rule 2.306, I caused the machine to print a transmission record of the transmission, a copy of which is maintained by this office.

☐ **BY UPS—NEXT DAY AIR:** I placed a true copy of the above-mentioned document(s) in a sealed envelope or package designated by the United Parcel Service with delivery fees paid or provided for, addressed to the person(s) as indicated above, on the above-mentioned date, and I deposited same in a box or other facility regularly maintained by United Parcel Service or delivered same to an authorized courier or driver authorized by United Parcel Service to receive documents.

I am employed in the office of Michael R. Williams, a member of the bar of this Court, and the foregoing document(s) was/were printed on recycled paper.

☒ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 31, 2008.

/s/ Wendy S. Mills
Wendy S. Mills