Douglas J. Campion, Esq. (SBN: 75381)
**LAW OFFICES OF DOUGLAS J. CAMPION**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Attorneys for Plaintiff
Tricia Leckler

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRICIA LECKLER, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>CASHCALL, INC.,<br><br>Defendant. | CASE NO.: C 07-04002 SI<br><br>CLASS ACTION<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: May 2, 2008<br>Time: 9:00 a.m.<br>Crtrm: 10, 19th Floor<br>Judge: Hon. Susan Illston |

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................ 1

II. ARGUMENT ........................................................................ 2

A. The Parties Agree the *Chevron* Case Is Determinative. ........................... 2

B. Defendant Does Not Analyze the Statute under *Chevron's* First Step of the Analysis, which Plaintiff Contends Is Controlling. ........................... 3

C. Numerous Cases Have Found Agencies Exceeding Their Authority in the First Step of the *Chevron* Analysis.. ........................... 4

D. Defendant's Analysis of the Second Step of the *Chevron* Analysis is Flawed Because The Case Does Not Need to Proceed to that Second Step. ........................... 8

E. This Case is Not About Whether The FCC's Opinion is Based Upon a "Permissible Construction of the Statute" or is Otherwise "Reasonable". ........................... 9

F. Defendant Is Correct in Stating that Courts give Deference to Agencies in Certain Situations but None Apply Here. ........................... 9

G. This Ruling Would Not Meet the Second Step of the *Chevron* Analysis Because it is "Manifestly Contrary to the Statute." ........................... 10

III. CONCLUSION ........................................................................ 10

## TABLE OF AUTHORITIES

## CASES

*Ardestani v. I.N.S.*, 502 U.S. 129, 112 S.Ct. 515 U.S. 1991)................................. 4

*Arkansas v. Oklahoma* 503 U.S. 91, 112 S.Ct. 1046 (1992) ................................. 9

*Bonneville Power Admin. v. F.E.R.C.*, 422 F.3d 908 (9th Cir. 2005) ....................... 8

*Cadsoft Corp. v. Riverdeep*, LLC, 2007 U.S. Dist. LEXIS 39559 (N.D. Cal. 2007)....................................................................................... 10

*Chevron U.S.A., Inc. v. National Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984)........................................................................... *passim*

*Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162* ....................... 4

*Earth Island Institute v. Ruthenbeck*, 490 F.3d 687 (9th cir. 2007) ......................... 6

*Gorbach v. Reno*, 219 F.3d 1087 (9th Cir. 2000)................................................... 7

*Hemp Industries Ass'n. v. Drug Enforcement Admin.*, 357 F.3d 1012 (9th Cir. 2004)......................................................................................... 7

*Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S. Ct. 1023, 157 L.Ed 2d 64 (1985) ...... 6

*Rubin v. United States,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)........ 4,

*Rucker v. Davis*, 237 F.3d 1113 (9th Cir. 2001) ................................................... 7

*Schneider v.Chertoff*, 450 F.3d 944 (9th Cir. 2006) ......................................... 4, 5

*Service Employees Intern. Union, Local 102 v. County of San Diego*, 60 F.3d 1346 (9th Cir. 1994) ........................................................................ 8

*State of California Dept. of Social Services v. Thompson*, 321 F.3d 835 (9th Cir. 2003).................................................................................... 8

*Tovar v. U.S. Postal Serv.,* 3 F.3d 1271 (9th Cir.1993)......................................... 8

*United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)....................................................................................... 9

*Wilderness Soc'y v. U.S. Fish & Wildlife Serv.,* 353 F.3d 1051 (9th Cir.2003) ....... 4

## FEDERAL STATUTES

47 U.S.C. § 227 (b)(1)(A) .......................................................................... 3, 11

16 CFR Part 310, 67 FR at 4620 ......................................................................... 10

## I. INTRODUCTION

"Prior express consent" means just that. It's not implied consent. It's not consent after the fact. It is an agreement giving permission to do a particular act. That is what this case is about: Can the FCC substitute a lesser standard for a consumer to receive certain cell phone calls than the consent required by the plain meaning of the TCPA?

The TCPA requires that persons called on their cell phones by autodialers or with a precorded voice give their "prior express consent" to receive such calls. But Defendant argues that the Federal Communications Commission's ("FCC") new, and less rigorous, definition in its Declaratory Ruling ("Ruling") supplants the statute's plain meaning and now controls in this case. As now redefined by the FCC, "prior express consent" needed under the TCPA now includes simply having the called party to provide a cell phone number in the original credit application or contract for services. Thus, Defendant argues it is now exempt from liability for making any such proscribed calls when, as here, the called party had at some time in the past given their cell phone number to the original creditor. Because that application contains Plaintiff's personal information – including her cell phone number -- Defendant argues its has all the "prior express consent" it needs to make such autodialed and precorded calls under the TCPA.

