JESSE S. FINLAYSON, SBN 179443
MICHAEL R. WILLIAMS, SBN 196863
FINLAYSON, AUGUSTINI & WILLIAMS LLP
110 Newport Center Drive, Suite 100
Newport Beach, California 92660
Telephone: (949) 759-3810
Facsimile: (949) 759-3812
Email:   jfinlayson@faw-law.com; mwilliams@faw-law.com

Attorneys for Defendant and Counterclaimant
CASHCALL, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| TRICIA LECKLER, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>CASHCALL, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. C 07-04002 SI<br><br>**DEFENDANT CASHCALL, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Hearing:**<br>Date:   May 14, 2008<br>Time:   9:00 a.m.<br>Place:  Courtroom 10, 19th Floor<br>Judge:  Hon. Susan Illston |
|---|---|

Defendant CashCall, Inc. files this Reply in support of its Motion for Partial Summary Judgment. As explained in more detail below, Plaintiff Tricia Leckler's opposition to CashCall's motion does not, and cannot, save her two claims for relief under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), because the undisputed facts show that the calls from CashCall to Plaintiff's cellular telephone were made with Plaintiff's "prior express consent," as allowed under the TCPA.

### A.   Introduction.

Plaintiff implicitly concedes that her TCPA claims fail under the FCC's recent ruling in which the FCC declared that "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." FCC Declaratory Ruling (Dec. 28, 2007) at ¶¶ 1, 9.[1] Plaintiff attempts to salvage her case by arguing that the Court should strike down the FCC's ruling because that ruling allegedly conflicts with Congress' clear intent under the statute. [Opp'n at 1-2.] Specifically, Plaintiff claims that "[t]he TCPA requires that persons called on their cell phones by autodialers or with a prerecorded voice give their 'prior express consent' to receive" autodialed or prerecorded message calls to their cell phones. [*Id.* at 1.] In other words, according to Plaintiff, it is the mode of the call to the customer's cellular telephone, rather than the call to the cellular telephone itself, for which a creditor must obtain its customer's "prior express consent." In addition, Plaintiff claims that, even if Congress' intent is not clear, the Court should nevertheless strike down the FCC's ruling because that ruling is "manifestly contrary" to the TCPA. [*Id.* at 9-10.]

Plaintiff's arguments are unfounded, as they ignore the language, legislative history, and purpose of the TCPA – to curtail certain telemarketing practices – and are not supported by any case law or statutory authority. *See, e.g., Chevron U.S.A., Inc. v. National Res. Def. Council, Inc.*, 467 U.S. 837, 859-64, 104 S. Ct. 2778, 2790-92 (1984) (examining the language, legislative history, and purpose of the statute in determining whether to strike down an agency regulation or interpretation of

---

[1]   *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (Request of ACA International for Clarification and Declaratory Ruling)*, CG Docket No. 02-278, Declaratory Ruling (Dec. 28. 2007).

a particular statute).  Indeed, the FCC's ruling is consistent with the language, legislative history, and purpose of the TCPA.  It is also inherently reasonable and strikes a proper balance between protecting individual privacy/financial interests and allowing creditors to contact their customers at telephone numbers provided by those customers for debt collection purposes.  Consequently, CashCall's motion for partial summary judgment must be granted (and Plaintiff's cross-motion for partial summary judgment must be denied).

**B.      Background Regarding The TCPA.**

On December 20, 1991, Congress enacted the TCPA "in an effort to address a growing number of telephone marketing calls and certain telemarketing practices Congress found to be an invasion of consumer privacy."  FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 2 (emphasis added); *Satterfield v. Simon & Schuster*, 2007 U.S. Dist. LEXIS 46325, *10 (N.D. Cal. June 26, 2007) (explaining that "Congress enacted the [TCPA] in response to various telemarketing practices arising out of the use of 'autodialers' to generate millions of automated telephone calls.") (citations omitted) (emphasis added).

The TCPA regulates certain types of calls to cellular telephones, certain types of calls to residential telephone lines, and "junk" faxes.  47 U.S.C. § 227(b)(1)(A)-(D).  Specifically, under the TCPA, it is "unlawful for any person . . . to make any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any . . . cellular telephone service . . . for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added); *see also* 47 C.F.R. § 64.1200(a)(1)(iii).

