Douglas J. Campion, Esq. (SBN: 75381)
**LAW OFFICES OF DOUGLAS J. CAMPION**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**HYDE & SWIGART**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone:  (619) 233-7770
Facsimile:   (619) 297-1022

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRICIA LECKLER, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF,<br><br>V.<br><br>CASHCALL, INC.,<br><br>DEFENDANT. | Case No.: C07-04002 SI<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>JUDGE: HON. SUSAN ILLSTON<br><br>Date: May 14, 2008<br>Time: 2:30 P.m.<br>Location: Courtroom 10, 19th Floor |

# TABLE OF CONTENTS

TABLE OF CONTENT ................................................................................................. i

  I.    INTRODUCTION ........................................................................................ 1

  II.   ARGUMENT ............................................................................................... 1

      A. The TCPA meets the First Step Test of the *Chevron* Analysis and no Further Deference to the Ruling or the FCC is Necessary. ...................... 1

      B. The TCPA Controls Debt Collectors as Well as Telemarketers and Debt Collectors are Subject to the Contested TCPA Provision ........................ 3

      C. Legislative History Confirms the TCPA was Passed to Protect the Privacy Rights of Consumers and does not Support the FCC Ruling ....... 4

      D. Plaintiff Consented Only to Allow CashCall to Contact Her at the Numbers She Provided, but Not by Illegal Autodialer or Prerecorded Voice Calls ............................................................................................... 8

      E. The Wording of the Statute Makes it Clear that the "Mode" of the Call Must be Agreed to by the Recipient ....................................................... 8

      F. The Ruling is "Manifestly Contrary" to the Statute and, Under *Chevron*, Cannot be Enforced ............................................................................... 10

  III.  CONCLUSION ........................................................................................ 10

## I. INTRODUCTION

Plaintiff submits that the key test to resolving this issue is determining whether the TCPA's phrase "prior express consent" as used in 47 U.S.C. § 227(b)(1)(A)(iii) has a plain, unambiguous meaning. If so, then the Federal Communications Commission's ("FCC") January 4, 2008 Ruling ("Ruling") should be rejected and held to be *ultra vires* for purposes of this case. Yet Defendant can only point to a lack of a separate definition of the phrase itself as the basis for supporting the FCC's redefining in a different manner words that were already clear as to Congress' intent. Legislative history of the TCPA confirms that all consumers – including wireless phone users -- were meant to be protected from automated dialing machines and prerecorded voice calls. And "prior express consent" by the called party is the requirement imposed by Congress, and done away with by the FCC Ruling. Defendant's argument to the contrary notwithstanding, it is clear the FCC overstepped its authority by treading where it did not need to tread.

## II. ARGUMENT

### A. The TCPA Meets the First Step Test of the *Chevron* Analysis And No Further Deference to the Ruling or the FCC is Necessary.

If the intent of Congress is clear from the plain meaning of the language of the statute – "prior express consent" – the FCC has no business trying to re-define that phrase's plain meaning. *Chevron U.S.A., Inc. v. National Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S. Ct. 2778, 81 L.Ed. 2d 694 (1984).

> First, always, is the question whether Congress has directly spoken to the precise question at issue. *If the intent of Congress is clear, that is the end of the matter;* for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Chevron, supra*, 467 U.S. at 842 (emphasis added).

"Prior express consent" is not ambiguous and is not unclear in its meaning, which is the necessary first step under *Chevron* in order to even attempt to support an agency's regulation or ruling. If Congress' intent is clear from the words used,

*Chevron* mandates that the FCC cannot modify that language and intent by regulating by its Ruling. In its Opposition, Defendant makes no persuasive argument to counter Plaintiff's primary contention that "prior express consent" has a plain meaning in the TCPA and that Congress' intent is clear from that wording. Instead Defendant argues that "Congress has not expressly defined the phrase 'prior express consent' in the TCPA." Def's Mem at 5. Therefore, Defendant argues the first step of *Chevron* has not been met because it is not separately "defined", thus requiring the Court to go to the *Chevron* second step. Then, Defendant argues, if this Court gets to the *Chevron* second step, this Court should defer to the FCC's Ruling. Def's Memo at 5. But that is a "strawman" argument. There is absolutely no authority, and Defendant has cited none, that imposes such a burden of first having to "define" a phrase in a statute in order to make it have a plain meaning or to be unambiguous. That is a false burden Defendant seeks to impose. The test is whether the intent of Congress is clear from the phrase requiring "prior express consent" -- "If the intent of Congress is clear, that is the end of the matter". *Chevron, supra*, 467 U.S. at 842. Plaintiff submits that intent couldn't be more clear: Congress intended the caller to have the "prior express consent" of the called party before calling them with an autodialer or with a prerecorded voice. [1] The statute means what it says and says what it means. Therefore, the first step of the *Chevron* test is met and the inquiry stops there. *Id.*

Particularly telling is the language of the Ruling itself used to broaden the plain meaning of "prior express consent". "We emphasize that prior express consent is

---

[1] 47 U.S.C. § 227(b)(1)(A). ("*It shall be unlawful* for any person within the United States or any person outside the United States if the recipient is within the United States—*(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice*—(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency); (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; *or (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]*").

