1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   TRICIA LECKLER, on behalf of herself and all          No. C 07-04002 SI
    others similarly situated,
9                                                          **ORDER GRANTING PLAINTIFF'S**
                Plaintiffs,                                **MOTION FOR SUMMARY JUDGMENT**
10                                                         **AND DENYING DEFENDANT'S**
       v.                                                  **MOTION FOR SUMMARY JUDGMENT**
11
    CASHCALL, INC.,
12
                Defendant.
13   _____/

14
15          On May 14, 2008, the Court heard argument on the parties' cross-motions for partial summary

16   judgment.  Having considered the arguments of counsel and the papers submitted, the Court hereby

17   GRANTS plaintiff's motion for summary judgment and DENIES defendant's motion for summary

18   judgment.

19
20                                    **BACKGROUND**[1]

21          The parties have stipulated to the following undisputed facts.  Plaintiff Tricia Leckler applied

22   for a personal loan from defendant CashCall, Inc., in the amount of $2,500 in December 2005.  On her

23   loan application, she was asked to provide her home, cell, and work phone numbers, as well as her email

24   address, home address, and other contact information, all of which she provided.  Plaintiff also listed

25   her cell phone number on other correspondence she sent to defendant on December 17, 2005, and

26   August 16, 2006.  *See* Statement of Undisputed Facts at ex. A.  Defendant approved the loan application

27   _____

28          [1] Unless otherwise noted, the following facts are taken from the parties' jointly submitted
    statement of undisputed facts.

**United States District Court**
For the Northern District of California

1    and lent plaintiff $2,575 on December 19, 2005. The Truth in Lending Disclosure included with the

2    loan indicated that the annual percentage rate would be 89.91%, *id.*, and plaintiff still has not paid off

3    the loan.

4         When plaintiff fell behind on her monthly payments, defendant began collection activities

5    against her. These activities included placing calls to plaintiff's cell phone number, and some of these

6    calls to her cell phone used prerecorded messages and an automatic telephone dialing system, i.e. an

7    autodialer. None of the calls made to plaintiff's cell phone were for emergency purposes. The minutes

8    incurred by plaintiff for these calls were counted toward the minutes plaintiff purchased as part of her

9    cell phone plan. The parties also agree that plaintiff never asked defendant not to contact her on her cell

10   phone, and that while plaintiff "never informed CashCall that it could contact her on her cellular

11   telephone by means of prerecorded messages and/or autodialed calls," plaintiff also "never informed

12   CashCall that it could not contact her on her cellular telephone by means of prerecorded messages

13   and/or autodialed calls." Statement of Undisputed Facts at ¶¶ 16-17.

14        Plaintiff filed this suit in federal court on August 3, 2007, alleging that defendant violated the

15   Telecommunications Consumer Protection Act ("TCPA") by placing calls to plaintiff's cell phone using

16   an autodialer and prerecorded messages, without her prior express consent. The complaint alleges both

17   negligent and willful violations of the Act. Complaint at ¶ 27-34. Plaintiff brought the suit on behalf

18   of herself and a putative nationwide class of people who received similar calls placed by defendant on

19   their cell phones within four years prior to the filing of the complaint. *Id.* ¶ 15-16, 18. Plaintiff estimates

20   that the class numbers "in the tens of thousands, if not more." *Id.* ¶ 17. The complaint alleges that this

21   Court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") because at least one class

22   member will be a citizen of a different state from defendant and because, when the $1,500-per-call

23   penalty is multiplied by the thousands of putative class members, the $5,000,000 amount in controversy

24   threshold will be exceeded. *Id.* ¶ 2. On September 5, 2007, defendant filed an answer to the complaint

25   as well as a counterclaim for breach of contract and money had and received in relation to plaintiff's

26   outstanding debt. Currently before the Court are cross-motions for partial summary judgment filed by

27   both parties on plaintiff's two causes of action.

28

United States District Court
For the Northern District of California

2

**United States District Court**
For the Northern District of California

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.*

**DISCUSSION**

Both parties now move for partial summary judgment on the same question: whether defendant violated the TCPA when, as part of its collection efforts, it placed telephone calls to plaintiff's cell phone number using an automatic dialing system and prerecorded messages. The parties agree that this question hinges on the propriety of a ruling by the Federal Communications Commission ("FCC") that clarified that "autodialed and prerecorded message calls to wireless numbers provided by the called

United States District Court
For the Northern District of California

1    party in connection with an existing debt" are permissible under the TCPA because they fall under the

2    exception for calls made with the "prior express consent" of the called party.  FCC Declaratory Ruling,

3    FCC 07-232, at ¶ 9 (Dec. 28, 2007) ("2007 FCC Ruling").  The parties also agree that the case of

4    *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837 (1984), provides the

5    appropriate standard of review of the FCC's ruling.  None of the material facts are in dispute, and the

6    parties have submitted a statement of undisputed facts.  The Court therefore finds that summary

7    adjudication of the legal question presented is appropriate.

