1   BRAD W. SEILING (Bar No. CA 143515)
    JOANNA MCCALLUM (Bar No. CA 187093)
2   MANATT, PHELPS & PHILLIPS, LLP
    11355 West Olympic Boulevard
3   Los Angeles, CA  90064-1614
    Telephone:  (310) 312-4000
4   Facsimile:  (310) 312-4224
    E-mail: bseiling@manatt.com; jmccallum@manatt.com
5
    CLAUDIA CALLAWAY (admitted *pro hac vice*)
6   MANATT, PHELPS & PHILLIPS, LLP
    700 12th Street, N.W.
7   Washington, DC  20016
    Telephone:  (202) 585-6504
8   Facsimile:  (202) 585-6600
    E-mail: ccallaway@manatt.com
9
    JESSE S. FINLAYSON (Bar No. CA 179443)
10  MICHAEL R. WILLIAMS (Bar No. CA 196863)
    FINLAYSON, AUGUSTINI & WILLIAMS LLP
11  110 Newport Center Drive, Suite 100
    Newport Beach, CA 92660
12  Telephone: (949) 759-3810
    Facsimile: (949) 759-3812
13  E-mail: jfinlayson@faw-law.com; mwilliams@faw-law.com

14  *Attorneys for Defendant*
    CashCall, Inc.
15

16              UNITED STATES DISTRICT COURT

17             NORTHERN DISTRICT OF CALIFORNIA

18

19  TRICIA LECKLER, on behalf of         Case No.  C 07-04002 SI
    herself and all others similarly
20  situated,                            DEFENDANT'S NOTICE OF MOTION
                                         AND MOTION TO DISMISS
21              Plaintiffs,              PURSUANT TO F.R.C.P. 12(B)(1)
                                         AND TO VACATE PRIOR ORDERS;
22        vs.                            MEMORANDUM OF POINTS AND
                                         AUTHORITIES [28 U.S.C. § 2342]
23  CASHCALL, INC.,
                                         [Filed concurrently with Request for
24              Defendant.               Judicial Notice]

25                                       Date:    October 31, 2008
                                         Time:    9 a.m.
26                                       Place:   Courtroom 10

27                                       Judge:  Hon. Susan Illston

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

                                         DEFENDANT'S MOTION TO DISMISS
                                         PURSUANT TO FRCP 12(B)(1)

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on October 31, 2008, at 9:00 a.m., or as

3    soon thereafter as the matter may be heard, in Courtroom 10 of the above-entitled

4    Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102-3483,

5    defendant CashCall, Inc. will and hereby does move this Court for an order,

6    pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 2342,

7    dismissing this action and vacating its prior orders in this case.  Defendant requests

8    oral argument on this Motion.

9    This Motion is made on the ground that the District Court lacks subject

10    matter jurisdiction over this action, which challenges a final order of the Federal

11    Communications Commission, and that jurisdiction lies solely in the Court of

12    Appeals.

13    This Motion is based on this Notice of Motion, the accompanying

14    Memorandum of Points and Authorities and Request for Judicial Notice, all

15    pleadings, papers and records on file herein, any matter of which the Court may

16    take judicial notice, and such oral argument as may be presented at the hearing on

17    this Motion.

18

19    Dated:  August 11, 2008          FINLAYSON, AUGUSTINI & WILLIAMS LLP

20                                     MANATT, PHELPS & PHILLIPS, LLP

21

22    By:  _Brad Seilin_____

23         Brad W. Seiling
              *Attorneys for Defendant*
24            CashCall, Inc.

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(1)

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................2

    A.   Factual Background.................................................................2

    B.   Procedural Background ............................................................3

    C.   The FCC Ruling .....................................................................3

III. LEGAL STANDARD FOR MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) ................................................................................6

IV.  ARGUMENT ....................................................................................7

    A.   Jurisdiction Over This Action Is Vested Exclusively in the Court of Appeal ................................................................7

        1.   The Hobbs Act .............................................................7

        2.   The Hobbs Act Governs Here and Divests This Court of Jurisdiction ..........................................................7

            a.   The FCC Ruling is a final order for purposes of the statute ..............................................8

                (1)   The FCC Ruling is the consummation of the FCC's decisionmaking process ...........................8

                (2)   The FCC Ruling determines rights and obligations from which legal consequences flow ....................9

            b.   Leckler's suit requires that the Court enjoin, set aside, suspend or determine the validity of the FCC Ruling ..........................9

            c.   It is irrelevant that Leckler's suit was filed before the final order ....................................12