Defendant argues that the FCC acted within its authority because it claims the statute does not satisfy the first step of the *Chevron U.S.A., Inc. v. National Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984) ("*Chevron*") two step analysis. In other words, Defendant argues "Here, Congress has not expressly defined the phrase 'prior express consent' in the TCPA," (Def's Memo at 5). Claiming such "missing" definition means Chevron's first step is not satisfied (i.e., the statute is ambiguous or has a gap Congress meant for the FCC to fill in), and automatically jumps to the second step, arguing the regulation is reasonable and why this Court should defer to the agency.

However, that is where Defendant's analysis fails. Just because there is not a separate definition within the statute itself, that does not mean the words "prior express consent" don't have a plain meaning and that this Court cannot ascertain what the Congressional intent was in using those words in the statute. Those words certainly have a plain meaning. As a result, under *Chevron,* the Court need not, indeed cannot, go any further: "If the intent of Congress is clear, that is the end of the matter. . . ". *Chevron, supra*, 467 U.S. at 842.

Because that phrase "prior express consent" is not ambiguous and has a plain meaning as used in the TCPA., the FCC's attempt to "clarify" that phrase is far beyond the scope of its authority, under the first step of the *Chevron* analysis. Certainly, in case law there are circumstances where an agency properly clarifies or fills in gaps left by a statute. But to pretend such Ruling sought by debt collectors for their own protection from TCPA liability is necessary to "explain" or "clarify" the words "prior express consent" by the FCC is a mere fiction. Furthermore, such fiction abrogates substantial consumer rights under the TCPA, rights given to consumers by Congress and not intended to be taken away by the FCC. This Court should set aside the FCC Ruling as to that part that purports to what constitutes "prior express consent" as beyond the scope of its authority under *Chevron.*

## II. ARGUMENT

### A. The Parties Agree the Chevron Case Is Determinative.

Defendant argues the test in the *Chevron* case controls here and Plaintiff agrees. Def's Memo at 5. The Parties disagree on the analysis required and the result reached.

//

//

//

//

//

**B. Defendant Does Not Analyze the Statute under Chevron's First Step of the Analysis, which Plaintiff Contends Is Controlling.**

Plaintiff contends the TCPA language satisfies the first part of the *Chevron* test because the Congressional intent is clear from the statute: it requires the "prior express consent" of the party called.[1]

As the U.S. Supreme Court held in *Chevron*,

> First, always, is the question whether Congress has directly spoken to the precise question at issue. *If the intent of Congress is clear*, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Chevron, supra*, 467 U.S. at 842 (emphasis added).

However, surprisingly Defendant does not even address in its brief whether the language at issue satisfies the first part of the test, other than making the conclusory statement that "Congress has not expressly defined the phrase 'prior express consent' in the TCPA". Def's Memo at 5. Therefore, apparently Defendant relies on the absence of an express definition of "prior express consent", and concludes that since there is no separate definition of "prior express consent" within the statute itself, the statute fails the first prong of *Chevron.* But that cursory review ignores the plain meaning of the phrase; Plaintiff submits the words mean what they say and no further special definition of that phrase is necessary. To

---

[1] 47 U.S.C. § 227(b)(1)(A). ("*It shall be unlawful* for any person within the United States or any person outside the United States if the recipient is within the United States—*(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice*—(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency); (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or (iii) *to any* telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]"). Emphasis added. *See also* Plaintiff's Memorandum of Points & Authorities in Support of Motion for Summary Judgment , pp.12-18.

require every word of plain meaning in every statute be separately defined for purposes of that statute would be an absurd requirement in drafting legislation. As the Ninth Circuit held in *Clark v. Capital Credit & Collection Services, Inc.,* 460 F.3d 1162, 1168:

Well-established canons of statutory construction provide that any inquiry in the scope and meaning of a statute must begin with the text of the statute itself. (Internal citations omitted.) The Ninth Circuit further cautioned that, "where the statute's language is plain, the sole function of the courts is to enforce it according to its terms . . . for courts must presume that a legislature says in a statute what it means and means in a statute what it says there. (Internal citations omitted.)

*Clark, supra*, 460 F.3d at 1168.