> The legislative history . . . suggests that through the TCPA, Congress was attempting to alleviate a particular problem—an increasing number of automated and prerecorded calls to certain categories of numbers.  The TCPA does not ban the use of technologies to dial telephone numbers.  It merely prohibits such technologies from dialing emergency numbers, health care facilities, telephone numbers assigned to wireless services, and any other numbers for which the consumer is charged for the call.  Such practices were determined to threaten public safety and inappropriately shift marketing costs from sellers to consumers.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092 (2003) ("*2003 TCPA Order*") (emphasis added).

Under the TCPA, it is also "unlawful for any person . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [FCC under the TCPA]." 47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2). In accordance with its authority under the TCPA, the FCC has exempted from the requirements relating to calls to residential telephone lines calls that do "not include or introduce an unsolicited advertisement or constitute a telephone solicitation" and calls that are "made to any person with whom the caller has an established business relationship at the time the call is made." 47 C.F.R. § 64.1200(a)(2)(iii), (iv); 47 U.S.C. § 227(b)(2)(B).

> [T]he practice of sending prerecorded messages to residential telephone lines is widespread. Consumers are frustrated by such messages, which often fill up the tapes of their answering machines, fail to identify adequately the company delivering the message, and provide no option for requesting that the company not call again. When consumers attempt to place their numbers on a do-not-call list in response to a prerecorded message, they often reach busy signals, additional prerecorded messages, or are told that do-not-call requests are not processed at that number. Consumers also indicate that they have been told by <u>telemarketers</u> that "free" offers and informational messages are not subject to the prerecorded message prohibition, as they do not ask the called party to purchase any product or service.

*2003 TCPA Order*, 18 FCC Rcd at 14096 (emphasis added).

Although there is no express exemption for debt collection calls to residential telephone lines, the FCC has concluded that such an exemption is unnecessary because debt collection calls to residences "do not transmit an unsolicited advertisement" and involve an "established business relationship." FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 4. The FCC further explained that "calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing. Therefore, calls regarding debt collection or to recover payments are not subject to the TCPA's separate restrictions on 'telephone solicitations.'" *Id.* at ¶ 11.

This case has nothing to do with telemarketing – the calls from CashCall to Plaintiff's cellular telephone were not made for the purpose of offering CashCall's loan products or soliciting Plaintiff to apply for a loan. Instead, CashCall was attempting to collect a debt that Plaintiff owed directly to CashCall.

C. **Plaintiff's Request That The Court Strike Down The FCC's Recent Ruling Is Unfounded And Should Be Rejected.**

In its recent ruling regarding the TCPA, the FCC declared that "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." FCC Declaratory Ruling (Dec. 28, 2007) at ¶¶ 1, 9. The parties agree that the analysis of the FCC's recent ruling is governed by *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984), but, not surprisingly, they disagree regarding the outcome of that analysis.

### 1. If Congress' Intent Is Clear From The TCPA, CashCall Prevails.

Under the *Chevron* analysis, "[f]irst, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43, 104 S. Ct. at 2781.

Plaintiff first contends that the Court should strike down the FCC's ruling because that ruling allegedly conflicts with Congress' clear intent under the statute. Specifically, Plaintiff claims that "prior express consent" "is an agreement giving permission to do a particular act." [Opp'n at 1.] From this premise, Plaintiff jumps to the faulty conclusion that "[t]he TCPA requires that persons called on their cell phones by autodialers or with a prerecorded voice give their 'prior express consent' to receive" autodialed or prerecorded message calls to their cell phones. [*Id.*] Thus, Plaintiff focuses on the mode of the call to the cellular telephone rather than the call to the cellular telephone itself.