1  *deemed* to be granted only if the wireless number was provided by the consumer to the
2  creditor, and that such number was provided during the transaction that resulted in the
3  debt owed." Ruling, para. 10 (emphasis added). The word "deem" or "deemed" as
4  defined in the American Heritage Dictionary means "1. To have as an opinion; judge:
5  *deemed it was time for a change*. 2. To regard as; consider: *deemed the results*
6  *unsatisfactory*." (Emphasis in original.) Thus, the use of "deemed" is further
7  evidence of changing the plain meaning of "prior express consent" by inserting the
8  condition of providing the cell phone number on an application in order to be judged
9  or considered as passing the FCC's new "prior express consent" test. You pass its
10 new less rigid test, and the FCC "deems" you now have "prior express consent" to
11 satisfy the statute. Nowhere in the TCPA does it say that the FCC should adopt a
12 regulation or ruling to impose conditions or tests which redefine Congress' plain
13 meaning of the words it chose: "prior express consent". Yet with its Ruling, the FCC
14 presumes it can do so, and "deem" a circumstance to constitute "prior express
15 consent" that is contrary to the plain meaning Congress intended.

### B. The TCPA Controls Debt Collectors as Well As Telemarketers and Debt Collectors Are Subject to the Contested TCPA Provision.

Defendant argues throughout its brief that the TCPA's legislative history confirms that statute is aimed at protecting consumers, including cell phone owners and users, from telemarketers, not debt collectors. But that is irrelevant for purposes of this motion because it is undisputed the contested language "prior express consent" does in fact apply to debt collectors. But Defendant also argues that debt collectors are not as constrained as telemarketers by the TCPA and its rules and regulations. Def's Opp. at 2, 3, 8, 9, 12-13. But that is a distinction without a difference. It is true the TCPA regulates and controls debt collectors, as does the Fair Debt Collection Practices Act. Plaintiff concedes that Defendant's statements on page 3 of its Memo are correct about how debt collectors are allowed certain leeway under the TCPA in their communications that telemarketers are not. Def's Memo at 3. Those include

different regulations for calling residential lines because debt collectors are not "advertising" and with debt collectors and their debtors, there is an "established business relationship".

However, those arguments by Defendant are irrelevant for this motion. This is not an FDCPA case and is not about debt collector calls in general. It is not about calling residential telephone lines and the less restrictive rules applying to debt collectors compared to telemarketers. But it *is* about the TCPA prohibition in 47 U.S.C. § 227(b)(1)(A)(iii) prohibiting anyone – even debt collectors – from calling cell phones using autodialers or prerecorded voices without the prior express consent of the person called. And Defendant cannot obfuscate that fact with its references to things debt collectors are legitimately permitted to do under the TCPA.

Even in its Ruling, the FCC made it clear that debt collectors as well as telemarketers are prohibited from engaging in the conduct proscribed by the TCPA. The Ruling confirms that no autodialers (including predictive dialers) can be used by *debt collectors* without "prior express consent". Ruling, para. 14. And debt collectors are subject to the TCPA's rules prohibiting the calling of wireless numbers generally, as are telemarketers. *Id*. Furthermore, the debt collectors are to be held liable for any such autodialer calls under the TCPA unless they or the original creditor can establish the cell phone number was provided to the original creditor. *Id*. at para. 10. There are many such examples confirming debt collectors are covered by the TCPA. But one need only look to the ACA petition requesting "clarification" leading to the Ruling: it sought relief from certain TCPA provisions for its debt collector members. If the TCPA – and this phrase at issue -- did not apply to debt collectors, why would the ACA petition for relief?

### C. Legislative History Confirms the TCPA Was Passed to Protect the Privacy Rights of Consumer and Does Not Support the FCC Ruling.

The TCPA was not passed to insulate debt collectors from liability for making collection calls to debtors. It was passed to protect consumers from companies using

autodialers and using pre-recorded voices to call unsuspecting recipients. Legislative History, Senate Report No. 102-178, p. 1970.[2] When the FCC failed to take any action to prevent such unsolicited calls, both in 1980 and 1986, Congress passed the TCPA in response to "increasing consumer complaints." *Id*. In the TCPA section entitled "Background and Needs", discussing the consumer complaints and other reasons for passing the TCPA, in Section E. "Responses to the Telemarketers", Congress made it clear that automated calls by debt collectors were to be covered by the TCPA, and prohibited such calls unless the recipient gave their consent to be called:

> Some telemarketers asked that S. 1462 be amended to exempt the following automated calls: . . . automated calls for debt collection purposes. . . . These exemptions are not included in the bill, as reported. The Committee believes that such automated calls only should be permitted if the called party gives his or her consent to the use of these machines.