8         As a threshold matter, the Court must address whether it has jurisdiction over this case.  The

9    Ninth Circuit has held that "state courts have exclusive jurisdiction over a cause of action created by

10    . . . the Telephone Consumer Protection Act of 1991."  *Murphey v. Lanier*, 204 F.3d 911, 915 (9th Cir.

11    2000) (relying on language in the TCPA found at 47 U.S.C. § 227(b)(3)).  That ruling, and similar

12    rulings by other courts of appeals, addressed only whether federal-question jurisdiction was proper

13    under the TCPA.  The Ninth Circuit has not considered whether a federal court could exercise diversity

14    jurisdiction or jurisdiction under CAFA over a case alleging violations of the TCPA.  Other courts have

15    held, however, that alternative forms of federal jurisdiction are proper for TCPA suits.  *See Brill v.

16    Countrywide Home Loans, Inc.*, 427 F.3d 446,  450-51 (7th Cir. 2005); *Kinder v. Citibank*, 2000 WL

17    1409762, at *3 (S.D. Cal. Sept. 14, 2000) ("Nothing in the Ninth Circuit's analysis suggests that the

18    TCPA precludes district courts from hearing private TCPA claims where some other independent basis

19    for federal jurisdiction exists, such as diversity of citizenship or supplemental jurisdiction."); *see also

20    Kirsch v. Cuadra*, 2005 WL 2677026, *1 n.3 (N.D. Cal. Oct. 20, 2005).  The Court agrees, and finds

21    that it may exercise jurisdiction over this class action under CAFA.

22         In evaluating an agency's construction of a statute under *Chevron*'s two-step analysis, the Court

23    first must determine "whether Congress has directly spoken to the precise question at issue.  If the intent

24    of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect

25    to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842-43.  If, on the other

26    hand, the Court "determines Congress has not directly addressed the precise question at issue," such that

27    "the statute is silent or ambiguous with respect to the specific issue," the Court must move on to the

28    second step to determine "whether the agency's answer is based on a permissible construction of the

1    statute." *Id.* at 843.  Where "Congress has explicitly left a gap for the agency to fill," the agency's rules

2    will be "given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the

3    statute." *Id.* at 843-44.  Where, however, Congress has only implicitly delegated rulemaking authority

4    to an agency, "a court may not substitute its own construction of a statutory provision for a reasonable

5    interpretation made by the administrator of an agency." *Id.* at 844.

6        Plaintiff argues that the Court need not proceed to step two of the *Chevron* analysis because the

7    statutory provision at issue is unambiguous and requires no further interpretation.  The TCPA provides,

8    in pertinent part:

9        It shall be unlawful for any person . . . to make any call (*other than a call made for
         emergency purposes or made with the prior express consent of the called party*) using
10       any automatic telephone dialing system or an artificial or prerecorded voice . . . to any
         telephone number assigned to a paging service, cellular telephone service, specialized
11       mobile radio service, or other radio common carrier service, or any service for which the
         called party is charged for the call . . . .
12
13   47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  Plaintiff argues that there is no ambiguity in Congress'

14   exception for calls made with the called party's consent, because Congress clearly stated that such

15   exception is applicable only where called party has given its "prior express consent." *Id.*  The Court

16   agrees with plaintiff, in part, that Congress' intent is clear, because the phrase "prior express consent"

17   is unambiguous and consists of three words with discernable, ordinary meanings.  That said, the TCPA

18   does not address the "precise question at issue" here, *Chevron*, 467 U.S. at 843, because it does not

19   delineate what constitutes "prior express consent" and does not answer the question whether the

20   provision of a cell phone number on a loan application serves as express consent.  The FCC, in carrying

21   out its authorization to interpret the TCPA, *see*, *e.g.*, 47 U.S.C. § 227(b)(2) ("The Commission shall

22   prescribe regulations to implement the requirements of this subsection."), has issued an order clarifying

23   whether this situation – specific to lenders who use autodialers or prerecorded messages to communicate

24   with their customers – meets Congress' exception for "prior express consent," and the Court must give

25   deference to the FCC's construction unless it is manifestly contrary to Congress' intent or unreasonable.