    B.   This Court Should Vacate Its Prior Orders and Dismiss the Action ...............................................13

V.   CONCLUSION ..................................................................................14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Air Transport Ass'n v. Public util. Comm'n,*
  833 F.2d 200 (9th Cir. 1987), *cert. denied,* 487 U.S. 1236 (1988) ................... 13

*Alison & Associates, Inc. v. Dartek Corp.,*
  No. CV 104-181, 2005 WL 2453089 (S.D. Ga. Sept. 30, 2005)....................... 12

*Augustine v. United States,*
  704 F.2d 1074 (9th Cir. 1983) ...............................................................................6

*Bennett v. Spear,*
  520 U.S. 154 (1997)..............................................................................................8

*Chevron, U.S.A., Inc. v. National Resources Defense Council,*
  467 U.S. 837 (1984).............................................................................................11

*Hansen v. Department of Treasury,*
  528 F.3d 597 (9th Cir. 2007) ............................................................................ 1, 7

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994)..............................................................................................6

*NL Indust. v. Kaplan,*
  792 F.2d 896 (9th Cir. 1986) ...............................................................................6

*Sierra Club v. United States Nuclear Regulatory Commission,*
  862 F.2d 222 (9th Cir. 1988) ...............................................................................8

*Thornhill Publishing Co. v. General Telephone & Electronics Corp.,*
  594 F.2d 730 (9th Cir. 1979) ...............................................................................6

*Trentacosta v. Frontier Pacific Aircraft Indus., Inc.,*
  813 F.2d 1553 (9th Cir. 1987) .............................................................................6

*United Investors Life Ins. Co. v. Waddell & Reed Inc.,*
  360 F.3d 960 (9th Cir. 2004) ........................................................................... 1, 6

*United States v. Bennett,*
  147 F.3d 912 (9th Cir. 1998) ...............................................................................6

*United States v. United Mine Workers,*
  330 U.S. 258 (1947)..............................................................................................6

*US West Communications, Inc. v. Hamilton,*
  224 F.3d 1049 (9th Cir. 2000) ..................................................................... 7, 8, 9

*US West Communications, Inc. v. MFS Intelenet, Inc.,*
  193 F.3d 1112 (9th Cir. 1999) ..............................................................................7

*Victor Oolitic Stone Co. v. CSX Transportation, Inc.,*
  852 F. Supp. 721 (S.D. Ind. 1994).................................................................. 9, 11

*Watts v. Pinckney,*
  752 F.2d 406 (9th Cir. 1985) ............................................................................. 13

*Wilson v. A.H. Belo Corp.,*
  87 F.3d 393 (9th Cir. 1996) ............................................. 5, 6, 7, 8, 9, 10, 12, 13

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
## (continued)

Page

## STATUTES AND REGULATIONS

28 U.S.C. § 2342 ........................................................................ 1, 2, 7, 8, 10, 13

28 U.S.C. § 2344 .................................................................................................7

47 U.S.C. §§ 151-154 .........................................................................................5

47 U.S.C. § 227 ...................................................................................................5

47 U.S.C. § 227(b)(1)(A) ............................................................................ 1, 3, 4

47 U.S.C. § 227(b)(1)(A)(iii) .............................................................................4

47 U.S.C. § 227(b)(2)(C) ....................................................................................4

47 U.S.C. § 303(r) ...............................................................................................5

47 U.S.C. § 315(b) ............................................................................................ 12

47 U.S.C. § 402(a) ...............................................................................................7

47 U.S.C. § 402(b) ...............................................................................................7

47 C.F.R. § 1.2 .....................................................................................................9

47 C.F.R. § 64.1200 ........................................................................................ 4, 5

47 C.F.R. § 64.1200(a)(1)(iii) ............................................................................5

Federal Rule of Civil Procedure 12(b)(1) ..........................................................6

Federal Rule of Civil Procedure 12(h) ...............................................................6

## ADMINISTRATIVE RULINGS

*Declaratory Ruling in re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 07-232 (Dec. 28, 2007; released Jan. 4, 2008) .................................... *passim*

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752 (1992) ............................................................................................4

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking and Memorandum Opinion and Order, 17 FCC Rcd 17459, CG Docket No. 02-278 and CC Docket No. 92-90 (2002) ..........................................................4

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) ............................................................................4

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court lacks jurisdiction over this action, pursuant to the Hobbs Act, 28 U.S.C. § 2342, and the action therefore must be dismissed.  The defense of lack of subject matter jurisdiction is not waived and may be raised at any time in the proceedings.[1]

This action turns on the validity of a final order entered by the Federal Communications Commission ("FCC") after a lengthy formal rulemaking procedure (the "FCC Ruling").[2]  This FCC Ruling is dispositive of plaintiff Tricia Leckler's ("Leckler") claims against defendant CashCall, Inc. ("CashCall").  This Court lacks jurisdiction to determine the validity of final FCC orders.  For this reason, the Court should dismiss this action and vacate its prior summary judgment order, which invalidated the FCC Ruling.