Furthermore, "[u]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.,* 353 F.3d 1051, 1060 (9th Cir.2003) (en banc) (internal quotations omitted). As the U.S. Supreme Court held in *Ardestani v. I.N.S.*, 502 U.S. 129, 112 S.Ct. 515 U.S. (1991): "The "strong presumption" that the plain language of the statute expresses congressional intent is rebutted only in "rare and exceptional circumstances," [citing] *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981).

**C. Numerous Cases Have Found Agencies Exceeding Their Authority in the First Step of the Chevron Analysis.**

By asking that the Ruling be set aside and not enforced for purposes of this case, Plaintiff is not asking this Court to do something at all unusual or without basis in law. A number of other courts have also denied implementation of agency directives found contrary to the clear wording of the statutes they sought to modify or clarify.

For example, in *Schneider v.Chertoff*, 450 F.3d 944 (9th Cir. 2006), the court found several contested regulations did not pass the first step of the *Chevron*

analysis. The court stated the oft-repeated phrase: " First, **'[i]f the intent of Congress is clear, that is the end of the matter"** citing *Chevron*, *Id*. at 952, emphasis in original. There the court found that the Department of Homeland Security overstepped its authority when it attempted to regulate the Immigration and Nationality Act and the Nursing Relief Act in several different ways, all relating to imposing additional requirements on the doctors seeking to obtain their lawful permanent resident status, requirements clearly not intended by Congress in the underlying statute. The agency passed regulations that attempted to add time periods that were contrary to the plain language in the statute, by attempting to not count toward the residency requirement time worked before an application for a visa was approved and setting a time period in which all the required work had to be completed. Those all had the effect of making it more difficult, and in some cases impossible, for doctors working in disadvantaged areas under the Nursing Relief Act to qualify for their lawful permanent resident status. More importantly, those regulations were found by the court to be contrary to the intent of Congress in passing the statute in setting its own time frames.

The court held that several regulations were contrary to the plain meaning of the statutes and set them aside. [2] The *Schneider* court analyzed the case under the *Chevron* analysis: "Under the first prong of the *Chevron* approach, we again ask whether Congress expressed a clear intent on the issue in question . . . If the statutory language is clear and unambiguous, the court must give effect to the 'plain meaning' of those words.") (Citations omitted.) *Id.* at 957. The court held the intent of Congress was clear from a plain reading of the statute and set aside several of the regulations, finding Congress made its intent clear in the statute.

---

[2] As Plaintiff requests of the Court here, that analysis included looking at the dictionary definitions of the words "aggregate" and "filed" in order to establish they had plain, clearly understood meanings different from those proffered by the agency.

The court stated: "Congress clearly intended that no limitations period should be imposed on the aggregate medical practice requirement. Congress did not impose a limitations period of its own accord." *Id*. at 957. "The regulation, however, imposes a strict limitations period not contemplated by the Nursing Relief Act. . ." *Id*. at 958. "The regulation imposes on an immigrant doctor a temporal obligation not required by statute." *Id.* "The Secretary's regulation, however, changes the statutory requirement with respect to an entire class of doctors. It is plain to us that the Secretary's regulation conflicts with the Nursing Relief Act." *Id.* at 956. "As a matter of common sense, the Secretary's regulation produces outcomes that contradict the plain language of the statute." *Id*.

The court summed up the overstepping of the agency's authority here leading to setting aside the regulations:

[The Secretary] may not, however, impose obligations not required by law. The Secretary must defer to the supremacy of Congress's legislative enactments just as the courts may not appropriate Congress's legislative function. 'There is a basic difference between filling a gap left by Congress'[s] silence and rewriting rules that Congress has affirmatively and specifically enacted.'

*Id*. at 958, citing to *Lamie v. U.S. Trustee*, 540 U.S. 526, 538, 124 S. Ct. 1023, 157 L.Ed 2d 64 (1985).

. . .

Accordingly, we hold that the Secretary's regulation that imposes a strict limitations period without statutory basis conflicts with Congress's clear intent, and is *ultra vires* to, the Nursing Relief Act. *Id*.

Likewise, in *Earth Island Institute v. Ruthenbeck*, 490 F.3d 687 (9th Cir. 2007), the court found the word "shall" had a plain meaning and refused to accept the Secretary of Agriculture's and Dept. of Forest Service's attempt at changing that clear intent of Congress. When the agency attempted to omit or modify the notice and appeal process with exemptions and exclusions, contravening the intent

of Congress that such notices and appeal "shall" occur, the court struck down the regulation.