Even accepting Plaintiff's argument that Congress' intent is clear from the statute itself, Plaintiff's interpretation of Congress' intent is simply incorrect. First, based on its placement in the statute, it is clear that the phrase "prior express consent" qualifies the word "call." In other words, it is the call itself that must be made with prior express consent, not the mode of the call. Indeed, for Plaintiff's interpretation to be correct, the statute would have to be rewritten as follows:

> It is unlawful for any person to make any call using any automatic telephone dialing system or an artificial or prerecorded voice to any cellular telephone service for which the called party is charged for the call <u>unless the called party gave its prior express consent to be contacted by means of an automatic telephone dialing system or an artificial or prerecorded voice</u>.

Had Congress intended the statute to read as Plaintiff suggests, it certainly could have drafted it in such a way. Of course, it did not.

Second, Congress enacted the TCPA to address telemarketing – not debt collection – issues and to protect individuals from having to pay for receiving telemarketing calls. FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 2; *2003 TCPA Order*, 18 FCC Rcd at 14092. There is nothing to suggest that Congress intended the TCPA to grant "substantial consumer rights" to debtors vis-à-vis their creditors, as Plaintiff contends. Third, legislative history of the TCPA shows that Congress was not trying to protect persons who might receive calls from their creditors at telephone numbers provided by those persons to their creditors. Specifically, the House report on the TCPA stated that "'[t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.'" FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 9.[2] Tellingly, Plaintiff does not examine the language of the TCPA and does not even discuss the purpose of the TCPA or its legislative history.

Thus, if Congress' intent is clear, as Plaintiff contends, CashCall prevails because it is undisputed that

- Plaintiff gave CashCall her "express" "consent" to be contacted on her cellular telephone when she provided her cellular telephone number to CashCall (a) in her loan application, (b) on documents she sent to CashCall during the application process, and (c) in correspondence that she sent to CashCall after receiving her loan, indicating that her cellular telephone was her preferred means of contact; and

---

[2] Legislative history may be examined to ensure that a plain reading of a statute comports with Congressional intent. *American Fed'n of Gov't Employees, AFL-CIO Local 2152 v. Principi*, 464 F.3d 1049, 1055-56 (9th Cir. 2006).

- Plaintiff gave her express consent "prior" to receiving any autodialed or prerecorded message calls to her cellular telephone from CashCall.

Accordingly, Plaintiff's argument is meritless.

Plaintiff attempts to bolster her argument by citing to several cases in which courts have found that various governmental agencies exceeded their authority in making a ruling or other determination that conflicted with Congress' clear intent under the statutes at issue. [Opp'n at 4-8.] Not one of these cases, however, involved the TCPA or even the FCC. CashCall does not dispute the general proposition that an agency could exceed its authority in making a ruling or other determination that conflicted with Congress' clear intent under a particular statute. But that's not what happened in this case, and Plaintiff does not explain how any of the cases that she cited support her erroneous interpretation of Congress' intent as it relates to the TCPA. In addition, there are numerous cases in which courts have upheld agency rulings and interpretations, including *Chevron*, 467 U.S. at 866, 104 S. Ct. at 2793 (upholding an EPA regulation implementing permit requirements for nonattainment states pursuant to the Clean Air Act Amendments of 1977, 42 U.S.C. § 7502(b)(6), as a reasonable interpretation of the term "stationary source"), and *EEOC v. Dinuba Medical Clinic*, 222 F.3d 580, 588-89 (9th Cir. 2000) (upholding the EEOC's interpretation of "complaining party" under 42 U.S.C. § 1981a for damage cap purposes).

Plaintiff also claims that her argument is supported by the Federal Trade Commission's definition of "express consent" as an affirmative and unambiguous articulation of consent by a consumer. [Opp'n at 10.] But this definition does not conflict with the FCC's ruling in this case – the FCC simply concluded that persons who provide their cellular telephone numbers to their creditors have given their invitation or permission to be called at the number that they have given, which is consistent with the language of the TCPA and its legislative history.

Likewise, *Cadsoft Corp. v. Riverdeep, LLC*, 2007 U.S. Dist. LEXIS 39559 (N.D. Cal. May 18, 2007), does not help Plaintiff. [Opp'n at 10.] In *Cadsoft*, the plaintiff sued the defendant after the defendant assigned its rights under a software development and publishing agreement that contained a copyright license to a third party without obtaining the plaintiff's express consent for the assignment, which was required under federal copyright law. 2007 U.S. Dist. LEXIS 39559, at *2-6.