*Id*. at p. 1971.

The Report stated that the reported bill excised the requirement previously inserted in the bill requiring express consent to be *in writing* and instead allowed either *oral or written* consent. "The reported bill deletes the requirement that all consent be in writing". *Id.* at p. 1972. In its Conclusion, the Committee summarized its concern in passing the Bill:

> The Committee believes that Federal legislation is necessary to protect the public from automated telephone calls. These calls can be an invasion to privacy, an impediment to interstate commerce, and a disruption to essential public safety services. . . . The Federal government has a legitimate interest in protecting the public, and the regulations required by the reported bill are the minimum necessary to protect the public against the harm caused by these [autodialer] machines.

*Id*. at 1972-1973.

Defendant argues legislative history requires this Court to follow the FCC

---

[2] See Plaintiff's Request for Judicial Notice (Reply), Ex. 5, submitted herewith.

1  Ruling because it claims an analysis of that history supports the new definition of "prior express consent". Def's Memo at 2-3. But as the quote in Def's Memo sets forth, the FCC's 2003 Ruling confirmed the legislative history suggests the TCPA was passed in part to prevent the "particular problem – an increasing number of automated and prerecorded calls" and was intended to ban the use of such technologies from calling ". . . telephone numbers assigned to wireless services, and any other numbers for which the consumer is charged for the call." Surely with that goal in mind, how can the FCC Ruling stand? The statute means what it says and the legislative history confirms Congress' goal was to stop this "particular problem". By its Ruling, the FCC has gone against the intent of Congress to control this problem and made the problem Congress was fighting worse.

The legislative history also makes it clear that it only makes sense under the TCPA that if a telephone number is provided to an entity in order to receive information in return that is sought by the recipient of the call, the information provider should not be penalized for providing that information by telephone. See 1992 TCPA Order, 7 FCC Rcd 8752; 1992 FCC Lexis; 57 FR 48333 at para. 31. That states if a person gives a telephone number ("knowingly release") to a business and the consumer expects to be called, they have in effect " their invitation or permission to be called at the number which they have given". *Id*. at para. 31. But calls to a phone number "captured" by a caller ID without notice to the called party is not allowed under the TCPA as the person called cannot have been considered to have given such "invitation or permission" to receive such calls. Therefore the caller must fall under other exemptions if it calls those captured numbers by autodialer or other prohibited means. *Id*. The FCC then cites in fn. 57 the House Report at 102-317, 1st Sess., 102nd Cong. (1991) at p. 13 that supports that interpretation and confirms what only makes sense: "the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications."

Where the FCC Ruling goes astray from this legislative history is taking the extra step of implying additional consent that is not there by providing a cell phone number for normal business communications. When a cell phone user provides a cell phone number for normal business communications, the FCC's Ruling goes too far in implying "consent" to receiving dunning calls made by autodialer in the future on a cell phone. Any claim that new definition of "prior express consent" satisfies Congress' intent in requiring "prior express consent" is incorrect.

Further, in reviewing the legislative history, under the "Regulatory Impact" section, "Number of Persons Covered", it states:

> Telemarketers also will be required to ensure that they do not place automated calls to residential customers, to emergency lines, or to cellular or paging numbers. These restrictions are necessary to accomplish the objectives of the bill.

*Id.* at 1975.

Lastly, Congress did not expect the FCC to have to engage in extensive rulemaking "to develop regulations to enforce the provisions of this bill. "Such rulemaking proceedings are unlikely to require a great deal of paperwork because of the relatively straight-forward nature of the restrictions contained in this bill." Legislative History, Senate Report No. 102-178, Regulatory Impact, Paperwork, at pp. 1976-1977. Certainly they would not have expected such a new definition of straight forward terms such as "prior express consent".

In the FCC's 2003 Report and Order, 68 FR 44144, 44165, 18 FCC Rcd 14104, 14115 (FCC 2003), the FCC again confirmed that any autodialed or prerecorded voice calls to wireless numbers are strictly forbidden under the TCPA, unless the call falls under one of the few "limited exceptions", including the prior express consent exception.[3]

---

[3] "Telemarketing Calls to Wireless Numbers. 165. We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, 'to any telephone number assigned to

In summary, the intent of Congress as set forth in the legislative history is contrary to the Ruling. The purpose of the TCPA was to protect consumers and require consent before there was any intrusion into the consumer's life through autodialed or prerecorded voice calls. "Prior express consent" means today what it was intended to mean when the TCPA was passed. It does not mean what the FCC "deems" it to mean, implied consent by providing a cell phone number in a general information application for services.