26

27

28

**United States District Court**
For the Northern District of California

On January 4, 2008, in response to a petition filed by ACA International,[2] the FCC issued a declaratory ruling, adopted December 28, 2007, which held that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt," and thus that "autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party." 2007 FCC Ruling at ¶ 9. The Court finds this construction of "prior express consent" both "manifestly contrary to the statute" and unreasonable, *Chevron*, 467 U.S at 844, because it impermissibly amends the TCPA to provide an exception for "prior express *or implied* consent" and flies in the face of Congress' intent.

*Black's Law Dictionary* defines "express consent" as "[t]hat directly given, either *viva voce* or in writing. It is positive, direct, unequivocal consent, requiring no inference or implication to supply its meaning." *Black's Law Dictionary* 276 (5th ed.1979). Similarly, it defines "express" as "[c]lear. Definite. Explicit. . . . Declared in terms; set forth in words. . . . Manifested by direct and appropriate language, as distinguished from that which is inferred from conduct." *Id.* at 521. By contrast, "implied consent" is defined as "[t]hat manifested by signs, actions, or facts, or by inaction or silence, which raise a presumption that the consent has been given." *Id.* at 276. Although the Court does not doubt that by providing her cell phone number on her loan application and in subsequent correspondence plaintiff consented to be called by defendant, such consent was implied through her actions and conduct, i.e. writing down her cell phone number in a space labeled for such information, rather than expressly given in words or "direct and appropriate language" explicitly stating that plaintiff consented to be called with an autodialer or prerecorded message.

In response to this argument, defendant contends that Congress intended the "prior express consent" in question to apply merely to the act of calling, i.e. consent to be called in general, and did not intend the express consent to apply to the act of calling using an autodialer or prerecorded message. The Court disagrees. If the exemption were to apply whenever a called party gave prior consent to be

---

[2] ACA International is "an international trade organization of credit and collection companies that provide a wide variety of accounts receivable management services. ACA represents approximately 5,800 company members ranging from credit grantors, collection agencies, attorneys, and vendor affiliates." 2007 FCC Ruling at ¶ 1, n.1.

called in general, without any consideration given to the method or type of call, the exemption would be contrary to the logic of the statute, which targets only those calls made using an autodialer or an artificial or prerecorded voice. As the FCC has recognized, Congress enacted the TCPA in part because "Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls. Moreover, such calls can be costly and inconvenient." FCC, Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, FCC 03-153, 68 Fed. Reg. 44144, 44165 (July 25, 2003) ("2003 FCC Ruling"). Thus, in order for the exemption to apply, the called party must expressly consent not only to receiving telephone calls, but to receiving calls made by a caller using an autodialer or prerecorded message. This means that plaintiff's letter to a "Michael Brettell" at CashCall, *see* Statement of Undisputed Facts at ex. A ("Thank you for the consideration of this loan and I appreciate you contacting me as soon as possible on my cell phone."), indicates only that plaintiff expressly consented to be called on her cell phone by defendant – or more specifically, by its employee Michael Brettell – not that plaintiff expressly consented to be called by defendant using an autodialer or prerecorded voice message.

The FCC itself has recognized that a loan applicant who provides a cell phone number on an application has not expressly consented to be called, but rather has given implied consent to be called. In its 2007 Ruling, the FCC relied in part on a prior order it had issued in 1992, in which the FCC determined that "'persons who knowingly release their phone numbers have *in effect* given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'" 2007 FCC Ruling at ¶ 9 (emphasis added) (quoting Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752, 8769 (1992)). The FCC also stated that "prior express consent *is deemed* to be granted only if the wireless number was provided by the consumer to the creditor." *Id.* at ¶ 10 (emphasis added). The problems inherent in finding express consent based on conduct that "in effect" amounts to express consent or "is deemed" to amount to express consent are self-evident and need no explanation.