Leckler's action seeks to impose classwide liability on CashCall under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A) ("TCPA").  The complaint alleges that CashCall made telephone calls to the cell phone numbers of Leckler and the putative class members via automatic dialing system and/or used prerecorded messages, seeking to collect on debts owed to CashCall, without the called party's prior express consent.

Several months after the lawsuit was filed, the FCC issued the FCC Ruling, a final order that addresses the precise subject and virtually identical factual predicate as Leckler's claim.  In moving for summary judgment and opposing CashCall's motion for summary judgment, Leckler specifically acknowledged that

---

[1] *See, e.g., Hansen v. Department of Treasury*, 528 F.3d 597, 600 (9th Cir. 2007); *see also United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966-67 (9th Cir. 2004) ("the district court had a duty to establish subject matter jurisdiction," "whether the parties raised the issue or not").

[2] A copy of the FCC Ruling is submitted with the accompanying Request for Judicial Notice.

1   the Court could not render a decision in her favor unless the Court rejected or

2   otherwise declined to apply the FCC Ruling.  In fact, she specifically urged that the

3   Court "nullify the order for the purposes of the lawsuit." (D.E. 35 at 2.)  The Court

4   disagreed with the FCC Ruling, declined to apply it, and granted summary

5   judgment for Leckler.

6          The Court's summary judgment ruling, which effectively nullifies the

7   FCC Ruling, makes clear that Leckler's action is not subject to the jurisdiction of

8   this Court.  The Hobbs Act vests exclusive jurisdiction of the action in the Courts of

9   Appeals "to enjoin, set aside, suspend (in whole or in part), or to determine the

10  validity" of final orders of the FCC.  28 U.S.C. § 2342.  The FCC Ruling is a final

11  order, as it conclusively determines rights and obligations and interprets the TCPA.

12  The only way Leckler could prevail in this case is if the Court invalidates the FCC

13  Ruling, which is precisely what it did when it declined to apply the FCC Ruling and

14  granted summary judgment in Leckler's favor.  Thus, the exclusive jurisdiction

15  provision of the Hobbs Act vests jurisdiction in the Court of Appeals, not in this

16  Court.  Because it lacks subject matter jurisdiction, this Court should dismiss the

17  action and vacate its prior orders made in excess of its jurisdiction.

18  **II.     FACTUAL AND PROCEDURAL BACKGROUND**

19          **A.     Factual Background.**

20          In December 2005, Leckler applied to CashCall for a personal loan.

21  (Jointly Submitted Statement of Undisputed Facts in Support of the Parties' Cross-

22  Motions for Partial Summary Judgment, D.E. 32 No. 2.)  As part of the loan

23  application process, Leckler provided her cell phone number to CashCall.  (*Id.*

24  Nos. 3, 4.)  On subsequent correspondence with CashCall regarding the loan,

25  Leckler supplied her cell phone number as her sole contact information.  (*Id.* No. 18

26  & Ex. A.)  Leckler concedes that she gave consent for CashCall to contact her at

27  her cell phone number.  (D.E. 44 at p. 8.)  When she fell behind on her loan

28  payments, CashCall placed calls to her on her cell phone to request payment.  (D.E.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(1)

1    32 Nos. 8, 9.)  Some of these calls were made via automatic dialing system and/or

2    used prerecorded messages.  (*Id.* Nos. 10, 11.)

3       **B.    Procedural Background.**

4               Leckler brought this putative nationwide class action suit against

5    CashCall, alleging intentional and negligent violations of the TCPA, which

6    provides, in relevant part:

7           It shall be unlawful for any person within the United States . . . to
            make any call (other than a call made for emergency purposes or *made*
8           *with the prior express consent of the called party*) using any automatic
            dialing system or an artificial or prerecorded voice . . . to any
9           telephone number assigned to a paging service, cellular telephone
            service, specialized mobile radio service, or other radio common
10          carrier service, or any service for which the called party is charged for
            the call . . . .
11

12   47 U.S.C. § 227(b)(1)(A) (emphasis added).[3]

13              The parties each filed motions for partial summary judgment, based on

14   stipulated undisputed material facts, on the pure legal issue of whether CashCall's

15   calls to Leckler's cell phone number were made with Leckler's "prior express

16   consent" for purposes of the TCPA.  On May 20, 2008, this Court issued an order,

17   granting Leckler's motion and denying CashCall's motion ("MSJ Order," D.E. 45).