Similarly, in *Frank v. McQuigg*, 950 F.2d 590 (9th Cir. 1991), the court found the U.S. Postal Service's attempt to set forth in a regulation a procedure to implement a provision of the Fair Labor Standards Act on overtime pay was contrary to Congress' language and the intent of the statute, and set it aside. The court held the regulations and their formulae did not pass the first step of the Chevron analysis and set them aside. " . . .[W]e are convinced that Congress intended the TCOLA as an adjustment to basic pay. Accordingly, the TCOLA may not be prorated, and the Postal Service's formulae fail, . . ." *Id*. at 596.

In *Gorbach v. Reno*, 219 F.3d 1087 (9th Cir. 2000), in the concurring opinion of five justices, they agreed that under *Chevron's* first step, the agency's regulations must be set aside. "Applying that examination to the issues in this case, I conclude that Congress has unambiguously expressed its statutory intent. Therefore, there is no need to determine whether the agency's construction is reasonable." The Ninth Circuit also came to the same result in *Rucker v. Davis*, 237 F.3d 1113 (9th Cir. 2001):

Because we find that Congress had an intention on the precise question at issue that is contrary to HUD's construction, HUD's interpretation is not entitled to deference. See *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. 2778. 'The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.' Id. Thus, we do not reach the question under Chevron of whether an administrative interpretation is reasonable or permissible, for '[i]f the intent of Congress is clear, that is the end of the matter.' *Id*. at 842, 104 S.Ct. 2778."

For similar results under the first step of the *Chevron* analysis, see *Hemp Industries Ass'n. v. Drug Enforcement Admin.*, 357 F.3d 1012 (9th Cir. 2004) (regulation not enforced that purported to define a type of cannabis not included in

the statute by Congress); *State of California Dept. of Social Services v. Thompson*, 321 F.3d 835 (9th Cir. 2003) (regulation contrary to the language of the statute regarding AFDC payments was set aside); *Service Employees Intern. Union, Local 102 v. County of San Diego*, 60 F.3d 1346 (9th Cir. 1994) (Postal service's regulations about overtime calculations were found contrary to the plain language and intent of the statute); *Bonneville Power Admin. v. F.E.R.C.*, 422 F.3d 908 (9th Cir. 2005) (FERC regulation conflicted with the plain meaning and intent of the statute and was not enforceable).

Thus, many courts regularly find that proposed agency regulations are *ultra vires* and refuse to enforce them if, in the court's opinion, they are contrary to the plain meaning of the statute and the intent of the legislature. Plaintiff submits the same is true here and this Court should reach the same result.

**D. Defendant's Analysis of the Second Step of the Chevron Analysis is Flawed Because The Case Does Not Need to Proceed to that Second Step.**

First, it is unclear, but Defendant seems to argue that there is a gap, either implicit or explicit, in the statute here. Def's Memo at 5. Defendant then seems to argue that if there is such an implicit or explicit gap in the statute, it is up to the agency to fill that gap, and that is what the FCC did here. *Id.* However, that argument fails for two reasons: 1) there is no gap – explicit or implicit -- in the statute that required the FCC to fill it by the Ruling, as the Ruling only changes the plain meaning and intent of the statute; and 2) this case and Ruling do not call for special expertise that agencies can sometimes provides in filling in those gaps.

"In determining whether an agency's construction is permissible, the court considers whether Congress has explicitly instructed the agency to flesh out specific provisions of the general legislation, or has impliedly left to the agency the task of developing standards to carry out the general policy of the statute." *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1276 (9th Cir.1993). Here Congress has done neither as

to whether the terms "prior express consent" needed to be fleshed out or needed standards to understand the plain meaning of those words. The statute says what it means and means what it says about "prior express consent".

**E. Defendant Is Correct in Stating that Courts give Deference to Agencies in Certain Situations but None Apply Here.**

Of course courts give deference to agencies when appropriate, as Defendant argues. Def's Memo at 6. *See Arkansas v. Oklahoma* 503 U.S. 91, 105-114, 112 S.Ct. 1046 (1992). Certain matters get referred to agencies by Congress when specialized understanding is required. *See United States v. Mead Corp*., 533 U.S. 218, 234, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). But here it is not as if the statute related to technical FDA or EPA requirements, for which Congress would naturally defer to those or similar agencies for their expertise in fleshing out the general intent of Congress by putting quantifiable numbers or other items in place through regulations. Recognizing and applying that deference only occurs if the case gets past the first step of the *Chevron* analysis, and this case does not. The meaning of "prior express consent" certainly does not need any technical expertise of the FCC in understanding its plain meaning.