The court rejected the defendant's argument that it had the plaintiff's consent for the assignment because the plaintiff knew of the assignment before it occurred and accepted the benefits of the assignment. *Id.* at *5-7. The court found that, at best, the defendant had the plaintiff's implied consent, which was insufficient under the Copyright Act. *Id.* at *5-6.

Here, as explained above, Plaintiff provided her cellular telephone number to CashCall (a) in her loan application, (b) on documents she sent to CashCall during the application process, and (c) in correspondence that she sent to CashCall after receiving her loan, indicating that her cellular telephone was her preferred means of contact. Thus, CashCall is not relying on Plaintiff's implied consent to receive calls to her cellular telephone. Accordingly, *Cadsoft* does not support Plaintiff's argument.

### 2. The FCC's Recent Ruling Is Not "Manifestly Contrary" To The TCPA.

Plaintiff next contends that, if Congress' intent is not clear, the FCC's ruling is "'manifestly contrary to the statute'" because the ruling supposedly allows "'no consent' and 'implied consent' to be substituted for the plain language requiring 'express consent' to receive such calls." [Opp'n at 9-10.] But this is no more than a repeat of Plaintiff's primary argument regarding Congress' intent under the TCPA. And, as explained above, that argument is meritless.

The question is whether the FCC's recent ruling regarding "prior express consent" is "based on a permissible construction of the statute." *See Chevron*, 467 U.S. at 843, 104 S. Ct. at 2781-82. It certainly is. In fact, the FCC's recent ruling strikes a proper balance between protecting individual privacy/financial interests and allowing creditors to contact their customers at telephone numbers provided by those customers for debt collection purposes.

As explained above, Congress' intent in enacting the TCPA was not to regulate debt collection activities. There is an entire federal statutory scheme dedicated to regulating debt collection activities – the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. Likewise, California has its own statutory scheme dedicated to regulating debt collection activities – the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, et seq. Congress was also not trying to protect persons who might receive calls from their creditors at telephone numbers provided to those creditors by their customers. *See, e.g.*, FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 9 (citing the House report

which stated that "'[t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.'"). Instead, the TCPA was intended to address telemarketing issues and to protect individuals from having to pay for receiving telemarketing calls.

Based on the FCC's rulings, a creditor can deliver prerecorded messages to its customer's residential telephone number (where there is great privacy concern) for debt collection purposes regardless of whether the customer provided the creditor with the customer's telephone number (i.e., without her consent to be contacted there) because these type of calls fall within an exemption to the TCPA. In order for a creditor to make an autodialed call and/or deliver prerecorded message calls to a customer's cellular telephone, however, the customer must have provided the creditor with the customer's cellular telephone number. What this recognizes is that where a customer might incur a charge for a call to her cellular telephone, the FCC wants to make sure that the customer herself provided that telephone number to her creditor (and can thus reasonably expect to be called at that number). Thus, there is nothing arbitrary or capricious about the FCC's ruling, and its ruling is not manifestly contrary to the TCPA. Accordingly, Plaintiff's request that the Court strike down the FCC's recent ruling is unfounded and should be rejected.

### 3. CashCall Did Not Violate the TCPA.

Here, the following facts are undisputed:

- Plaintiff provided her cellular telephone number to CashCall when she applied for a loan, listing it in her loan application and on several other documents that she provided to CashCall. [Jointly Submitted Statement of Undisputed Facts in Support of the Parties' Cross- Motions for Partial Summary Judgment at ¶¶ 2-4, 18; Ex. A (pp. 5-11).]
- CashCall approved Plaintiff's loan application and provided her with $2,525 in cash in accordance with a promissory note signed by Plaintiff. [*Id.* at ¶¶ 5-7; Ex. A. (pp. 1-4).]
- After Plaintiff fell behind on her monthly payments to CashCall, CashCall began collection efforts related to Plaintiff's loan, which included making telephone calls to

       Plaintiff's cellular telephone using an autodialer and prerecorded messages.  [*Id.* at ¶¶ 8-11, 14.]

- Plaintiff never once indicated to CashCall that it should not contact her on her cellular telephone.  [*Id.* at ¶ 15.]