### D. Plaintiff Consented Only to Allow CashCall to Contact Her at the Numbers She Provided, but Not By Illegal Autodialer or Prerecorded Voice Calls

Defendant argues that Plaintiff consented to being called by what would otherwise be illegal autodialers by providing to CashCall her name, address and contact information, including her cell phone number, in her application. Def's Memo at 7. Of course, it is absurd to presume that she actually intended to give CashCall express consent to call her sometime in the future illegally with autodialers or by prerecorded voice. That defies common sense and there is no evidence of that fact. Thus, without the FCC Ruling's new definition to save it, CashCall cannot prevail on the prior express consent issue and this Summary Judgment motion as the only way consent can be imputed here is through the FCC's new definition that implies consent by putting a cell phone number on a CashCall general application.

### E. The Wording of the Statute Makes it Clear that the "Mode" of the Call Must be Agreed to by the Recipient.

Defendant argues that the wording of the statute requires only that the called person consent to just "receiving a call" from the calling party – and not that the called party has to consent to receiving autodialed calls or prerecorded voice calls. Def's Memo at 9. But that interpretation defies logic. 47 U.S.C. § 227(b)(1)(A)(iii) says it

---

a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the called party is charged.' . . . Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls. Moreover, such calls can be costly and inconvenient." (Emphasis in original.)

is illegal to: *"(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice"* to three types of call recipients: (1) emergency lines including 911 lines; (2) a hospital guest room or elder care center; or (3) a cellular phone, paging service, etc. If Defendant's interpretation is true, and the words in parentheses only modify the word "call" itself, and not the mode of the call in using an autodialer or prerecorded voice, that would not make any sense. First, it would make the prohibition against calls to the first category of recipients nonsensical because it would make it illegal to make a simple call for emergency purposes to an emergency line or 911 line. The correct interpretation is to the contrary, the statute intends to prohibit calls to the three categories of recipients by autodialers or by a prerecorded voice. The statute says a person can only legally make calls with autodialers or by a prerecorded voice to the three categories of recipients if it is either an emergency or if prior express consent is obtained to do so.

Secondly, Defendant's interpretation would make unnecessary all the TCPA laws, rules and regulations holding that no prior consent is necessary for a debt collector to call the debtor because of their established business relationship under 47 U.S.C. Section 227(b)(2)(B). Similarly, the TCPA says no prior express consent is required for the creditor to call the debtor because it is not selling or advertising anything. FCC Declaratory Ruling (Dec. 28, 2007) at para. 4. Ignoring those statutes and rulings cited in its own opposition (Def's Memo at 3), Defendant's argument that 47 U.S.C. § 227(b)(1)(A)(iii) now requires consent to only the act of receiving a call from the debt collector suddenly stands the prior law cited in its brief on its head. To accept Defendant's argument that prior express consent to *only the call* is all the statute requires ignores the prior arguments about debt collectors not needing consent to call debtors. As a result, suddenly the TCPA requires the debt collector to obtain consent from the called party for all debt collector calls. That result is illogical and

contrary to what we know about the lack of consent usually necessary for a debt collector to call a debtor on a landline or without an autodialer.

### F. The Ruling is "Manifestly Contrary" to the Statute and, Under *Chevron*, Cannot be Enforced.

*Chevron* holds that even if a regulation or ruling satisfies the Chevron second step, the regulation cannot be enforced if it is "arbitrary, capricious or manifestly contrary to the statute." *Chevron, supra*, 467 U.S. at 844. Defendant's argument is misplaced on this point as it is not the FDCPA statute that the Ruling must be measured against, but instead is the TCPA, and its provision requiring "prior express consent". And it is not the broad statutory scheme of the TCPA that is at issue here. It is the statute's plain and specific requirement that the caller have the recipient's "prior express consent" to receiving autodialed and prerecorded voice calls. Plaintiff submits the Ruling's new definition of prior express consent requiring only a cell phone number to have been provided in a general information application is certainly "manifestly contrary" to the plain wording of 47 U.S.C. § 227(b)(1)(A)(iii).

## III.  CONCLUSION

For the reasons set forth herein, and in the opening brief, Plaintiff requests that this Court set aside the FCC Ruling as *ultra vires* and without effect, at least as to this case.

Respectfully submitted,

Date: April 18, 2008

**LAW OFFICES OF
DOUGLAS J. CAMPION**

By:   /s/ Douglas J. Campion
      Douglas J. Campion
      Attorneys for Plaintiff

Date: April 18, 2008

**HYDE & SWIGART**

By:   /s/ Joshua B. Swigart___
      Joshua B. Swigart
      Attorneys for Plaintiff