Although the Court is not aware of any other court that has addressed whether the FCC's 2007 Ruling is a proper interpretation of the TCPA, other courts have arrived at similar conclusions regarding the meaning of express consent in the context of other provisions of the TCPA. Prior to the passage of

the Junk Fax Protection Act of 2005 – when Congress amended the TCPA explicitly to create an "established business relationship" exception to the TCPA's prohibition on unsolicited facsimile advertisements – many courts struck down the FCC's earlier creation of this exception because the mere existence of an established business relationship did not amount to the "prior express permission or invitation" required by Congress. *See Weitzner v. Iridex Corp.*, 2006 WL 1851441, at *3-4 (E.D.N.Y. June 29, 2006) (collecting cases); 47 U.S.C. § 227(a)(4) (2004).  For example, the Court of Appeals of Texas explained that "prior express invitation or permission" was unlikely to be found merely because the recipient of a fax advertisement was a business customer of the defendant. *Chair King, Inc. v. GTE Mobilenet of Houston, Inc.*, 135 S.W.3d 365 (Tex. App. 2004), *overruled on other grounds*, 184 S.W.3d 707 (Tex. 2006) ("This notion of deeming permission is based on an inference and, as such, seems to conflict with the TCPA's requirement that the invitation or permission be express.") (citing the definition of "express" in *Black's Law Dictionary*).  Similarly, the Court of Appeals of Missouri held that the provision of contact information to a membership organization, accompanied by consent to release the contact information to other members of the organization, amounted only to implied consent to be sent faxes, not the express consent required by the TCPA. *Travel Travel Kirkwood, Inc. v. Jen N.Y. Inc.*, 206 S.W.3d 387, 392 (Mo. Ct. App. 2006) ("If the consent is not manifested by explicit and direct words, but rather is gathered only by implication or necessary deduction from the circumstances, the general language, or the conduct of the parties, it is not express consent.  Rather, it is merely implied consent."); *see also Weitzner*, 2006 WL 1851441 at *7; *Sterling Realty Co. v. Klein*, 2005 TCPA Rep. 1353, No. DC-010870-04, slip op. 2 (N.J. Dist. Ct. March 21, 2005) (rejecting the FCC's "established business relationship" exception and holding that "the fact that a plaintiff had given a business card to [the defendant] and asked him to 'stay in touch' does not constitute 'express' consent to send advertising faxes"); *Kondos v. Lincoln Prop. Co.*, 2001 TCPA Rep. 1036, No. 00-8709-H, slip op. 3-4 (Tex. Dist. Ct. July 12, 2001) (rejecting the FCC's "established business relationship" exception where fax recipients had filled out the defendant's forms and included their fax numbers, because the FCC's construction of the statute would amend "the TCPA's definition of unsolicited advertisement from a fax sent without the recipient's 'prior express invitation or permission' to a fax sent without the recipient's prior express *or implied* invitation or permission" (all emphasis in original)).

1    The Court also notes that the FCC, and industry in general, understands what is required to meet

2    Congress' demand of express consent.  The FCC's 2007 Ruling "encourage[d] creditors to include

3    language on credit applications and other documents informing the consumer that, by providing a

4    wireless telephone number, the consumer consents to receiving autodialed and prerecorded message

5    calls from the creditor or its third party debt collector at that number."  2007 FCC Ruling at ¶ 10, n.37.

6    Including such language on credit applications would likely meet the express consent requirement; the

7    absence of similar language on plaintiff's loan application highlights why her consent only could have

8    been determined by implication.  The case of *Satterfield v. Simon & Schuster*, 2007 WL 1839807 (N.D.

9    Cal. June 26, 2007), also demonstrates the type of language that typifies express consent.  There, a court

10    in this District held that the "prior express consent" exemption of 47 U.S.C. § 227(b)(1)(A) was met

11    where the defendant had sent a promotional text message to a customer who, when filling out an online

12    application for a free ringtone, had checked a box stating "[y]es!  I would like to receive promotions

13    from Nextones affiliates and brands.  Please note, that by declining you may not be eligible for our

14    FREE content." *Satterfield*, 2007 WL 1839807 at *1, 6.  Plaintiff had also clicked on a "submit" button,

15    above which appeared the words "[b]y clicking Submit, you accept that you have read and agreed to the

16    Terms and Conditions." *Id.* at 1.  Those terms and conditions, in turn, provided that Nextones could call

17    the applicant's cell phone number "in connection with any text message offering or other campaign."

18    *Id.*  This, too, demonstrates that those who wish to use autodialers or prerecorded messages with their

19    customers, whether lending customers or otherwise, are perfectly capable of garnering the express

20    consent of those customers.