18      **C.    The FCC Ruling.**

19              As support for its motion, CashCall presented to the Court a recent

20   declaratory ruling by the FCC, the federal agency charged with interpreting the

21   TCPA and 47 U.S.C. § 227(b)(1)(A).  Among other things, the FCC concluded that

22   a borrower's disclosure to a lender of a cell phone number with regard to obtaining

23   a loan constituted the "prior express consent" sufficient to avoid a TCPA violation.

24   *See Declaratory Ruling in re Rules and Regulations Implementing the Telephone*

25   *Consumer Protection Act of 1991*, FCC 07-232 (Dec. 28, 2007; released Jan. 4,

26

27   [3] CashCall also filed a counterclaim against Leckler, seeking repayment of her
     delinquent loan.  As there is no basis for federal jurisdiction over the counterclaim if
28   Leckler's suit is dismissed, the counterclaim must be dismissed as well.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3                              DEFENDANT'S MOTION TO DISMISS
                               PURSUANT TO FRCP 12(B)(1)

1  2008) (attached as Exhibit A to Request for Judicial Notice).

2       The FCC Ruling interprets a provision of the TCPA.  The TCPA,

3  which was enacted in 1991, expressly grants the FCC the authority to exempt

4  certain calls and impose certain conditions on such calls:

5       [S]ection 227(b)(2)(C) gives the Commission authority to exempt from
        the prohibition on autodialed or prerecorded message calls to wireless
6       numbers contained in section 227(b)(1)(A)(iii) only those "calls to a
        telephone number assigned to a cellular telephone service that are not
7       charged to the called party, subject to such conditions as the
        Commission may prescribe as necessary in the interest of the privacy
8       rights the provision is intended to protect."

9
   (FCC Ruling at 2-3 (quoting 47 U.S.C. § 227(b)(2)(C)).)

10       The FCC adopted rules to implement the TCPA in 1992.  (FCC Ruling

11  at 3 (citing *Rules and Regulations Implementing the Telephone Consumer*

12  *Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752

13  (1992); 47 C.F.R. § 64.1200).)  In 2002, the FCC "initiated a rulemaking

14  proceeding to determine whether the Commission's rules needed to be revised to

15  more effectively carry out Congress's directives in the TCPA."  (FCC Ruling at 4

16  (citing *Rules and Regulations Implementing the Telephone Consumer Protection*

17  *Act of 1991*, Notice of Proposed Rulemaking and Memorandum Opinion and Order,

18  17 FCC Rcd 17459, CG Docket No. 02-278 and CC Docket No. 92-90 (2002)).)

19  This rulemaking culminated in new regulations issued in 2003.  (FCC Ruling at 4

20  (citing *Rules and Regulations Implementing the Telephone Consumer Protection*

21  *Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014

22  (2003)).)

23       The FCC Ruling was the result of a process initiated by the filing of a

24  Petition for Expedited Clarification and Declaratory Ruling regarding aspects of the

25  2003 rules.  The Petition was filed on October 4, 2005, and supplemented on April

26  26, 2006, by ACA International.  As described by ACA itself and as noted in the

27  FCC Ruling, ACA is "an international trade organization of credit and collection

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

1    companies that provide a wide variety of accounts receivable management

2    services" and "represents approximately 5,800 company members ranging from

3    credit grantors, collection agencies, attorneys, and vendor affiliates." (FCC Ruling

4    at 1 n. 1.)

5              ACA's Petition presented the precise issue raised by Leckler's suit:  it

6    sought "clarification that the prohibition against autodialed or prerecorded calls to

7    wireless telephone numbers in 47 C.F.R. § 64.1200(a)(1)(iii) does not apply to

8    creditors and collectors when calling wireless telephone numbers to recover

9    payments for goods and services received by consumers." (FCC Ruling at 5 (citing

10   Petition).)  The FCC sought and received comments, both in support and in

11   opposition, from creditors, collectors, consumer groups and consumers.  (FCC

12   Ruling at 5-6.)

13             Following discussion and analysis, the FCC formally adopted its

14   Declaratory Ruling "pursuant to Sections 1-4, 227, and 303(r) of the

15   Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154, 227, and 303(r);

16   and Section 64.1200 of the Commission's rules, 47 C.F.R. § 64.1200 . . . ." (FCC

17   Ruling at 9.)  The substance of the Declaratory Ruling was that calls to cell

18   numbers provided in connection with a loan application are permissible under the

19   TCPA:

20             IT IS FURTHER ORDERED that the Request for Clarification filed
             by ACA International in CG Docket 02-278 on October 4, 2005 and
21           supplemented by ACA on April 26, 2006, IS GRANTED insofar as
             ACA seeks clarification that autodialed and prerecorded message calls
22           to wireless numbers that are provided by the called party to a creditor
             in connection with an existing debt are permissible as calls made with
23           the "prior express consent" of the called party . . . .