**F. This Ruling Would Never Meet the Requirements of the Second Step of the Chevron Analysis Because it is "Manifestly Contrary to the Statute."**

Assuming *arguendo* that the Ruling met the first step of *Chevron*, Plaintiff submits this Ruling would still fail the *Chevron* test because the second step requires the Ruling to be set aside if they are "arbitrary, capricious, or manifestly contrary to the statute." *Chevron, supra*, 467 U.S. at 842-844. Certainly if the statute states the prior express consent of the party called is required in order to use an automatic dialer or prerecorded voice in calls to their cell phones, what could be more "manifestly contrary to the statute" than the Ruling? The Ruling allows both

//

"no consent" and "implied consent" to be substituted for the plain language of requiring "express consent" to receive such calls.

**G. Express Consent Has Been Defined to be Contrary to the Ruling.**

The Federal Trade Commission has already defined the phrase "express consent" with a meaning far different than the FCC's Ruling, and more in line with the common understanding of "express consent":

'Express' consent means that consumers must affirmatively and unambiguously articulate their consent. Silence is not tantamount to consent; nor does an ambiguous response from a consumer equal consent. *Federal Trade Commission*, 16 CFR Part 310, 67 FR at 4620.

Express consent has also been defined as requiring an explicit agreement between the parties, not the implied consent substituted for the express consent by the FCC in the Ruling. *Cadsoft Corp. v. Riverdeep*, LLC, 2007 U.S. Dist. LEXIS 39559 [*8] (N.D. Cal. 2007). In that case, on a summary judgment motion, Judge Conti found in favor of the Plaintiff that alleged the other party gave an assignment of its rights under a copyright license, without its consent, which was a condition of any such assignment imposed by law. "Construing the evidence in the light most favorable to Riverdeep [Defendant], Cadsoft's actions in this matter only rise to the level of implied consent. That is not sufficient under the law, which requires explicit, or express consent." Id. at *2.

This regulation and case show that the FCC is clearly attempting to change the plain meaning of "prior express consent" in a way that contradicts common parlance and usage, and is contrary to the holding or findings in any published case or prior regulation on the subject. This Court should not permit such an end around run attempts to avoid Congress' intent and the plain meaning of the statute.

**III. CONCLUSION**

For the reasons set forth herein, and in Plaintiff's Motion for Partial Summary Judgment, the FCC Ruling should be set aside as *ultra vires* because it is

contrary to the plain meaning of the statute and contrary to the intent of Congress, to the extent it purports to substitute a new definition for the TCPA's "prior express consent" requirement in 47 U.S.C. § 227(b)(1)(A)(iii).

Respectfully submitted,

Dated: March 31, 2008

**LAW OFFICE OF DOUGLAS J. CAMPION**

By: /s/ Douglas J. Campion__
Douglas J. Campion
Attorneys for Plaintiffs

Co-Counsel

**HYDE & SWIGART**

Dated March 31, 2008

By: /s/ Joshua B. Swigart___
Joshua B. Swigart
Attorneys for Plaintiffs

*Re: Tricia Leckler v. CashCall Inc..,*
*United States District Court, for the Northern District of California*
Case No. C 07-04002 MEJ

**PROOF OF SERVICE**

I, Luisa Parra, declare as follows:

I am over the age of eighteen years and not a party to the case. I am employed in the County of San Diego, California where the mailing occurs: My business address is 411 Camino Del Rio South, Suite 301 San Diego, CA 92108-3551. I am readily familiar with our business' practice of collecting, processing and mailing of correspondence and pleadings for mail with the United Postal Service.

On March 31, 2008, I served the foregoing document(s) described as

- **Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment**

On the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Jesse Finlayson, Michael Williams
FINLAYSON, AUGUSTINI & WILLIAMS LLP
110 Newport Center Drive, Suite 100
Newport, CA 92660

☒ BY MAIL, by placing a copy thereof in a separate envelope for each addressee named above, addressed to each addressee respectively, and then sealed each envelope and, with the postage thereon fully prepaid, deposited each in the United States mail at San Diego, California in accordance with our business' practice.

☐ BY PERSONAL SERVICE, by placing a copy thereof in a separate envelope for each addressee named above, addressed to each such addressee respectively, and caused such envelope to be delivered by hand to the offices of addressee.

☐ BY FACSIMILE, this document was transmitted by facsimile transmission from (619) 330-4657 and transmission was reported as complete and without error. A copy of the transmission report is attached to this affidavit.

☐ ELECTRONICALLY, this document was transmitted by the Internet from our office.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on March 31, 2008, at San Diego, California.

_/S/ LUISA PARRA_
Luisa Parra