Based on the FCC's ruling, Plaintiff's provision of her cellular telephone number to CashCall as part of her loan application process reasonably evidenced prior express consent by Plaintiff to be contacted by CashCall at that number regarding her debt to CashCall.  *See* FCC Declaratory Ruling (Dec. 28, 2007) at ¶ 9.  In addition, it is undisputed that CashCall called the cellular telephone number that Plaintiff provided in connection with the loan that she obtained from CashCall and that CashCall's calls related to Plaintiff's debt.  *See id.* at ¶ 10.

Thus, based on the FCC's ruling, all of CashCall's autodialed and prerecorded message calls to Plaintiff's cellular telephone were made with Plaintiff's "prior express consent" because Plaintiff provided CashCall with her cellular telephone number in connection with an existing debt.  *See id.*  Accordingly, CashCall did not violate the TCPA.  *See id.*

**D.**     **Conclusion.**

CashCall did not violate the TCPA because its calls to Plaintiff's cellular telephone were made with Plaintiff's "prior express consent," as allowed under the TCPA.  Accordingly, CashCall requests that the Court grant its motion for partial summary judgment and grant CashCall such other relief as may be just and appropriate.

DATED:  April 18, 2008

                              JESSE S. FINLAYSON
                              MICHAEL R. WILLIAMS
                              FINLAYSON, AUGUSTINI & WILLIAMS LLP

                              By:_____/s/ Michael R. Williams_____
                                        Michael R. Williams

                              Attorneys for Defendant and Counterclaimant
                              CASHCALL, INC.

Leckler - Reply in Support of Motion for Partial Summary Judgment

# CERTIFICATE OF SERVICE

I, Wendy S. Mills, declare as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 110 Newport Center Drive, Suite 100, Newport Beach, California 92660, in said County and State. On April 18, 2008, I served the following document(s):

**DEFENDANT CASHCALL, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

on the following CM/ECF Users:

☒ **CM/ECF ELECTRONIC SERVICE:** The following are registered as CM/ECF Users with the Court, and have consented to electronic service:

**Counsel for Plaintiff: Joshua B. Swigart – josh@westcoastlitigation.com**

and on the parties stated below by the following means of service:

**Counsel for Plaintiff:**
**Douglas J. Campion, Esq.**
**LAW OFFICES OF DOUGLAS J. CAMPION**
**411 Camino Del Rio South, Suite 301**
**San Diego, CA 92108**

☒ **BY MAIL**: I placed a true copy of the above-mentioned document(s) in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit.

☐ **BY PERSONAL SERVICE**: I provided a true copy of the above-mentioned document(s) to a messenger for personal delivery to each person named above, at the address(es) shown above, before 5:00 p.m. on the above-mentioned date.

☐ **BY ELECTRONIC MAIL**: I caused the above-mentioned document(s) to be transmitted electronically to the e-mail address of the addressees indicated above. I am readily familiar with this firm's Microsoft Outlook electronic mail system and each such document was duly served electronically on the above-mentioned date, and the transmission was reported as complete and without error.

☐ **BY FACSIMILE**: I caused the above-mentioned document(s) to be transmitted by facsimile machine to the parties and numbers indicated above, on the above-mentioned date, pursuant to Rule 2.306. The facsimile machine I used complied with Rule 2.306 and no error was reported by the machine. Pursuant to Rule 2.306, I caused the machine to print a transmission record of the transmission, a copy of which is maintained by this office.

☐ **BY UPS—NEXT DAY AIR:** I placed a true copy of the above-mentioned document(s) in a sealed envelope or package designated by the United Parcel Service with delivery fees paid or provided for, addressed to the person(s) as indicated above, on the above-mentioned date, and I deposited same in a box or other facility regularly maintained by United Parcel Service or delivered same to an authorized courier or driver authorized by United Parcel Service to receive documents.

I am employed in the office of Michael R. Williams, a member of the bar of this Court, and the foregoing document(s) was/were printed on recycled paper.

☒ **(FEDERAL)**  I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 18, 2008.

/s/ Wendy S. Mills
Wendy S. Mills