21    The Court also finds it necessary to address other arguments in support of the FCC's

22    construction of "prior express consent," whether raised by defendant or discussed in the FCC's 2007

23    Ruling.  First, defendant suggests that Congress never really intended the TCPA to apply to lenders

24    making collection calls because the purpose of the TCPA was to prevent unsolicited telemarketing and

25    advertising calls.  This purpose, defendant suggests, can be gleaned from the fact that Congress gave

26    the FCC explicit authority to create an exception for calls to *residential* telephone lines where the calls

27    are not for a commercial purpose or where the calls are made for a commercial purpose but "do not

28    include the transmission of any unsolicited advertisement."  47 U.S.C. § 227(b)(2)(B).  Congress also

**United States District Court**
For the Northern District of California

specifically exempted from the TCPA the sending of unsolicited advertisements via fax where the unsolicited advertisement was sent by one with an "established business relationship" with a recipient who provided his or her fax number voluntarily "within the context of such established business relationship" or who published his or her fax number voluntarily online. *Id.* § 227(b)(1)(C). While the Court recognizes that these exemptions are significant and would apply to plaintiff and other persons who listed their fax numbers or residential telephone numbers on loan applications, the exceptions explicitly do not apply to calls made to cell phone numbers. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Rodriguez v. United States*, 480 U.S. 522, 525 (1987) (internal quotation marks omitted). While Congress did express its intent to loosen the prohibitions of the TCPA with regard to non-telemarketing calls to residential phone lines and with regard to solicitation faxes sent between parties with established business relationships, Congress chose not to apply these exemptions to cell phone numbers covered by 47 U.S.C. § 227(b)(1)(A)(iii). Thus, *any call* to a cell phone number using an autodialer or a prerecorded message is prohibited by the TCPA, regardless of the purpose of the call or the existence of a business relationship between the caller and the called party, unless the called party has given its "prior express consent." *See* 2007 FCC Ruling at ¶ 11 ("We note that this prohibition applies [to wireless numbers] *regardless of the content of the call*, and is not limited only to calls that constitute 'telephone solicitations.'" (emphasis added)). This makes sense, given that Congress enacted the TCPA not only to combat telemarketing calls, but also, as the FCC has recognized, to prevent the annoyance and expense of prerecorded calls to cell phone users. *Id.* at ¶ 7 ("Noting that Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls, *and that such calls can be costly and inconvenient*, the Commission determined that the TCPA and its rules prohibit such calls to wireless numbers. *The Commission also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used*." (emphasis added)).

Finally, the Court notes that the FCC relied in part on the legislative history of the TCPA in support of its interpretation of "prior express consent" as including the provision of a cell phone number

United States District Court
For the Northern District of California

on a loan application.  The FCC cited the House report accompanying the TCPA, which stated that the ""[t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.'"  2007 FCC Ruling at ¶ 9 (quoting H.R. Rep. 102-317 at 17 (Nov. 15, 1991)).  As is often the case, however, the legislative history can be read to provide support for multiple positions. Plaintiff points to a Senate report accompanying the bill, which stated that

> Some telemarketers asked that [the TCPA] be amended to exempt the following automated calls . . . automated calls made for debt collection purposes . . . .  These exemptions are not included in the bill, as reported.  The Committee believes that such automated calls only should be permitted if the called party gives his or her consent to the use of these machines.

S. Rep. 102-178 at 3-4 (Oct. 8, 1991).  Such competing legislative histories make it difficult for the Court to give significant consideration to any of these reports rather than relying on the plain language of the statute.  The Court therefore will not rely on the House report, particularly because the final version of the TCPA did not include any exception for "normal business communications," H.R. Rep. 102-317 at 17, and because Congress chose not to create such an exception for cell phones when it amended other provisions of the TVPA to include similar exceptions for residential telephone lines and fax machines.

In sum, the FCC's interpretation of the TCPA reads out Congress' requirement that autodialed and prerecorded calls may be made to cell phone numbers only where the called party's consent is express, and instead permits the application of this exemption where the consent can be implied.  This interpretation is manifestly contrary to the plain language of the statute, is unreasonable, and therefore is not deserving of deference.  *Pub. Employees Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 171 (1989) ("But, of course, no deference is due to agency interpretations at odds with the plain language of the statute itself.").  Accordingly, as the parties do not dispute any issues of material fact, the Court finds that partial summary judgment in plaintiff's favor is appropriate because defendant violated the TCPA when it called plaintiff's cell phone using an autodialer and prerecorded messages without plaintiff's prior express consent.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's motion for partial summary judgment and DENIES defendant's motion for partial summary judgment [Docket Nos. 31 & 35].

**IT IS SO ORDERED.**

Dated: May 20, 2008

_____
SUSAN ILLSTON
United States District Judge