24   (FCC Ruling at 10.)

25             The FCC Ruling was released on January 4, 2008 and became "final"

26   on the date of public notice.  *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 397 (9th Cir.

27   1996).

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(1)

### III.  LEGAL STANDARD FOR MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move the Court to dismiss an action on the ground that the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The action must be dismissed "[i]f the Court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h). Therefore, "the defense of lack of subject matter jurisdiction cannot be waived," *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983), and may "be raised at any time during the proceedings." *United States v. Bennett*, 147 F.3d 912, 914 (9th Cir. 1998) (internal quotations omitted).  This Court has jurisdiction to determine its own jurisdiction. *Wilson*, 87 F.3d at 396 (citing *United States v. United Mine Workers*, 330 U.S. 258, 292 n. 57 (1947)). The plaintiff bears the burden of establishing that the Court does have jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Moreover, a District Court has an independent obligation to ensure that subject matter jurisdiction is established. *See United Investors*, 360 F.3d at 966-67.

In considering a facial challenge to the allegations of the complaint, the Court must accept the complaint's factual allegations as true. *See NL Indust. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  Other challenges, such as this one, are factual, and require resort to extrinsic evidence in order to demonstrate that the Court lacks jurisdiction.  The Court determines the facts regarding its jurisdiction for itself rather than accepting the allegations of the complaint. *See Trentacosta v. Frontier Pacific Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987); *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  In this case, the material facts are undisputed, per the parties' prior stipulation.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6

DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(1)

## IV.  ARGUMENT

### A.  Jurisdiction Over This Action Is Vested Exclusively in the Court of Appeal

#### 1.  The Hobbs Act.

In the Hobbs Act, Congress vested in federal courts of appeal "*exclusive jurisdiction* to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communication [sic] Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342 (emphasis added).  Section 402(a) of title 47 makes reviewable "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission" under the Communications Act of 1934, as amended by the Telecommunications Act of 1996.[4]

As the Ninth Circuit has observed: "Together, these two statutes 'vest the courts of appeal with *exclusive jurisdiction* to review the validity of FCC rulings.'" *US West Communications, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000) (emphasis added) (quoting *Wilson*, 87 F.3d at 396-97).  Further, "[a]ggrieved parties may invoke this exclusive jurisdiction 'only by filing a petition for review of the FCC's final order in a court of appeals naming the United States as a party.'" *US West*, 224 F.3d at 1054 (quoting *US West Communications, Inc. v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1120 (9th Cir. 1999)); *see also* 28 U.S.C. § 2344.  As discussed below, the Hobbs Act mandates dismissal of this action for lack of jurisdiction.[5]

#### 2.  The Hobbs Act Governs Here and Divests This Court of Jurisdiction.

For an action to be subject to the exclusive jurisdiction of the Court of Appeals under the Hobbs Act, it (1) must involve a "final order" of the FCC and (2)

---

[4] The statute contains certain enumerated exceptions, none of which is relevant in the circumstances here. *See* 47 U.S.C. § 402(b).

[5] As noted, the defense of lack of subject matter jurisdiction may be raised at any time. *See, e.g., Hansen*, 528 F.3d at 600.

1  must seek to "enjoin, set aside, suspend, . . . or . . . determine the validity of" that

2  order.  28 U.S.C. § 2342; *see generally Wilson*, 87 F.3d 393.  Leckler's action

3  meets both criteria.

### a.    The FCC Ruling is a final order for purposes of the statute.

4
5          For the purposes of the exclusive jurisdiction provisions of the Hobbs

6  Act, "agency orders are 'final orders' . . . 'if they impose an obligation, deny a

7  right, or fix some legal relationship as a consummation of the administrative

8  process.'"  *US West*, 224 F.3d at 1054 (quoting *Sierra Club v. United States*

9  *Nuclear Regulatory Commission*, 862 F.2d 222, 225 (9th Cir. 1988)).  The Ninth

10 Circuit has determined that a "final agency action" for purposes of invoking the

11 Administrative Procedures Act is "analytically equivalent" to a "final order" under

12 the Hobbs Act, and thus follows the analysis of a "final agency action" articulated

13 by the Supreme Court.

14         Under the Supreme Court's analysis, a final agency action must result

15 from the conclusion of the agency decision-making process and be an action that

16 determines rights and obligations:

17
18         As a general matter, two conditions must be satisfied for agency action
           to be "final":  First, the action must mark the consummation of the
19         agency's decisionmaking process—it must not be of a merely tentative
           or interlocutory nature.  And second, the action must be one by which
20         rights or obligations have been determined, or from which legal
           consequences will flow.

21
22 *US West*, 224 F.3d at 1054 (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78

23 (1997)).  The FCC Ruling meets both conditions.

### (1)    The FCC Ruling is the consummation of the FCC's decisionmaking process.

24
25         The FCC Ruling is a definitive and final statement of the FCC's

26 position on the issue presented in ACA's Petition.  The Ruling was issued after

27 solicitation and review of public comment.  The Ruling is neither tentative nor

28 interlocutory; rather, it unequivocally "order[s]" the analysis and conclusions set

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(1)

forth therein. *See* FCC Ruling at 9-10, ¶¶ 16, 17. It "terminat[es] a controversy or

remov[es] uncertainty." 47 C.F.R. § 1.2 (addressing scope of FCC declaratory

rulings); *Wilson*, 87 F.3d at 397; *see also id.* at 395-99 (FCC Declaratory Ruling is

a "final order" under the Hobbs Act; reviewing cases from "[a]ll other circuits to

have decided the issue, except the Eleventh," invoking exclusive appellate

jurisdiction to review declaratory rulings issued by the FCC).

**(2)    The FCC Ruling determines rights and obligations from which legal consequences flow.**

The FCC Ruling also meets the second prong of the definition of "final

agency order" – determining rights and obligations. It "clarif[ies]" that calls made

to wireless numbers by autodialed or prerecorded messages are "permissible" when

the consumer provided the number in connection with an existing debt. (FCC

Ruling at 6 ¶ 9.) It conclude[s]" that "the creditor should be responsible for

demonstrating that the consumer provided prior express consent." (FCC Ruling at

7 ¶ 10.) It sets forth the legal consequences of the rights of the consumer and

creditor under the Ruling: that a creditor does not violate the TCPA under the

circumstances addressed in the Petition. (FCC Ruling at 6-7 ¶¶ 9, 11.) *See US

West*, 224 F.3d at 1055.

Under the Hobbs Act, as well as Ninth Circuit precedent, the FCC

Ruling is a "final agency order."

**b.    Leckler's suit requires that the Court enjoin, set aside, suspend or determine the validity of the FCC Ruling.**

As reflected in the Court's Order granting summary judgment in favor

of Leckler, the relief sought in Leckler's complaint could not have been awarded

without the Court enjoining, setting aside, suspending and/or determining the

validity of the FCC Ruling. *See Victor Oolitic Stone Co. v. CSX Transportation,

Inc.*, 852 F. Supp. 721, 723 (S.D. Ind. 1994) ("A challenge to an [agency] order

need not be direct for [the exclusive jurisdiction of the court of appeals] to be

invoked; all that is required is that the effect of the prayed for relief contradict a[n]

1    [agency] order.").

2         In *Wilson*, the Ninth Circuit held that Hobbs Act exclusive jurisdiction

3    is invoked whenever an action requires a determination of the validity of an agency

4    order:

5         [T]he [complaint's] claims raise the ***same issues decided by the FCC***
         in the Declaratory Ruling . . . . ***If the district court disagreed with the***
6         ***Declaratory Ruling, the effect of the proceeding would have been to***
         ***enjoin, set aside, or suspend the Declaratory Ruling—all actions***
7         ***which are within the exclusive domain of the court of appeals under***
         ***§ 2342.*** Even if the district court agreed with the Declaratory Ruling,
8         that ***result would have required a determination of the validity*** of the
         Declaratory Ruling, which would also violate § 2342.
9

10   *Wilson*, 87 F.3d at 400 (emphasis added).

11        In this case, as in *Wilson*, the FCC Ruling and Leckler's lawsuit

12   address the "same issues." The FCC Ruling concluded that "autodialed and

13   prerecorded message calls to wireless numbers provided by the called party in

14   connection with an existing debt are made with the 'prior express consent' of the

15   called party." (FCC Ruling ¶ 9.) Leckler asked this Court to determine that her

16   consent did not constitute "prior express consent" to receive such calls. (*See*

17   Plaintiff's Memorandum of Points and Authorities in Support of Motion for

18   Summary Judgment, D.E. 35, at 1:10-13 ("The issue here is what constitutes 'prior

19   express consent' as required by the TCPA. At issue here is whether the Federal

20   Communications Commission ('FCC') can legally redefine that phrase as it

21   attempts to do in its Declaratory Ruling.").) This is precisely the "same issue." In

22   fact, even as to ACA itself—the petitioner in the proceeding culminating in the

23   FCC Ruling—the precedential effect of the FCC Ruling may now be cast in doubt,

24   as a plaintiff arguably could ignore the FCC Ruling in favor of ACA and bring suit

25   against ACA for violation of the TCPA under the authority of the ruling in this

26   case.

27        As this Court noted, its decision on the issue presented by the parties'

28   summary judgment motions "hinges on the propriety of a ruling by the Federal

10    DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(1)

1    Communications Commission ('FCC') . . . ." (MSJ Order at 3:26-27.)    Leckler

2    also acknowledged that adherence to the FCC's position would end her lawsuit. In

3    fact, she specifically asked that the Court "nullify the FCC ruling for purposes of

4    this lawsuit." (D.E. 35 at 2.) *See Victor Oolitic*, 852 F. Supp. at 723 ("the result

5    Plaintiff seeks assumes that the ICC decision is a nullity. The fact remains that the

6    ICC order stands . . .").

7            This Court analyzed the FCC Ruling under the standard set forth in

8    *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837 (1984),

9    and determined not to accord deference to the ruling, finding that the FCC's

10   interpretation was inconsistent with the TCPA's plain language. (MSJ Order at

11   6:7-9.)

12           In fact, the Court explicitly rejected the reasoning of the FCC Ruling:

13   On January 4, 2008, in response to a petition filed by ACA
     International, the FCC issued a declaratory ruling, adopted December
14   28, 2007, which held that "the provision of a cell phone number to a
     creditor, e.g., as part of a credit application, reasonably evidences prior
15   express consent by the cell phone subscriber to be contacted at that
     number regarding the debt," and thus that "autodialed and prerecorded
16   message calls to wireless numbers provided by the called party in
     connection with an existing debt are made with the 'prior express
17   consent' of the called party." 2007 FCC Ruling at ¶ 9. **The Court
     finds this construction of "prior express consent" both "manifestly
18   contrary to the statute" and unreasonable** [citation] because it
     impermissibly amends the TCPA to provide an exception for "prior
19   express *or implied* consent" and flies in the face of Congress' intent.

20   (MSJ Order at 6:1-9) (bold added; italics in original).    Therefore:

21
     [T]he FCC's interpretation of the TCPA reads out Congress'
22   requirement that autodialed and prerecorded calls may be made to cell
     phone numbers only where the called party's consent is express, and
23   instead permits the application of this exemption where the consent
     can be implied. **This interpretation is manifestly contrary to the
24   plain language of the statute, is unreasonable, and therefore is not
     deserving of deference.**
25

26   (MSJ Order at 11:17-21 (bold added).)

27           Leckler's action could not be adjudicated by this Court without

28   effectively enjoining, setting aside, suspending, or determining the validity of the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(1)

1    FCC Ruling—regardless whether this Court ruled as it did, in favor of Leckler, or

2    whether the Court had adopted CashCall's (and the FCC's) position. *See Wilson*,

3    87 F.3d at 400; *see also Alison & Associates, Inc. v. Dartek Corp.*, No. CV 104-

4    181, 2005 WL 2453089 (S.D. Ga. Sept. 30, 2005) (transferring case to Eleventh

5    Circuit where district court lacked jurisdiction under the Hobbs Act over dispute

6    about the application of the FCC's "established business relationship" exception to

7    certain unsolicited faxes otherwise prohibited by the TCPA).[6]

**c.    It is irrelevant that Leckler's suit was filed before the final order.**

Leckler's suit was filed before the FCC Ruling was issued, and thus

her complaint is not framed as a direct challenge to that order. For the purposes of

Hobbs Act jurisdiction, however, that makes no difference. The end result of the

relief she seeks requires the Court to overturn the FCC Ruling, and that is all that is

necessary under the Hobbs Act.

In *Wilson*, political candidates brought a lawsuit in September 1991,

seeking to recover alleged advertising overcharges from television stations. The

complaint alleged that the charges were in excess of charge limitations set forth in

the Communications Act of 1934, as amended, 47 U.S.C. § 315(b). *Wilson*, 87

F.3d at 395. In December 1991, three months after the suit was filed, the FCC

issued a Declaratory Ruling, determining that the agency had exclusive jurisdiction

over claims alleging violations of Section 315(b). *Id.* Following the FCC's denial

of petitions for reconsideration, the district court dismissed the action, finding itself

divested of jurisdiction under the Hobbs Act. *Id.* at 395-96.

The candidates argued, *inter alia*, that their action, filed prior to the

---

[6] In *Alison*, the U.S. government, which opposed the transfer, argued that neither party to the lawsuit was "aggrieved" for purposes of the Hobbs Act, as neither had participated in the FCC proceedings on the topic. *Id.* at *3. The court disagreed, applying an exception to the "aggrieved party" requirement for challenges to an agency action as in excess of the agency power. *Id.* at *3. The court concluded that the matter should be transferred to the court of appeals. *Id.* at *4.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

12

DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FRCP 12(B)(1)

1   issuance of the Declaratory Ruling, was not a collateral attack on the ruling and did

2   not invoke Hobbs Act exclusive jurisdiction.  The Ninth Circuit rejected that

3   argument, holding: "[a] complaint need not be a collateral attack on a declaratory

4   ruling for 28 U.S.C. § 2342 to vest exclusive jurisdiction in the court of appeals.

5   *All that is required is that the complaint filed in the district court raise the same*

6   *issues and seek the same relief in substance as the declaratory ruling.*"  *Wilson*, 87

7   F.3d at 399 (emphasis added).  The court concluded that "[t]hus, it is irrelevant that

8   the Candidates' first suit was filed prior to the FCC's issuance of the Declaratory

9   Ruling.  Once the Declaratory Ruling became final, it divested the district court of

10   jurisdiction to consider the issues decided in the Ruling." *Id.* at 400; *see also Air*

11   *Transport Ass'n v. Public Util. Comm'n*, 833 F.2d 200, 206 (9th Cir. 1987) (district

12   court lost jurisdiction to consider action once the FCC issued its ruling), *cert.*

13   *denied*, 487 U.S. 1236 (1988).

**B.    This Court Should Vacate Its Prior Orders and Dismiss the Action.**

As this Court lacks subject matter jurisdiction over this action, its prior orders are void and should be vacated.  "It is well settled that a judgment is void '*if the court that considered it lacked jurisdiction of the subject matter . . . .*'" *Watts v. Pinckney*, 752 F.2d 406, 409 (9th Cir. 1985) (affirming district court's vacating of its own order) (quoting 11 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE at 198, 200 (emphasis in *Watts*)).  The action also must be dismissed. *See Wilson*, 87 F.3d at 395-96 (dismissing the action where district court found it lacked jurisdiction under the Hobbs Act).

1

## V.    CONCLUSION

2            For the foregoing reasons, CashCall requests that the Court dismiss the

3    action and vacate all prior orders entered in this case.

4

5    Dated:  August 11, 2008            Respectfully submitted,

6                                       FINLAYSON, AUGUSTINI & WILLIAMS LLP

7                                       MANATT, PHELPS & PHILLIPS, LLP

8

9                                  By: _____

10                                      Brad W. Seiling
                                        *Attorneys for Defendant* CashCall, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

14                  DEFENDANT'S MOTION TO DISMISS
                    PURSUANT TO FRCP 12(B)(1)

1

## **PROOF OF SERVICE**

2

I, Brigette Scoggins, declare:

3

I am a citizen of the United States and employed in Los Angeles County,
California. I am over the age of eighteen years and not a party to the within-entitled
action. My business address is 11355 West Olympic Boulevard, Los Angeles,
California 90064-1614. On August 11, 2008, I served a copy of the within
document(s):

4

5

6

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PURSUANT TO F.R.C.P. 12(B)(1) AND TO VACATE PRIOR ORDERS;
MEMORANDUM OF POINTS AND AUTHORITIES [28 U.S.C. § 2342]**

7

8

☐    by transmitting via facsimile the document(s) listed above to the fax
number(s) set forth below on this date.

9

10

☒    by placing the document(s) listed above in a sealed envelope with
postage thereon fully prepaid, in the United States mail at Los Angeles,
California addressed as set forth below.

11

12

☐    by placing the document(s) listed above in a sealed _____
envelope and affixing a pre-paid air bill, and causing the envelope to
be delivered to a _____ agent for delivery.

13

14

15

☐    by personally delivering the document(s) listed above to the person(s)
at the address(es) set forth below.

16

17

Douglas J. Campion, Esq.
LAW OFFICES OF DOUGLAS J. CAMPION
411 Camino Del Rio South, Suite 301
San Diego, CA 92108

18

19

20

I am readily familiar with the firm's practice of collection and processing
correspondence for mailing. Under that practice it would be deposited with the
U.S. Postal Service on that same day with postage thereon fully prepaid in the
ordinary course of business. I am aware that on motion of the party served, service
is presumed invalid if postal cancellation date or postage meter date is more than
one day after date of deposit for mailing in affidavit.

21

22

23

I declare that I am employed in the office of a member of the bar of this court
at whose direction the service was made. Executed on August 11, 2008, at Los
Angeles, California.

24

25

26

Brigette Scoggins

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41286231.1